Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re:<br><br>GOODMAN NETWORKS, INC.,<br><br>Debtor. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 22-31641-mvl-7<br><br>(Chapter 7) |
| SCOTT M. SEIDEL, TRUSTEE;<br>GNET ATC, LLC; MULTIBAND<br>FIELD SERVICES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES FRINZI; FRINZI FAMILY TRUST;<br>MULTIBAND GLOBAL RESOURCES,<br>LLC,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADVERSARY PROCEEDING<br>NO: |

## ORIGINAL COMPLAINT

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel, Trustee (the "Trustee"), the trustee of Goodman Networks, Inc. (the "Debtor"), the debtor in the above styled and numbered chapter 7 bankruptcy case (the "Bankruptcy Case"), and, together with GNET ATC, LLC ("GNET ATC") and Multiband Field Services, Inc. ("Multiband," with the Trustee and GNET ATC, collectively the "Plaintiffs"), file this *Original Complaint* (the "Complaint"), complaining of James Frinzi ("Frinzi"), Frinzi Family

ORIGINAL COMPLAINT—Page 1

Trust ("FFT"), and Multiband Global Resources, LLC ("MGR, with Frinzi and FFT, the "Defendants"), and, for cause and action, would respectfully show as follows:

## I. PROCEDURAL BACKGROUND

1. On September 6, 2022 (the "Petition Date"), various petitioning creditors filed an involuntary petition against the Debtor, thereby initiating the Bankruptcy Case and creating the Debtor's bankruptcy estate (the "Estate").

2. The Court entered an order for relief against the Debtor on December 12, 2022.

3. The Trustee is the duly appointed trustee of the Debtor and the Estate.

4. The Court has jurisdiction over this Complaint under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. § 157(b)(2). To the extent that any matter in this Adversary Proceeding is not core, the Plaintiffs consent to this Court's entry of a final judgment over any and all such matters.

5. Venue of this Adversary Proceeding before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## II. PARTIES

6. The Trustee is the Chapter 7 trustee of the Debtor and the Estate and files this Complaint in such capacity only.

7. GNET ATC is a Texas limited liability company, the sole member and owner of which is the Debtor. In that the Trustee controls the Debtor, and the Debtor is the sole member of GNET ATC, the Trustee has all necessary authority to cause GNET ATC to file this Complaint and to direct its actions in this matter as the sole member and manager.

8. Multiband is a Texas corporation, the sole shareholder and owner of which is the Debtor. In that the Trustee controls the Debtor, and the Debtor is the sole shareholder of

Multiband, the Trustee has all necessary authority to cause Multiband to file this Complaint and to direct its actions in this matter as the sole shareholder.

9. Frinzi is an individual and a resident of Texas. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), Frinzi may be served with process in this Adversary Proceeding anywhere he may be found, including his home, as follows: James Frinzi, 9204 Eddy Cv., Austin, TX 78735.

10. FFT is a trust whose co-trustee is Frinzi. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), FFT may be served with process in this Adversary Proceeding anywhere he may be found, including his home, as follows: Frinzi Family Trust, c/o James Frinzi, Trustee, 9204 Eddy Cv., Austin, TX 78735

11. MGR is a limited liability company organized and existing under the laws of the State of Delaware. MGR is registered in the State of Texas to transaction business. Furthermore, its sole member and manager is located in the State of Texas, its principal office is in the State of Texas, and it has, and continues to, transaction business in the State of Texas. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), MGR may be served with process in this Adversary Proceeding by and through its registered agent, Joseph O'Bell, as follows: Multiband Global Resource, LLC, c/o Joseph O'Bell, Registered Agent, 2603 De Soto Dr., Austin, TX 78733.

### III.     FACTS

**A.    FRINZI**

12. In December, 2021 and at all times relevant hereto, Frinzi was the Chief Executive Officer of the Debtor. As such, he owed fiduciary duties to the Debtor, including the duty of loyalty and the duty of care.

13. In December, 2021 and at all times relevant hereto, Frinzi was the Chief Executive Officer of GNET ATC. As such, he owed fiduciary duties to GNET ATC, including the duty of loyalty and the duty of care.

14. In December, 2021 and at all times relevant hereto, Frinzi was the Chief Executive Officer of Multiband. As such, he owed fiduciary duties to Multiband, including the duty of loyalty and the duty of care.

15. In December, 2021, and at all times material to this Complaint, Frinzi was the sole member and the sole manager of MGR. As such, Frinzi wholly owned and solely managed MGR, and received any benefit inuring to the equity owners of MGR.

**B.  THE STOCK PURCHASE**

16. In or by December, 2021, Frinzi discovered an opportunity to purchase a publicly traded shell that otherwise had no assets, and had value only as a shell, and an opportunity to purchase an existing business and merge it into the publicly traded shell.

17. The publicly traded shell was American Metals Recover and Recycling, Inc. n/k/a MBG Holdings, Inc. ("AMRR").

18. The existing business was AMR Resources, LLC and/or OnePath Systems, LLC, operating an existing business platform under the name OnePath ("OnePath").

19. Both the purchase of AMRR and that of OnePath would require money. Frinzi did not have this money. Instead, at that time, the Debtor, GNET ATC, and Multiband had large amounts of cash on hand, and Frinzi decided to use these funds to acquire AMRR for his benefit, knowing and intending that AMRR would soon own OnePath.

20. As of December 1, 2021, Repository Services, LLC ("Repository") owned 71.31% of the common stock of AMRR and 100% of the preferred stock of AMRR (together, the "Stock").

21. On December 3, 2021, MGR entered into a Share Purchases Agreement by which Repository would sell the Stock to MGR. The purchase price was $500,000.00. This transaction closed on December 23, 2021 and, on and after that date, MGR owned the Stock and with it control of AMRR.

22. MGR did not have the funds to make the purchase price. Rather, Frinzi caused the Debtor and/or GNET ATC to pay the purchase price to Repository.

23. Namely, on December 13, 2021, GNET ATC wired from its bank account at East West Bank (account ending in 0690) $500,000.00 to Stauber Law Office ("Stauber").

24. Stauber was acting as the escrow agent for the purchase by MGR of the Stock from Repository or was representing Repository or the escrow agent David Hill on behalf of Hill Innovative Law, LLC.

25. The $500,000.00 purchase price under said agreement was the aforementioned $500,000.00 transfer from the Debtor and/or GNET ATC.

26. Thus, as of December 23, 2021, MGR owned all of the Stock with the funds that Frinzi caused to be transferred to Repository from the Debtor and/or GNET ATC (the "Stock Purchase").

27. The Debtor and/or GNET ATC received no reasonably equivalent value and no return value or consideration at all as a result of the Stock Purchase.

28. After MGR, solely owned and controlled by Frinzi, purchased the Stock and controlled AMRR, Frinzi had AMRR purchase OnePath for at least $38,000,000.00. This purchase closed on February 1, 2022. At that time, therefore, Frinzi, who owned MGR, which

owned AMRR, now owned OnePath without any consideration of his own, all such consideration coming from the Debtor or its subsidiaries.[1]

C.     **THE $4.4 MILLION TRANSFER**

29.     Separately, on January 4, 2022, Multiband wired $4,400,000.00 to MGR from Multiband's bank account at East West Bank (account ending in 8462) (the "$4.4 Million Transfer").

30.     The funds used by Multiband originated with the Debtor. Namely, as of December 1, 2021, Multiband had $739.48 in its East West Bank account ending in 8462. On December 10, 2021, the Debtor transferred $500,000.00 of its funds into said account, and on December 21, 2021, the Debtor transferred $4,000,000.00 of its funds into said account. Thus, all except potentially the trivial amount of $739.48 of the funds used to make the $4.4 Million Transfer was of the Debtor's funds.

31.     Upon information and belief, Frinzi caused the foregoing funds to be transferred by the Debtor to Multiband with the intention and for the express purpose of then causing Multiband to transfer said funds to MGR. As such, Multiband was a mere conduit and the funds always remained the property of the Debtor.

32.     The $4.4 Million Transfer was recorded by the Debtor on its books and records as a loan from the Debtor to MGR. Upon information and belief, this alleged loan was never reduced to a writing or a promissory note.

33.     MGR has not repaid the Debtor any portion of this alleged loan.

---

[1] The Trustee has claims and causes of action against Frinzi, AMRR, and others, related to at least $44,000,000.00 transferred to AMRR in order to, among other things, purchase OnePath. The Trustee reserves all of those claims and causes of action and intends to bring them pursuant to separate complaint, the same not being necessary to this Complaint. No preclusive doctrine shall apply to the same.

ORIGINAL COMPLAINT—Page 6

34. The Debtor and/or Multiband received no reasonably equivalent value for the $4.4 Million Transfer.

35. Upon information and belief, Frinzi had no expectation that MGR would repay any of this alleged loan. Among other things, MGR did not pay any of it back, used the funds to make purchases ultimately for the benefit of Frinzi, had no operations or financial wherewithal to repay the funds, and failed to enter into any writing for any repayment.

36. The purpose and intent of the $4.4 Million Transfer was solely to benefit Frinzi, though his sole ownership and control of MGR.

37. The illegitimate nature of the $4.4 Million Transfer is further evidenced by Frinzi's subsequent attempts to hide it. As part of a purported "settlement" between the Debtor and 18920 NW 11th LLC ("18920"), Frinzi attempted to grant 18920 a security interest in, or an assignment of, the purported "loan" from the Debtor to MGR regarding the $4.4 Million Transfer. To this end, Frinzi signed for the Debtor an *Amended Secured Promissory Note* dated December 20, 2021 (which date was false, the document instead being signed on or about March 9, 2022), purporting to create a note payable by Multiband to MGR (even though Multiband or the Debtor allegedly loaned the funds to MGR) for $4.5 million, and a *Security Agreement* purporting to grant 18920 a security interest in said amended and false promissory note. Upon belief, Frinzi orchestrated the creation of this sham transaction and the execution of these sham documents in order to make it appear that, instead of the Debtor or Multiband having rights against MGR, it was in fact the Debtor or Multiband who owed money to MGR and which rights 18920 held a security interest against.

D. **THE $962K TRANSFER**

38. On or about December 31, 2021, Frinzi caused GNET ATC to enter into that certain *Subcontract Services Agreements* with MGR, pursuant to which GNET ATC allegedly

subcontracted various services to MGR related to Citizens Telecom Services Company, LLC d/b/a Frontier Communications. Said agreement provided for a payment by GNET ATC to MGR of $962,000.00, on a non-refundable basis, purportedly for services that MGR would provide to GNET ATC.

39. On December 30, 2021, Frinzi caused GNET ATC to transfer $962,000.00 of its funds held at East West Bank (account ending in 0690) to MGR (the "$962k Transfer").

40. This was an insider transaction for which GNET ATC received no reasonably equivalent value. Among other things, there was no reason for GNET ATC to pay MGR for any subcontracting services to Frontier Communications related to recycling decommissioned telecommunications equipment, as the underlying contract to be serviced thereby was profitable, albeit marginally, and there was no reason for any set-up fees for work. The underlying contract was serviced by fairly low-paid employees, who would have simply been moved over to MGR. The only legitimate reason for a subcontract was that the subcontractor would have been able to perform the services for a lower price, but in that instance it would not be GNET ATC paying MGR for anything. Nor was the underlying contract a large one. Furthermore, upon information and belief, Frinzi subsequently caused the underlying contract to be assigned to MGR.

E.  **FRUITS OF TRANSFERS AND SUBSEQUENT TRANSFERS**

41. On or about January 24, 2022, MGR purchased, by warranty deed, certain real property and improvements located at 521 N. Horseshow Bay Blvd., Horseshoe Bay, Texas (the "Lakehouse").

42. Upon information and belief, all or some of the purchase price MGR used to purchase the Lakehouse was from the $4.4 Million Transfer or the $962k Transfer.

43. On or about May 13, 2022, MGR transferred the Lakehouse, by warranty deed, to FFT.

44. Upon information and belief, FFT did not pay reasonably equivalent value for the Lakehouse.

45. On or about April 7, 2022, MGR purchased, by warranty deed, certain undeveloped real property in Llano County, Texas, consisting of approximately .7 acres, and identified as Lot 44 at the La Serena Loop, Horseshoe Bay, Texas 78657 (the "Lot").

46. Upon information and belief, all or some of the purchase price MGR used to purchase the Lot was from the $4.4 Million Transfer or the $962k Transfer.

47. On or about May 13, 2022, MGR transferred the Lot, by special warranty deed, to FFT.

48. Upon information and belief, FFT did not pay reasonably equivalent value for the Lakehouse.

49. Effective August 21, 2022, AMRR entered into an asset purchase agreement with MGR, whereby AMRR purchased substantially all assets of MGR, including $1,000,000.00 in cash, certain contracts, and certain other property, in exchange for AMRR issuing to MGR 1,000,000 shares of Series A Convertible Preferred Stock (the "Preferred Stock").

50. Upon information and belief, some or all of said $1 million was from the $4.4 Million Transfer or the $962k Transfer.

51. MGR did not receive reasonably equivalent value for the Preferred Stock, in that the Preferred Stock was worthless, with AMRR hopelessly insolvent. Rather, the purpose of the Preferred Stock transfer was for Frinzi to obtain greater and preferential control over AMRR.

### IV. CAUSES OF ACTION

**COUNT 1:** **BREACH OF FIDUCIARY DUTY—STOCK PURCHASE & 962K TRANSFER**

52. The Plaintiffs incorporate their allegations above.

53. Frinzi, while an officer and a fiduciary of the Debtor and/or GNET ATC, caused the Debtor and/or GNET ATC to transfer the $500,000.00 purchase price for the Stock Purchase in an insider transaction in that the beneficiary of the transfer was MGR and Frinzi. Neither the Debtor nor GNET ATC received any value for this transfer.

54. Frinzi, while an officer and a fiduciary of the Debtor and/or GNET ATC, caused the Debtor and/or GNET ATC to make the $962K Transfer to MGR in an insider transaction in that the beneficiary of the transfer was MGR and Frinzi. Neither the Debtor nor GNET ATC received any value for this transfer.

55. The Debtor was insolvent at the time of these transfers, as was GNET ATC.

56. At the time of said transfers, Frinzi owed a duty of care to the Debtor and/or GNET ATC, including to safeguard their assets and to not waste their assets.

57. At the time of said transfers, Frinzi owed a duty of loyalty to the Debtor and/or GNET ATC, including not to self-deal and not to transact in a manner harmful to the Debtor and/or GNET ATC and beneficial to himself, and to make any insider transaction fair, which these transactions were not.

58. Frinzi caused the Debtor and/or GNET ATC to make the foregoing transfers solely for his benefit, in order that he could purchase the Stock and own and control AMRR, and in order to transfer cash to MGR for his use and benefit, with the subsequent intention of vesting AMRR with OnePath, again for his benefit, all to the exclusion of any benefit to the Debtor and/or GNET ATC. Under any alternative scenario, it would have been the Debtor and/or GNET ATC that would have purchased the Stock.

59. With respect to the duty of care, Frinzi was grossly negligent in not causing the Debtor and/or GNET ATC to acquire the stock, in that its/their money was used to pay the same, and was grossly negligent in making the $962K Transfer because that amount greatly overstated

the value of any services that MGR would or could provide to GNET ATC under the subcontract agreement.

60. In the process, Frinzi breached his fiduciary duties to the Debtor and/or GNET ATC.

61. Accordingly, the Trustee and GNET ATC hereby seek a judgment that Frinzi breached his fiduciary duties to one, either, or both of them by causing one or both of them to transfer $500,000.00 in order that he could solely benefit by MGR purchasing the stock and in causing the $962K Transfer.

**COUNT 2:** **UNJUST ENRICHMENT (FRINZI AND MGR)**

62. The Plaintiffs incorporate their allegations above.

63. In causing the Debtor and/or GNET ATC to transfer $500,000.00 for MGR in order that MGR could purchase the Stock, MGR was unjustly enriched at the expense of the Debtor and/or GNET ATC. Likewise, Frinzi, as the sole owner of MGR, was unjustly enriched by the same.

64. In causing the Debtor and/or GNET ATC to make the $962K Transfer, MGR was unjustly enriched at the expense of the Debtor and/or GNET ATC. Likewise, Frinzi, as the sole owner of MGR, was unjustly enriched by the same.

65. Accordingly, the Trustee and/or GNET ATC seek a judgment against MGR and Frinzi for the unjust enrichment of $500,000.00 and $962,000.00.

**COUNT 3:** **IMPOSITION/DECLARATION OF CONSTRUCTIVE TRUST—STOCK**

66. The Plaintiffs incorporate their allegations above.

67. Texas law permits the imposition of a constructive trust when a fiduciary breaches his fiduciary duties, as Frinzi did with respect to the Debtor and GNET ATC, over the fruits and proceeds of the breach of fiduciary duty regarding the Stock and Stock Purchase.

68. Texas law permits the imposition of a constructive trust when one has been unjustly enriched, over the fruits and proceeds of the unjust enrichment.

69. The Stock, meaning the ownership of AMRR, is readily identifiable and traceable to the $500,000.00 transferred by the Debtor and/or GNET ATC that was used directly to purchase the Stock as a result of Frinzi's breach of fiduciary duty and the unjust enrichment, as plead in Counts 1 and 2 above.

70. Accordingly, the Trustee and GNET ATC seek the immediate imposition, for their mutual benefit pending an adjudication as between them of which owns the right, of a constructive trust over the Stock and over all of MGR's stock, ownership, and rights of AMRR, and a finding that MGR has owned the Stock since its purchased it in trust for the benefit of the Debtor and/or GNET ATC.

**COUNT 4:** **IMPOSITION/DECLARATION OF RESULTING TRUST—STOCK**

71. The Plaintiffs incorporate their allegations above.

72. A resulting trust arises by operation of Texas law when title is conveyed to one person but the purchase price or a portion thereof is paid by another. The parties are presumed to have intended that the grantee hold title to the use of him who paid the purchase price and whom equity deems to be the true owner.

73. Here, the Debtor and/or GNET ATC paid the purchase price of the Stock; *i.e.* the funds that were used such that MGR could purchase the Stock. As such, the Debtor and/or GNET have at all times been the true owners of the Stock and of AMRR.

74. Accordingly, the Trustee and GNET ATC seek the immediate imposition or declaration, for their mutual benefit pending an adjudication as between them of which owns the right, of a resulting trust over the Stock and over all of MGR's stock, ownership, and rights of

AMRR, and a finding that the Debtor and/or GNET have owned the Stock and all of the foregoing since its purchase by MGR.

**COUNT 5:** **BREACH OF FIDUCIARY DUTY—$4.4 MILLION TRANSFER**

75. The Plaintiffs incorporate their allegations above.

76. Frinzi, while an officer and a fiduciary of the Debtor and/or Multiband, caused the Debtor and/or Multiband to transfer the $4.4 Million to MGR in an insider transaction in that the beneficiary of the $4.4 Million Transfer was MGR and Frinzi. Neither the Debtor nor Multiband received any value for this transfer.

77. The Debtor was insolvent at the time of this transfer.

78. At the time of the $4.4 Million Transfer, Frinzi owed a duty of care to the Debtor and/or Multiband, including to safeguard their assets and to not waste their assets.

79. At the time of the $4.4 Million Transfer, Frinzi owed a duty of loyalty to the Debtor and/or Multiband, including not to self-deal and not to transact in a manner harmful to the Debtor and/or Multiband and beneficial to himself, and to make any insider transaction fair, which this transaction was not.

80. Frinzi caused the Debtor and/or Multiband to make the $4.4 Million Transfer solely for his benefit, in order that he could use the funds for his personal benefit through MGR.

81. In the process, Frinzi breached his fiduciary duties to the Debtor and/or Multiband, including his duty of loyalty.

82. To the extent the $4.4 Million Transfer was intended to be a loan, the same constituted gross negligence by Frinzi in that MGR had no ability to repay the loan, did not attempt to repay the loan, entered into no written agreement for the same, and provided no security for the same. As such, Frinzi breached his duty of care to the Debtor and/or Multiband by causing the $4.4 Million Transfer.

83. Accordingly, the Trustee and Multiband hereby seek a judgment that Frinzi breached his fiduciary duties to one, either, or both of them by causing one or both of them make the $4.4 Million Transfer in order that he could solely benefit from it.

**COUNT 6:** **UNJUST ENRICHMENT (FRINZI AND MGR)**

84. The Plaintiffs incorporate their allegations above.

85. In causing the Debtor and/or Multiband to make the $4.4 Million Transfer, MGR was unjustly enriched at the expense of the Debtor and/or Multiband. Likewise, Frinzi, as the sole owner of MGR, was unjustly enriched by the same.

86. Accordingly, the Trustee and/or Multiband seek a judgment against MGR and Frinzi for the unjust enrichment of $4.4 million.

**COUNT 7:** **FRAUDULENT TRANSFER—$4.4 MILLION TRANSFER**

87. The Plaintiffs incorporate their allegations above.

88. The funds used to make the $4.4 Million Transfer were the Debtor's funds, earmarked to make the transfer with Multiband being used as a mere conduit.

89. The Debtor was insolvent at the time of the $4.4 Million Transfer.

90. The Debtor did not receive reasonably equivalent value for the $4.4 Million Transfer.

91. Accordingly, the Trustee seeks the avoidance, under section 548(a)(1)(B) of the Bankruptcy Code.

**COUNT 8:** **RECOVERY OF FRAUDULENT TRANSFER—$4.4 MILLION TRANSFER**

92. The Plaintiffs incorporate their allegations above.

93. The Trustee requests the recovery of the avoided $4.4 Million Transfer under section 550(a)(1) of the Bankruptcy Code by way of money judgment against MGR and turnover of the Preferred Stock as identifiable proceeds of the $4.4 Million Transfer.

94. The Trustee requests the recovery of the avoided $4.4 Million Transfer under section 550(a)(2) of the Bankruptcy Code from FFT by way of turnover of the Lakehouse and the Lot, as identifiable proceeds of the $4.4 Million Transfer.

95. The Trustee requests the recovery of the Preferred Stock by way of turnover as additional identifiable proceeds of the $4.4 Million Transfer.

**COUNT 10:** FRAUDULENT TRANSFER—LAKEHOUSE AND LOT

96. The Plaintiffs incorporate their allegations above.

97. The Debtor and Multiband are creditors of MGR with claims existing prior to MGR's transfer of the Lakehouse and Lot.

98. MGR transferred the Lakehouse and Lot from MGR to FFT in actual fraud of MGR's creditors, knowing that those creditors, including the Debtor, would seek the recovery of the $4.4 Million Transfer. These transfers were to an insider, for no return consideration, they were hidden, MGR, through Frinzi, retained effective control over the assets, at or near the time of the transfers, and Frinzi knew that the Debtor was insolvent and had, or shortly would default to its secured bondholders, who would look to recover assets including assets fraudulent transferred.

99. MGR transferred the Lakehouse and the Lot for less than reasonably equivalent value, which transfer was made when MGR was insolvent or the transfers rendered it insolvent.

100. The Texas Uniform Fraudulent Transfer Act ("TUFTA") permits the avoidance of the transfer of the Lakehouse and Lot as actually fraudulent and constructively fraudulent transfers.

101. The Trustee seeks the avoidance, under TUFTA, of the transfer of the Lakehouse and Lot and the recovery of the same for the benefit of the Debtor and/or Multiband. The Trustee further seeks the recovery from MGR of his reasonable attorney's fees incurred herein.

**COUNT 10:   IMPOSITION/DECLARATION OF CONSTRUCTIVE TRUST—$4.4 MILLION TRANSFER AND $962K TRANSFER**

102.     The Plaintiffs incorporate their allegations above.

103.     Texas law permits the imposition of a constructive trust when a fiduciary breaches his fiduciary duties, as Frinzi did with respect to the Debtor and Multiband, over the fruits and proceeds of the breach of fiduciary duty.

104.     Texas law permits the imposition of a constructive trust when one has been unjustly enriched, over the fruits and proceeds of the unjust enrichment.

105.     TUFTA and the Bankruptcy Code permit the imposition of a constructive trust over fraudulently transferred property and its proceeds.

106.     The Lakehouse, Lot, and Preferred Stock are readily identifiable and traceable to the $4.4 Million Transfer and the $962K Transfer and to Frinzi's breaches of fiduciary duty with respect to the same, the unjust enrichment of MGR with respect to the same, and the fraudulent transfers with respect to the same.

107.     Accordingly, the Trustee, GNET ATC and Multiband seek the immediate imposition, for their mutual benefit pending an adjudication as between them of which owns the right, of a constructive trust over the Lakehouse and Lot, and a finding that FFT has owned the same since it acquired the same from MGR it in trust for the benefit of the Debtor and/or Multiband.

## V.     RESERVATION OF RIGHTS

108.     The Trustee and the Estate, and GNET ATC and Multiband, hold other claims and causes of action against Frinzi related to transactions and transfers, including breaches of fiduciary duty, other than and in addition to the MGR transfers and transactions complained of herein. Nothing in this Complaint is intended to or shall prejudice any such separate and additional claims,

including under principles of *res judicata*, and the Trustee expressly preserves and retains all such separate and additional claims.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs request that the Defendants be cited to appear and to answer this Complaint and that they have judgment as follows:

(i) money judgment against Frinzi for his breaches of fiduciary duty;

(ii) money judgment for unjust enrichment and restitution against MGR as requested above;

(iii) a constructive trust and/or resulting trust over the Stock and over all of MGR's stock, ownership, and rights of AMRR;

(iv) avoidance and recovery of the $4.4 Million Transfer;

(v) avoidance and recovery of the transfer of the Lakehouse and Lot;

(vi) a constructive trust and/or resulting trust and/or recovery under section 550 of the Bankruptcy Code as against the Lakehouse, Lot, and Preferred Stock;

(vi) turnover of the Stock, Lakehouse, Lot, and Preferred Stock;

(vii) reasonable attorney's fees to the extent provided for by applicable law;

(viii) prejudgment and postjudgment interest to the extent provided by applicable law; and

(ix) such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 4th day of May, 2023.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Thomas D. Berghman, Esq.
    Texas Bar No. 24082683
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email: drukavina@munsch.com

**COUNSEL FOR SCOTT SEIDEL, CHAPTER 7 TRUSTEE**