Jason M. Rudd, Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Scott D. Lawrence, Texas State Bar No. 24087896
scott.lawrence@wickphillips.com
Catherine A. Curtis, Texas State Bar No. 24095708
catherine.curtis@wickphillips.com
Mallory A. Davis, Texas State Bar No. 24133121
mallory.davis@wickphillips.com
Paul T. Elkins, Texas State Bar No. 24092383
paul.elkins@wickphillips.com
WICK PHILLIPS GOULD MARTIN, LLP
3131 McKinney Ave., Suite 500
Dallas, Texas 75204
(214) 692-6200 (office)
(214) 692-6255 (facsimile)

**COUNSEL FOR JAMES FRINZI; FRINZI FAMILY TRUST;
MULTIBAND GLOBAL RESOURCES, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 22-31641-mv-7 |
| **GOODMAN NETWORKS, INC.** | § | |
| | § | **(Chapter 7)** |
| Debtor. | § | |
| | § | |
| | § | |
| **SCOTT M. SIEDEL, TRUSTEE; GNET ATC, LLC; MULTIBAND FIELD SERVICES, INC.** | § | |
| | § | |
| | § | |
| | § | |
| Plaintiffs, | § | **ADVERSARY PROCEEDING NO: 23-03036-mvl** |
| | § | |
| vs. | § | |
| | § | |
| **JAMES FRINZI; FRINZI FAMILY TRUST; MULTIBAND GLOBAL RESOURCES, LLC** | § | |
| | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' BRIEF IN SUPPORT
## OF MOTION TO WITHDRAW THE REFERENCE

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................III

I. INTRODUCTION ...........................................................................................................1

II. RELEVANT BACKGROUND.........................................................................................2
    A.    Frinzi's Prior Employment by the Goodman Companies.......................................2
    B.    The Debtor's Bankruptcy Filing, the Trustee's Notice and Demand, and Subsequent Adversary Proceedings.......................................................................3
    C.    This Adversary Proceeding...................................................................................4

III. ARGUMENTS AND AUTHORITY.................................................................................8
    A.    Withdrawal of the Reference Is Mandatory Because Defendants Have a Constitutional Right to a Jury Trial, Which They Have Requested. ......................8
        1.   Defendants are Entitled to a Jury Trial as to the Section 548 Claim (Count 7). 10

        2.   The State Law Claims Are Non-Core Claims to Which Defendants are Entitled to a Jury Trial. ...................................................................................... 11

        3.   Defendants Have Requested and are Entitled to a Jury Trial Even if Certain Claims—Standing Alone—Would Not Otherwise Confer a Jury Trial Right. .... 13

    B.    Alternatively, Withdrawal of the Reference Is Appropriate Under the Applicable Permissive Standard. ..........................................................................14
        1.   Frinzi has not waived his, or FFT and MGR's, jury trial rights or rights to Article III adjudication.......................................................................................... 15

        2.   The Bankruptcy Court does not have constitutional authority to enter a final judgment in this Adversary Proceeding. ............................................................. 17

        3.   The remaining applicable *Holland* factors favor withdrawal......................... 19

        4.   The District Court is best suited to conduct pretrial proceedings as well as hear the sole pending and determinative State Law Claims. ................................ 22

IV. CONCLUSION..............................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 ..................................................................................... 13

*Bleecker v. Standard Fire Inc. Co.*,
    130 F. Supp. 2d 726 (E.D.N.C. 2000)..................................................... 16

*Bowles v. Bennett*,
    629 F.2d 1092 (5th Cir.1980) ................................................................ 17

*Case Energy Servs., LLC v. Padco Energy Servs., LLC*,
    2017 WL 4544719 (W.D. La. Oct. 11, 2017) .......................................... 16

*Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*,
    494 U.S. 558 (1990)................................................................................. 9

*Curtis v. Cerner Corp.*,
    2020 WL 1983937 (S.D. Tex. Apr. 27, 2020) ........................................ 22

*Curtis v. Loether*,
    415 U.S. 189 (1974)............................................................................ 9, 13

*Dimick v. Schiedt*,
    293 U.S. 474 (1935)............................................................................... 17

*Duncan v. First Nat'l Bank of Cartersville Ga.*,
    597 F.2d 51 (5th Cir. 1979) .................................................................. 13

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989).......................................................................... passim

*Holland Am. Ins. Co. v. Succession of Roy*,
    777 F.2d 992 (5th Cir. 1985) ................................................................ 15

*In re Align Strategic Partners LLC*,
    2019 WL 2527221 (Bankr. S.D. Tex. Mar. 5, 2019)............................... 20

*In re Am. Hous. Found.*,
    469 B.R. 257 (Bankr. N.D. Tex. 2012).................................................. 10

*In re Bascus*,
    548 B.R. 742 (Bankr. S.D. Tex. 2016) .................................................... 9

*In re BP RE, L.P.*,
    735 F.3d 279 (5th Cir. 2013) .......................................................... 12, 18

*In re Brown Med. Ctr., Inc.*,
   2016 WL 406959 (S.D. Tex. Feb. 3, 2016) ............................................................. 22

*In re Capital Assocs. Int'l*,
   2003 WL 26057510 (Bankr. N.D. Tex. Aug. 6, 2003) ............................................. 13

*In re CBI Holding Co.*,
   529 F.3d 432 (2d Cir. 2008).................................................................................... 15

*In re Clay*,
   35 F.3d 190 (5th Cir. 1994) ............................................................................... 8, 11

*In re Galaz*,
   765 F.3d 426 (5th Cir. 2014) ........................................................................... 11, 12

*In re Gulf States Long Term Acute Care of Covington, L.L.C.*,
   455 B.R. 869 (E.D. La. 2011) ................................................................................ 20

*In re Guynes Printing Co. of Tex., Inc.*,
   2015 WL 3824070 (W.D. Tex. June 19, 2015) ...................................................... 21

*In re Highland Cap. Mgmt. L.P.*,
   No. 19-34054-SGJ-11, 2021 WL 2850562 (Bankr. N.D. Tex. July 7, 2021).......................... 15

*In re Int'l Auction and Appraisal Servs., LLC*,
   493 B.R. 460 (Bankr. M.D. Pa. 2013) ................................................................... 12

*In re Lopez*,
   2017 WL 3382099 (Bankr. S.D. Tex. Mar. 20, 2017)............................................ 20

*In re MPF Holding US LLC*,
   2013 WL 12146958 (Bankr. S.D. Tex. Apr. 26, 2013) ................................ 9, 15, 21

*In re Palm Beach Fin. Partners, L.P.*,
   501 B.R. 792 ......................................................................................................... 12

*In re Royce Homes, LP*,
   578 B.R. 748 (Bankr. S.D. Tex. 2017) .................................................................. 20

*In re Sentry Operating Co. of Texas, Inc.*,
   273 B.R. 515 (Bankr. S.D. Tex. 2002) .................................................................. 16

*In re The Heritage Org., L.L.C.*,
   454 B.R. 353 (Bankr. N.D. Tex. 2011) .................................................................. 12

*In re Wilshire Homes Houston*,
   2013 WL 5162077 ................................................................................................ 12

*Langenkamp v. Culp*,
  498 U.S. 42, 45 (1990)................................................................................................ 10

*Levine v. M & A Custom Home Builder & Developer, LLC*,
  400 B.R. 200 (S.D. Tex. 2008) ................................................................ 11, 13, 14

*McAfee v. U.P. Martin*,
  63 F.3d 436 (5th Cir.1995) ..................................................................................... 17

*Mirant Corp. v. The Southern Co.*,
  337 B.R. 107 (N.D. Tex. 2006)................................................................. 8, 12, 13

*Mobley v. Quality Leasing and Rental Holdings, LLC, (In re Quality Leasing and Rental
  Holdings, LLC)*,
  2016 WL 416961 (Bankr. S.D. Tex. Feb. 1, 2006)...................................................... 8

*Nu Van Technology, Inc. v. Cottrell, Inc. (In re Nu Van Tech., Inc.)*,
  2003 WL 23785355 (Bankr. N.D. Tex. Oct. 14, 2003) ................................. 8, 12, 19

*Perlman v. Wells Fargo Bank, N.A.*,
  2012 WL 12854876 (S.D. Fla. Apr. 3, 2012) .......................................................... 16

*Schott, Tr. for Est. of InforMD, LLC v. Massengale*,
  618 B.R. 444 (M.D. La. 2020) ................................................................................ 16

*Stern v. Marshall*,
  564 U.S. 462 (2011)........................................................................................ passim

*Tow v. Speer (In re Royce Homes, L.P.)*,
  2011 WL 13340482 (Bankr. S.D. Tex. Oct. 13, 2011)............................................ 19

*U.S. Bank Nat. Ass'n v. Verizon Comm. Inc.*,
  761 F.3d 409 (5th Cir. 2014) .................................................................................. 16

*Veldekens v. GE HFS Holdings, Inc.*,
  362 B.R. 762 (S.D. Tex. 2007) ............................................................................... 20

*Waldman v. Stone*,
  698 F.3d 910 (6th Cir. 2012) .................................................................................. 18

*Wellness Int'l Network, Ltd. v. Sharif*,
  575 U.S. 665 (2015)................................................................................................ 18

**Statutes**

11 U.S.C. § 544 ............................................................................................................................... 12

28 U.S.C. § 157(a) ............................................................................................................................ 1

28 U.S.C. § 157(b)(2) ....................................................................................................................... 7

28 U.S.C. § 157(c)(1) ...................................................................................................................... 21

28 U.S.C. § 157(d) .............................................................................................................. 1, 2, 14, 22

28 U.S.C. § 157(e) ........................................................................................................................... 17

28 U.S.C. § 1334(a), (b) .................................................................................................................... 1

**Rules**

Fed. R. Bankr. P. 5011(a) .................................................................................................................. 1

Fed. R. Bankr. P. 9033(a), (d) ......................................................................................................... 21

Defendants James Frinzi ("Frinzi"), Frinzi Family Trust ("FFT"), and Multiband Global Resources, LLC ("MGR," collectively, "Defendants") file this Brief in Support of Motion to Withdraw Reference, under 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011 and Local Bankruptcy Rule 5011-1, seeking to withdraw the reference of the above-captioned Adversary Proceeding (this "Adversary Proceeding") from the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") to the United States District Court for the Northern District of Texas (the "District Court"), in response to *Plaintiff's Amended Complaint* [Dkt. 30] ("Amended Complaint") filed Scott M. Seidel, Trustee (the "Trustee"), the trustee of Goodman Networks, Inc. (the "Debtor"), the debtor in the above styled and numbered chapter 7 bankruptcy case (the "Bankruptcy Case"), and, together with GNET ATC, LLC ("GNET") and Multiband Field Services, Inc.'s ("Multiband," with the Trustee and GNET, collectively the "Plaintiffs").[1] In support of their Motion, Defendants respectfully state as follows:

## I.
## INTRODUCTION

1.      Federal district courts have original and exclusive jurisdiction of civil cases under Title 11 and original but not exclusive jurisdiction of proceedings arising under Title 11 or arising in or related to cases under Title 11. 28 U.S.C. § 1334(a), (b). District courts can refer these cases and proceedings to the bankruptcy court within that district. 28 U.S.C. § 157(a). This Adversary Proceeding is referred to the Bankruptcy Court under a local order of the United States District Court for the Northern District of Texas. *Ord. of Reference of Bankr. Cases and Proc. Nunc Pro Tunc, In re Misc. Ord.* No. 33 (N.D. Tex. Aug. 3, 1984) (the "Reference Order").[2]

---

[1] This motion for withdrawal "shall be heard by a district judge"; however, under Local Bankruptcy Rule 5011-1(a), the motion must be filed with the Clerk of the Bankruptcy Court. Fed. R. Bankr. P. 5011(a); L.B.R. 5011-1(a). Accordingly, this motion is addressed to the District Court, but filed in the Bankruptcy Court.
[2] Available at https://www.txnd.uscourts.gov/sites/default/files/orders/misc/MiscOrder33_80384BK.pdf.

2.       Defendants respectfully request the United States District Court for the Northern District of Texas, Dallas Division withdraw the Reference Order as to the above-referenced Adversary Proceeding for all purposes, including all pre-trial matters, under 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a) and the Northern District of Texas Local Bankruptcy Rule 5011-1(a). Defendants have a constitutional right to a jury trial under the Seventh Amendment if a trial is necessary. Defendants do not consent to the Bankruptcy Court conducting a jury trial in this Adversary Proceeding and do not consent to the Bankruptcy Court entering final orders or judgments in this Adversary Proceeding. In addition, Defendants respectfully request that the reference be withdrawn immediately because: (1) the Bankruptcy Court has not yet decided any substantive matters related to these claims; (2) the inherent nature of the majority of claims asserted in the Amended Complaint are not within the specialized expertise of the Bankruptcy Court; and (3) efficiency and expediency would be served by obviating the need for two courts to become familiar with this matter, when the District Court can efficiently and cost-effectively address the pretrial matters and jury trial on the claims asserted in the Amended Complaint.

## II.
## RELEVANT BACKGROUND

### A.      Frinzi's Prior Employment by the Goodman Companies

3.       Beginning in or around October 20, 2021, Frinzi served as the chief executive officer ("CEO") of Goodman Networks, Inc. (the "Debtor"). Frinzi resigned as CEO of the Debtor in or around September 4, 2022.

4.       During the same period, Frinzi served as the CEO of GNET ATC, LLC.

**B.** **The Debtor's Bankruptcy Filing, the Trustee's Notice and Demand, and Subsequent Adversary Proceedings**

5.      On September 6, 2022 (the "Petition Date"), a group of petitioning creditors of the Debtor filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Case").

6.      On December 12, 2022, the Court entered the *Order for Relief in an Involuntary Case* [ECF No. 132] and thereafter appointed Scott M. Seidel as the chapter 7 trustee ("Trustee").

7.      On January 7, 2023, GNET filed its schedules of assets and liabilities ("Schedule") and its Statement of Financial Affairs ("SOFA") [ECF No. 184] in which it asserts that GNET "may hold a number of claims against Debtor's previous CEO, James Frinzi (Frinzi), and companies owned by, controlled by or affiliated with Frinzi related to loans and/or transfers made by the Debtor at his direction."

8.      On or about April 27, 2023, the Trustee delivered to Frinzi, among others, a notice of claims, circumstances, and demand for monetary relief, which contained a demand for "immediate payment in an amount no less than $100 million from the Directors and Officers [(as defined in the notice), including James Frinzi,]" related to Frinzi's purported actions in contravention of fiduciary duties, duties of care and loyalty, and contractual obligations[3] to the Debtor and its wholly-owned subsidiaries, GNET and Multiband Field Services, Inc. (together, the "Subsidiaries" and together with the Debtor, the "Goodman Companies").

---

[3] Frinzi explicitly denies and disclaims any liability or wrongdoing whatsoever.

C.    **This Adversary Proceeding**

9.     On May 4, 2023, the Trustee brought this Adversary Proceeding against Frinzi, FFT, and MGR by filing its Original Complaint.[4] On November 27, 2023, the Trustee filed its Amended Complaint, which contains the same factual allegations against Defendants but added three additional causes of action.[5]

10.    The gravamen of Plaintiffs' claims against Frinzi, FFT, and MGR relate to allegations that Frinzi, while acting as CEO of the Debtor, GNET, Multiband, and the manager MGR, was involved in a transaction whereby the Debtor's funds were used to acquire the stock ("Stock") of a publicly traded shell, American Metals Recover and Recycling, Inc. n/k/a MBG Holdings, Inc. ("AMRR"), and merge it with an existing business, AMR Resources, LLC and/or OnePath Systems, LLC ("OnePath").[6] Plaintiffs allege several wrongful transfers occurred around this transaction.

11.    Plaintiffs allege Frinzi caused the Stock to be purchased by MGR for $500,000 using funds from the Debtor and/or GNET (the "Stock Purchase" or the "$500K Transfer").[7]

12.    Plaintiffs allege Frinzi caused $4.4 million to be wired from Multiband to MGR, which Plaintiffs contend was to benefit Frinzi, and which funds Plaintiffs contend always remained property of the Debtor (the "$4.4M Transfer").[8]

---

[4] Case No. 23-03036-mvl in this Court. On September 5, 2023, Trustee brought another adversary proceeding, case No. 23-03072-mvl in this Court, against Frinzi, 18920 NW11th, LLC, and James Goodman, among other defendants, for claims of fraudulent transfer and breach of fiduciary duty.

[5] *See* Amended Complaint, ¶¶ 110–27 (adding Conversion, Embezzlement, and Texas Theft Liability Act claims).

[6] *See* Amended Complaint, ¶¶ 16–19. For ease of reference, this Motion summarizes the allegations in the Amended Complaint, but the recitation of Plaintiff's allegations do not constitute admission of any such allegations, and Defendants explicitly deny and disclaim any liability or wrongdoing whatsoever.

[7] *See* Amended Complaint, ¶¶ 20–26.

[8] *See* Amended Complaint, ¶¶ 30–38.

13.    Plaintiffs also allege Frinzi caused GNET to enter a Subcontract Services Agreements with MGR, pursuant to which GNET allegedly subcontracted various services to MGR related to Citizens Telecom Services Company, LLC d/b/a Frontier Communications for for a payment by GNET to MGR of $962,000.00 (the "$962K Transfer").[9]

14.    Plaintiffs also allege Frinzi caused MGR to purchase a lakehouse and surrounding real property in Horseshoe Bay, Texas (the "Lakehouse" and the "Lot"), which Plaintiffs allege MGR then transferred to FFT, and that all or some of the purchase price for the Lakehouse and the Lot was from the $4.4M Transfer or the $962K Transfer.[10]

15.    Based on these allegations, Plaintiffs assert two claims under the Bankruptcy Code and eleven state law claims against Defendants. Incorporating the same facts as the basis for each of the claims, the Amended Complaint asserts thirteen total causes of action, outlined below.[11]

| **Count 1**: Breach of Fiduciary Duty (Stock Purchase and $962K Transfer) | Texas Common Law |
| --- | --- |
| **Count 2**: Unjust Enrichment (Frinzi and MGR) | Texas Common Law |
| **Count 3**: Request for Imposition/Declaration of a Constructive Trust (Stock) | Texas Common Law |
| **Count 4**: Request for Imposition/Declaration of Resulting Trust (Stock) | Texas Common Law |
| **Count 5**: Breach of Fiduciary ($4.4M Transfer); | Texas Common Law |
| **Count 6**: Unjust Enrichment ($4.4M Transfer); | Texas Common Law |
| **Count 7**: Fraudulent Transfer ($4.4M Transfer) | Bankruptcy Code |

---

[9] *See* Amended Complaint, ¶ 40.

[10] *See* Amended Complaint, ¶¶ 43–48.

[11] *See* Amended Complaint, pp. 10–19.

| Count 8: Recovery Fraudulent Transfer ($4.4M Transfer) | Bankruptcy Code |
| Count 9[12]: Fraudulent Transfer (Lakehouse and the Lot) | Texas Statute (TUFTA) |
| Count 10: Imposition/Declaration of Constructive Trust (Lakehouse and Lot) | TUFTA and Bankrupcty Code |
| Count 11: Conversion | Texas Common Law |
| Count 12: Embezzlement | Texas Common Law |
| Count 13: Texas Theft Liability Act | Texas Statute (Theft Liability Act) |

16.     In sum, eleven of the thirteen claims are strictly state law claims. [13]

17.     Counts 7–8, fraudulent transfer claims concerning the $4.4M Transfer, are the only claims asserted solely under the Bankruptcy Code.[14]

18.     Defendants Frinzi and FFT filed their Original Answer on June 7, 2023 (Dkt. 8), and a First Amended Answer on June 28, 2023 (Dkt. 15), expressly stating they did not consent to the Bankruptcy Court entering final orders or judgment or conducting a jury trial.[15] The deadline for Defendants to respond to the Amended Complaint (filed November 27, 2023) has not occurred as of the deadline to file this Motion under the Court's Scheduling Order.[16]

---

[12] Count 9 is styled as Count 10 in the Original and the Amended Complaint.

[13] The constructive and resulting trust claims are explicitly brought under "Texas law." *See* Amended Complaint, ¶ 69 ("Texas law permits . . . .") (Count 3); ¶ 74 ("by operation of Texas law . . . .") (Count 4). The fraudulent transfer claim concerning the Lakehouse and Lot is explicitly brought under the Texas Uniform Fraudulent Transfer Act. *See* Amended Complaint, ¶ 102 ("The Texas Uniform Fraudulent Transfer Act ("TUFTA") permits . . . .") (Count 9). The Texas Theft Liability is explicitly cited as the basis for Plaintiffs' theft claim. *See* Amended Complaint, ¶ 126 ("Plaintiffs seek a money judgment against Frinzi under section 134.003 and 134.005(a) of the Texas Civil Practice and Remedies Code"). The breach of fiduciary duty, unjust enrichment, conversion, and embezzlement claims (Counts 1–2, 5–6, 11–12) are Texas common law claims; although, Texas law is not explicitly referenced in the Amended Complaint concerning these claims.

[14] *See* Amended Complaint, ¶ 93 (Count 7), ¶¶ 95–96 (Count 8).

[15] *See* Original Answer, ¶ 4 (Dkt. 8); First Amended Answer, ¶ 4, p. 15, para. 2 ("Rule 7012 Statement") (Dkt. 15).

[16] *See* Agreed Scheduling Order, ¶ 11 (Dkt. 17) ("any motion for the withdrawal of the reference should be filed no later than December 1, 2023").

19.     Discovery is in its early stages in the Adversary Proceeding.

20.     Frinzi, individually, filed a proof of claim [Claim No. 39-1] ("POC") in the Bankruptcy Proceeding to preserve his indemnification rights against the Debtor based on the Fifth Amended and Restated Bylaws of Goodman Networks, Inc. and an Indemnification Agreement, by and between Goodman Networks, Inc. and James Frinzi, dated October 20, 2021.[17]  In the POC, Frinzi stated,

> The execution and filing of this Proof of Claim is not and shall not be deemed or construed as: . . . (b) a consent by Creditor to the jurisdiction or venue of the Bankruptcy Court with respect to proceedings, if any, commenced in or under or related to the Case against or otherwise involving Creditor; (c) a waiver or release of Creditor's right to trial by jury in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a waiver or release of Creditor's right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge; (e) a waiver of Creditor's right to move or to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be commenced in the Case against or otherwise involving Creditor . . . .[18]

21.     FFT and MGR have not filed a proof of claim in the Bankruptcy Proceeding.

22.     On December 1, 2023, Defendants filed their Jury Demand requesting this matter be tried before a jury.[19]

---

[17] *See* Addendum to POC, pp. 1–3.
[18] *See* Addendum to POC, ¶ 11.
[19] *See* Jury Demand, p. 1 (filed Dec. 1, 2023).

## III.
## ARGUMENTS AND AUTHORITY

**A.**  **Withdrawal of the Reference Is Mandatory Because Defendants Have a Constitutional Right to a Jury Trial, Which They Have Requested.**

23.    Under the Reference Order, "any and all cases under Title 11 and any all proceeding arising under Title 11 or arising in or related to a case under Title 11 . . . which may be filed herein hereafter . . . be and they hereby are referred to the Bankruptcy Judges of this District for consideration and resolution consistent with law." Where, as here, a defendant has a Seventh Amendment right to a jury trial and does not consent to a jury trial by the bankruptcy court, withdrawal of the reference is mandatory. *See In re Clay*, 35 F.3d 190, 194 (5th Cir. 1994) (holding that, absent consent of the parties, a bankruptcy court cannot hold a jury trial in a matter in which the defendant holds a Seventh Amendment right to a jury trial); *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) ("In *In re Clay* the Fifth Circuit held that there must be a withdrawal of the reference as to claims to which the right to trial by jury attach.").[20] The Fifth Circuit has held that bankruptcy courts lack the statutory authority to conduct jury trials without the consent of all the parties. *See In re Clay*, 35 F.3d at 194.

24.    Defendants have requested a jury trial.[21] As the Supreme Court ruled in *Granfinanciera*, the right to a jury trial in adversary proceedings does not turn on whether, as a jurisdictional matter, the proceeding is core or non-core. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).[22] Instead, the analysis generally turns on whether the cause of action (i) is legal

---

[20] *See also Mobley v. Quality Leasing and Rental Holdings, LLC, (In re Quality Leasing and Rental Holdings, LLC)*, 2016 WL 416961 at *5 (Bankr. S.D. Tex. Feb. 1, 2006) (recommending withdrawal of reference involving both core and non-core claims because "[w]hen a party that is entitled to a jury trial properly requests a jury and does not consent to a jury trial before the bankruptcy court, the bankruptcy court must recommend that the adversary proceeding be withdrawn to the district court for the trial").

[21] *See* Jury Demand (filed Dec. 1, 2023).

[22] *See also Nu Van Technology, Inc. v. Cottrell, Inc. (In re Nu Van Tech., Inc.)*, 2003 WL 23785355, at *2 (Bankr. N.D. Tex. Oct. 14, 2003) ("A party against whom legal action has been brought to recover monetary damages and who has never filed a claim against the estate is entitled to a jury trial under the constitutional mandates of the Seventh

or equitable in nature; and (ii) involves public or private rights. *Granfinanciera*, 492 U.S. at 53–54.

25.     To determine whether a cause of action "is legal in nature, and thus accorded the right of jury trial," courts examine if the action traditionally would have been brought in a court of law and, "more importantly" whether the plaintiff seeks a legal or equitable remedy.[23] Here, the Plaintiffs specifically seek monetary damages against Defendants for multiple claims:

> WHEREFORE, PREMISES CONSIDERED, the Plaintiffs request that the Defendants be cited to appear and to answer this Complaint and that they have judgment as follows:
>
> (i)      money judgment against Frinzi for his breaches of fiduciary duty, conversion, embezzlement, and under the Texas Theft Liability Act;
>
> (ii)     money judgment for unjust enrichment and restitution against MGR as requested above;
>
> (iii)    a constructive trust and/or resulting trust over the Stock and over all of MGR's stock, ownership, and rights of AMRR;
>
> (iv)     avoidance and recovery of the $4.4 Million Transfer;
>
> (v)      avoidance and recovery of the transfer of the Lakehouse and Lot;
>
> (vi)     a constructive trust and/or resulting trust and/or recovery under section 550 of the Bankruptcy Code as against the Lakehouse, Lot, and Preferred Stock;
>
> (vi)     turnover of the Stock, Lakehouse, Lot, and Preferred Stock;
>
> (vii)    reasonable attorney's fees to the extent provided for by applicable law;
>
> (viii)   prejudgment and postjudgment interest to the extent provided by applicable law; and
>
> (ix)     such other and further relief as may be appropriate.

[24]

---

Amendment to the United States Constitution, notwithstanding Congress' characterization of the action as a core proceeding."); *In re MPF Holding US LLC*, 2013 WL 12146958, at *3 (Bankr. S.D. Tex. Apr. 26, 2013) (holding that preference defendant has a jury trial right "notwithstanding Congress' characterization of the action as a core proceeding").

[23] *In re Bascus*, 548 B.R. 742, 745–46 (Bankr. S.D. Tex. 2016) (citing *Granfinanciera*). Courts hold that "the nature of the remedy is always to be given more weight than the nature of the [underlying] right." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 580 (1990) (Brennan, J. concurring). *See also Curtis v. Loether*, 415 U.S. 189, 194 (1974) ("More important, the relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law  there is surely no basis for characterizing the award of compensatory and punitive damages here as equitable relief.").

[24] Amended Complaint, p. 20.

26.     While Plaintiffs also seek the imposition of constructive or resulting trusts, Plaintiffs' Amended Complaint shows these claims are factually based on the breach of fiduciary duty claims Plaintiffs allege occurred due to the result of monetary transfers, particularly the $500K Transfer, the $962K Transfer, and the $4.4M Transfer.[25] For the reasons detailed below, the underlying Claims are legal actions that would have been brought in a court of law. Therefore, here, both the nature of the claims and the remedy sought establish that the claims are legal, rather than equitable, actions.

27.     In addition to being legal in nature, the claims involve private rights because they are not "inextricably intertwined" with a right closely integrated into the public bankruptcy scheme. *See, e.g.*, *In re Am. Hous. Found.*, 469 B.R. 257, 260 (Bankr. N.D. Tex. 2012) (indicating that fraudulent transfer actions are "private rights"). Here, FFT and MGR have not filed proofs of claim in the Bankruptcy Case. As explained below, Frinzi's POC did not waive his right to seek withdrawal of the reference or moot his lack of consent to trial or final orders to be issued by the Bankruptcy Court. Therefore, because the claims are legal in nature and involve private rights, Defendants are entitled to a jury trial.[26]

### 1.     Defendants are Entitled to a Jury Trial as to the Section 548 Claim (Count 7).

28.     Following the Supreme Court's decision in *Granfinanciera*[27] and its subsequent decision in *Langenkamp v. Culp*,[28] courts uniformly hold that a defendant in a fraudulent

---

[25] *See* Amended Complaint, ¶ 71 ("The Stock, meaning the ownership of AMRR, is readily identifiable and traceable to the $500,000.00 transferred by the Debtor and/or GNET ATC that was used directly to purchase the Stock as a result of Frinzi's breach of fiduciary duty and the unjust enrichment, as plead in Counts 1 and 2 above.") (Count 3, seeking constructive trust over the Stock), ¶ 75 ("the Debtor and/or GNET ATC paid the purchase price of the Stock; i.e. the funds that were used such that MGR could purchase the Stock") (Count 4, seeking a resulting trust over the Stock).

[26] *See* supra n.22.

[27] 492 U.S. 33, 41 (1989) (holding that petitioners were entitled to jury trial notwithstanding designation of fraudulent conveyance suit as core proceeding triable by bankruptcy judge).

[28] 498 U.S. 42, 45 (1990).

conveyance action who has not filed a claim in the case is entitled to a jury trial notwithstanding Congress' characterization of the action as a core proceeding. *See, e.g.*, *In re Clay*, 35 F.3d at 194 (holding that defendants had Seventh Amendment rights to a jury trial on preference and fraudulent transfer claims and stating that "[r]egardless of whether one characterizes a proceeding as core or noncore, a case is not a public rights case if a litigant has a Seventh Amendment right to a trial by jury").[29] Fraudulent transfer claims are "suits at law for which the 7th Amendment right to a jury trial applies." *Levine*, 400 B.R. at 205 ("Trustee Cage's §§ 541, 542, 548, and 550 claims against Medina are suits at law for which the 7th Amendment right to a jury trial applies. Moreover, [the Trustee] seeks to recover money. Defendants have a 7th Amendment right to a jury trial of such claims." (citing *Granfinanciera*)). In *Stern*, the Supreme Court made clear that fraudulent conveyance claims do "not fall within any of the varied formulations of the public rights exceptions in this Court's cases." *Stern v. Marshall*, 564 U.S. 462, 492 (2011).

### 2. The State Law Claims Are Non-Core Claims to Which Defendants are Entitled to a Jury Trial.

29. In Counts 1–6, 9, 11–13, Plaintiffs assert the following claims based on state law (the "State Law Claims"): fiduciary duty (Counts 1, 5); unjust enrichment (Counts 2, 6); constructive/resulting trust (Counts 3–4); TUFTA (Count 9); conversion (Count 11); embezzlement (Count 12); and Texas Theft Liability Act (Count 13).[30]

30. Generally, courts find that a defendant is entitled to a jury trial as to claims based entirely on state law. *See, e.g.*, *Granfinanciera*, 492 U.S. at 56 (stating that state law claims brought in bankruptcy "[are] matters of private rather than public right").[31] Notably, courts have found that

---

[29] *Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) (withdrawing reference and holding that defendants have a right to a jury trial on fraudulent transfer claims) (citing *Granfinanciera*).
[30] Amended Complaint, pp. 10–19.
[31] *See also In re Galaz*, 765 F.3d 426, 431 (5th Cir. 2014) ("when a debtor pleads an action arising only under state-law, . . . or when the debtor pleads an action that would augment the bankrupt estate, but not 'necessarily be resolved

several of the State Law Claims asserted by Plaintiffs are non-core legal claims that involve private

rights, thereby entitling Defendants to a jury trial. The "state-law character of the claims is in no

way altered by bankruptcy law." *In re Wilshire Homes Houston*, 2013 WL 5162077, at *23.

31.     The Fifth Circuit has held that causes of action brought pursuant to TUFTA are

non-core claims that require final adjudication by the District Court absent consent of the parties.

*See In re Galaz*, 765 F.3d at 431 (finding that the district court correctly treated TUFTA as a non-

core claim that the bankruptcy court lacked authority to enter a final judgment on the TUFTA

claim but that the bankruptcy court lacked subject matter jurisdiction over conversion and unjust

enrichment counterclaims); *In re The Heritage Org., L.L.C.*, 454 B.R. 353, 360–61 (Bankr. N.D.

Tex. 2011) ("The claim under [TUFTA] does not invoke a right created by Title 11, and clearly

exists outside of bankruptcy. Therefore, at most, it is a 'related to' claim under section 1334(b).").

In addition, courts hold that state fraudulent transfer actions brought in connection with 11 U.S.C.

§ 544, like the TUFTA Claims, do not involve public rights. *See, e.g.*, *In re Palm Beach Fin.

Partners, L.P.*, 501 B.R. 792, 800 (holding that fraudulent transfer claims under §§ 544, 548 and

541 were private rights); *In re Int'l Auction and Appraisal Servs., LLC*, 493 B.R. 460, 464 (Bankr.

M.D. Pa. 2013) ("The right to recover fraudulent transfers [under 11 U.S.C. §§ 544 and 548] is a

private, not a public, right." (citing *Granfinanciera*)). Similarly, "when a legal remedy, such as

monetary relief, is sought for breach of a fiduciary duty, the action assumes legal attributes."

*Mirant Corp.*, 337 B.R. at 120.

---

in the claims allowance process [,]' then the bankruptcy court is constitutionally prohibited from entering final
judgment." (internal citations omitted). *Accord In re BP RE, L.P.*, 735 F.3d 279, 285 (5th Cir. 2013) (holding that
bankruptcy court had no authority to enter final judgment or order on state law claims). *See also In re Wilshire Homes
Houston*, 2013 WL 5162077, at *23 (bankruptcy court does not have authority to enter final judgment on state-law
matters (citing *Stern*, 564 U.S. at 499); *In re Nu Van Tech., Inc.*, 2003 WL 23785355 at *4 (finding that defendant
was entitled to jury trial because the plaintiff's alleged state law, legal causes of action).

**3. Defendants Have Requested and are Entitled to a Jury Trial Even if Certain Claims—Standing Alone—Would Not Otherwise Confer a Jury Trial Right.**

32. Courts hold that "[i]f a legal claim is joined with an equitable claim, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact." *Levine*, 400 B.R. at 206 (emphasis added) (quoting *Curtis v. Loether*, 415 U.S. at 196 n.11 ).[32] For example, in deciding whether to withdraw the reference, courts in this circuit have ruled that if a claim is based on the same facts and circumstances and "include[d] . . . issues common to" the fraudulent transfer claim to which a jury right attached, "[t]he plaintiffs' complaint [was] legal in nature" and "[the defendant was] entitled to a jury trial" on all common issues. *Levine*, 400 B.R. at 206; *see also In re Capital Assocs. Int'l*, 2003 WL 26057510, at *10 (Bankr. N.D. Tex. Aug. 6, 2003) ("[A] right to trial by jury exists on all common issues between Capital Associates's breach of contract action and its assumption action, even though the assumption action, standing alone, implicates no jury rights."). Therefore, a defendant's jury right attaches to "all claims [that] arise from and are intertwined with the same nucleus of common facts" "even [if certain of the claims], standing alone, implicate[] no jury rights." *Id.*; *see also Capital Assocs. Int'l*, 2003 WL 26057510, at *10.

33. Here, the Seventh Amendment guarantees Defendants a jury trial on all issues, even if not all claims individually confer a right to a trial by jury. Specifically, the facts underlying the claims share a common nucleus: Frinzi allegedly used funds belonging to the Debtors to purchase

---

[32]*See also Mirant Corp.*, 337 B.R. at 120 ("[W]hen a legal remedy, such as monetary relief, is sought for breach of a fiduciary duty, the action assumes legal attributes. Moreover, joinder of equitable claims with legal claims does not deprive a party of the right to a jury trial on the legal claims. Nor does the classification of a claim as core deprive a litigant of its constitutional right to a jury trial.") (internal citations omitted). *Accord Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (holding that "both parties have a Seventh Amendment right to have a jury determine all factual issues necessary to establish the plaintiffs' pattern or practice claim, a claim for legal damages that they have properly joined in the same action with a disparate impact claim for equitable relief"); *Duncan v. First Nat'l Bank of Cartersville Ga.*, 597 F.2d 51, 56 (5th Cir. 1979) ("It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control.").

shares in certain companies without requisite authority, and then allegedly transferred those shares and/or funds for less than reasonably equivalent value.[33] In fact, the Amended Complaint demonstrates how intertwined and related all of the claims and underlying facts and issues are, as the first paragraph of each Claim specifically incorporates the same facts.[34] Plaintiff's Amended Complaint demonstrates all of Plaintiffs' claims share a common set of facts: even though Plaintiffs allege three new causes of action in the Amended Complaint compared to the Original Complaint (all of which are State Law Claims), the "Facts" section in both pleadings remains virtually identical.[35] Accordingly, since the basis of each Claim "arise[s] from and [is] intertwined with the same nucleus of common facts," if this Court finds that Defendants are entitled to a jury trial as to any of the claims, then Defendants are entitled to a jury trial as to all of the issues set forth in the Amended Complaint. *See Levine*, 400 B.R. at 206.

**B.**      **Alternatively, Withdrawal of the Reference Is Appropriate Under the Applicable Permissive Standard.**

34.      28 U.S.C. § 157(d) authorizes the district court to withdraw the reference in certain circumstances: "[t]he district court may withdraw, in whole or in party, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

35.      The Fifth Circuit has set forth a number of factors to consider in determining whether to withdraw the reference for cause, including: (i) whether the proceeding involves core or non-core issues; (ii) whether a party has demanded a jury trial; (iii) whether the withdrawal would promote uniformity in bankruptcy administration; (iv) whether the withdrawal reduces forum shopping; (v) whether the withdrawal would foster the economical use of the debtors' and

---

[33] *See* Amended Complaint, ¶¶ 16–29, 43–53.

[34] *See* Amended Complaint, ¶¶ 54, 64, 68, 73, 77, 86, 89, 94, 98, 104, 110, 115, 121.

[35] *Compare* Original Complaint, ¶¶ 12–51 (Dkt. 1) *with* Amended Complaint, ¶¶ 12–53 (Dkt. 30).

creditors' resources; and (vi) whether the withdrawal would expedite the bankruptcy process. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998–99 (5th Cir. 1985). *In re Highland Cap. Mgmt. L.P.*, No. 19-34054-SGJ-11, 2021 WL 2850562, at *4 (Bankr. N.D. Tex. July 7, 2021) (analyzing permissive withdrawal using the *Holland America* factors and stating that Courts in the Northern District of Texas emphasize whether a matter is core or non-core, and whether the matter involves a jury demand); *see also* L.B.R. 5011-1 (providing that the Bankruptcy Court conduct a status conference upon motions to withdraw reference and consider certain enumerated factors).

36.     Here, the factors support the District Court withdrawing the reference for this Adversary Proceeding. The Bankruptcy Court does not have constitutional authority to enter a final judgment in this action without the consent of Defendants. More importantly, Defendants have a right to—and have requested—a jury trial.[36] Not only do the *Holland* factors militate in favor of withdraw of the reference, but courts within this Circuit recognize that the right to a jury trial should be given substantial weight in undertaking an analysis of withdrawal of the reference. *In re MPF Holding US LLC,* 2013 WL 12146958, at *3.

**1.     Frinzi has not waived his, or FFT and MGR's, jury trial rights or rights to Article III adjudication.**

37.     In the Bankruptcy Case, Frinzi filed a proof of claim to preserve his indemnity rights from Goodman in the event he is found liable for claims resulting from his involvement with the Goodman entities. Neither FFT nor MGR filed proofs of claim. Frinzi's mere filing of the POC does not constitute a waiver of the right to trial by jury. Filing "a proof of claim is a necessary but not sufficient condition to forfeiting a creditor's right to a jury trial." *In re CBI Holding Co*., 529 F.3d 432, 460 (2d Cir. 2008). "Rather, a creditor loses its jury trial right *only with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim*." *Id.*

---

[36] *See* Jury Demand (filed Dec. 1, 2023).

(emphasis added); *accord Stern*, 564 U.S. at 499  (stating in the Article III context that "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."); *see also U.S. Bank Nat. Ass'n v. Verizon Comm. Inc.*, 761 F.3d 409, 418 (5th Cir. 2014) (the right to a jury is waived where the resolution of a creditor's a claim "[would] necessarily require resolution" of a creditor's claims against the debtor). As a court in this Circuit recently explained, the Fifth Circuit has interpreted *Stern* not to mean that a chapter 5 cause of action was integrally related to the restructuring of the debtor-creditor relationship simply because the creditor filed a claim. *Case Energy Servs., LLC v. Padco Energy Servs., LLC*, 2017 WL 4544719, at *5 (W.D. La. Oct. 11, 2017) (interpreting *U.S. Bank* and *Stern*). Rather, "to decide whether a creditor is entitled to a jury trial, courts must examine whether the resolution of the creditor's proofs of claim will necessarily require the resolution of the debtor's claims against the creditor." *Id*. (citing to *U.S. Bank*, 761 F.3d at 418-19).

38.    Applying this precedent, to determine if a jury right was extinguished with the filing of a proof of claim, courts within this Circuit consider "in relevant part: whether the proofs of claim had been resolved, and, if not, whether their resolution would necessarily require the resolution of the debtor's fraudulent transfer claims (asserted by the Trustee)." *Schott, Tr. for Est. of InforMD, LLC v. Massengale*, 618 B.R. 444, 451–52 (M.D. La. 2020) (citing to *U.S. Bank,* 761 F.3d at 418). In addition, the right to a jury trial is evaluated claim by claim rather than for a case in its entirety. *See, e.g.*, *Bleecker v. Standard Fire Inc. Co*., 130 F. Supp. 2d 726, 737 (E.D.N.C. 2000); *Perlman v. Wells Fargo Bank, N.A*., 2012 WL 12854876, at *3 (S.D. Fla. Apr. 3, 2012); *In re Sentry Operating Co. of Texas, Inc*., 273 B.R. 515 (Bankr. S.D. Tex. 2002) (explaining that a creditor retains a jury trial right "with respect to any issue" not part of its filed pleading).

"Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Bowles v. Bennett*, 629 F.2d 1092, 1095 (5th Cir.1980) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). Thus, courts should "indulge every reasonable presumption against waiver" and waiver should not be found in a "doubtful situation." *McAfee v. U.P. Martin*, 63 F.3d 436, 437 (5th Cir.1995) (quoting Bowles, 629 F.2d at 1095).

39.     Here, while Frinzi filed the Proof of Claim, the Proof of Claim does not and will not involve the allowance of claims process and Frinzi's Proof of Claim—which addresses his indemnification rights pursuant to written agreements—has no effect upon this Adversary Proceeding. Frinzi could not have waived his right to a jury trial, because he expressly reserved such rights in his proof of claim.[37] Nor has Frinzi waived his right to an Article III adjudication. Defendants have a right to a jury trial and do not consent to the Bankruptcy Court conducting a jury trial. 28 U.S.C. § 157(e) (permitting a bankruptcy judge to conduct a jury trial if the judge is specifically designated to exercise such authority by the district court, but only with the express consent of all the parties).

## 2.     The Bankruptcy Court does not have constitutional authority to enter a final judgment in this Adversary Proceeding.

40.     The Bankruptcy Court does not have the constitutional authority to enter a final judgment in this action because determination of Plaintiffs' claims cannot be involved in the claims-allowance process.

41.     In *Stern*, the United States Supreme Court held that even though bankruptcy courts are statutorily authorized to enter final judgment on certain types of bankruptcy related claims, Article III of the Constitution prohibits bankruptcy courts from finally adjudicating certain of those

---

[37] *See* Addendum to POC, ¶ 11.

claims. *See generally Stern v. Marshall*, 564 U.S. 462 (2011). Because there is no claim allowance or disallowance process related to Frinzi's Proof of Claim for indemnity, the Plaintiff's claims are *Stern*-type claims. *Id.*

42.     *Stern* clarified that "*Langenkamp* ... explained ... that a preferential transfer claim can be heard in bankruptcy when the allegedly favored creditor has filed a claim, because then the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship." *Id*. at 497. But, in *Stern*, "there was never any reason to believe that the process of adjudicating [the creditor's] proof of claim would necessarily resolve [the debtor's] counterclaim." *Id*. In fact, in *Stern* the non-estate party had filed a claim that had been resolved by summary judgment (against the claimant); in this case Frinzi's proof of claim will not result in a direct monetary set off or offset to Plaintiffs in this Adversary Proceeding; instead, it will result in a claim by Frinzi for indemnification for any amounts determined to fall under Frinzi's contractual indemnification rights. The *Stern* court maintained the rights of the party against whom the estate representative was proceeding to Article III adjudication, which is what Defendants here seek.

43.     Here, Plaintiffs plead state law claims at common law and by statute (Counts 1–6, 9, 11–13) which are not integral to the restructuring of debtor-creditor relations. *Granfinanciera*, 492 U.S. at 58–59. While the Plaintiffs' claims would augment the bankruptcy estate, the claims will not necessarily be resolved in the claims allowance process and therefore, the Bankruptcy Court is constitutionally prohibited from entering a final judgment. *BP RE, L.P v. RML Waxahachie Dodge, L.L.P. (In re DP RE, L.P.)*, 735 F.3d 279, 286 (5th Cir. 2013) (quoting *Waldman v. Stone*, 698 F.3d 910, 919 (6th Cir. 2012)).

44.     The Defendants do not consent to the Bankruptcy Court entering final orders on these claims.[38] *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015) (explaining that "consent—whether express or implied—must still be knowingly and voluntary"). There has been no knowing or voluntary consent by Defendants, and as such, the Bankruptcy Court cannot enter final orders on the Plaintiffs' claims.

### 3.     The remaining applicable *Holland* factors favor withdrawal.

45.     As discussed above, in their Original and Amended Answers, Defendants did not consent to the Bankruptcy Court entering final orders in this case. Therefore, this factor mandates withdrawal of the reference. *See e.g.*, *In re Nu Van Tech., Inc.*, 2003 WL 23785355, *4 ("[T]his court is convinced that Plaintiff's claims must be heard by an Article III court and that the reference must be withdrawn."); *Tow v. Speer (In re Royce Homes, L.P.)*, 2011 WL 13340482, *5 (Bankr. S.D. Tex. Oct. 13, 2011) (noting that a valid jury demand is a "crucial factor" in a *Holland* analysis). Analysis of the other factors—uniformity, forum shopping, and efficiency—also support withdrawal of the reference.

46.     Withdrawing the reference would not at all undermine uniformity in the administration of the bankruptcy. While the Bankruptcy Court may be familiar with certain of the parties, and of the business of the Debtor, any familiarity with the facts of this Adversary Proceeding do not outweigh Defendants' right to have a jury hear the allegations asserted by Plaintiffs. As of the date of this filing, no substantive hearings have been held in this Adversary Proceeding, and only an agreed scheduling order has been issued.  Five days before the deadline for motions for the withdrawal of the reference, Plaintiffs filed an Amended Complaint with three new causes of action. No evidentiary hearings have been held or motions on the merits of the

---

[38] *See* First Amended Answer, ¶ 4, p. 15, para. 2 ("Rule 7012 Statement") (Dkt. 15).

claims in the Adversary Proceeding have been filed to allow the Bankruptcy Court to gain significant familiarity with the underlying claims in the Adversary Proceeding, even if the Court is familiar with the parties due to other proceedings before the Bankruptcy Court.

47.    While it is true that any motion to withdraw the reference is "'[i]n some sense . . . forum shopping[,] . . . '[a] good faith claim of right, even when motivated (at least in part) by a desire for a more favorable decision maker, should not on that basis alone be denied as forum shopping.'" *In re Royce Homes, LP,* 578 B.R. 748, 761 (Bankr. S.D. Tex. 2017) (citation omitted). The critical focus is whether the movant is engaging in bad faith or improper forum shopping by, for example, "'lay[ing] behind the log' to determine how [the Bankruptcy Court] would rule before filing its motion to withdraw the reference." *Id.* "A good faith claim of right ... should not on that basis alone be denied as forum shopping." *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762 (S.D. Tex. 2007). Here, Defendant has a good faith right to a jury trial in the District Court. *In re Align Strategic Partners LLC*, 2019 WL 2527221, at *4 (Bankr. S.D. Tex. Mar. 5, 2019). Given the early stage of this adversary proceeding, and Defendants' indication at the outset that they did not consent to trial before the Bankruptcy Court, Defendants are plainly not engaging in bad faith or improper forum shopping. *Compare In re Royce Homes, LP*, 578 B.R. at 761 (where party moved quickly to withdraw the reference, before any substantive rulings had been made, party did not engage in bad faith forum shopping) *with In re Lopez,* 2017 WL 3382099, at *10 (Bankr. S.D. Tex. Mar. 20, 2017) (holding that confusion was more likely if reference was withdrawn when defendant did not move to withdraw the reference until over one year after adversary proceeding was filed).

48.    Concerns of judicial efficiency weigh in favor of withdrawing the reference. First, because there will be a jury trial, it will be more efficient for the District Court to handle pretrial

matters so as to be fully acquainted with the case as it makes it way to trial in this District Court. *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. 869, 878 (E.D. La. 2011). Second, because of the jury trial rights of Defendants, the Bankruptcy Court cannot hear the *Stern*-claims presented in the Adversary Proceeding, as proposed findings of fact and conclusions of law on the merits is antithetical to the right to trial by jury. FED. R. BANKR. P. 9033(a), (d). Even if the Court determines Plaintiffs' §§ 548, 550 claims (avoidance and recovery of fraudulent transfer claims related to the $4.4M Transfer, Counts 7–8) are "core" claims, the factual basis for these claims is also asserted as an independent claim for breach of fiduciary duty (Count 5). Having the District Court adjudicate the breach of fiduciary duty, unjust enrichment, constructive trust, resulting trust, TUFTA, conversion, embezzlement, and Theft Liability Act claims while the Bankruptcy Court simultaneously hears the fraudulent transfer claim concerning the $4.4M Transfer is an inefficient, impractical, and expensive path forward. On the other hand, having the Bankruptcy Court adjudicate both the non-core, Texas common law and statutory claims, as well as the §§ 548, 550 claims would violate applicable law, as cited earlier in this motion. In addition, the Bankruptcy Court would need to submit its recommended findings of fact and conclusions of law on the entirely Texas common law and statutory claims to the District Court, which would then conduct a *de novo* review.  28 U.S.C. § 157(c)(1). Thus, the only practical and cost-effective manner of proceeding is for the District Court to conduct a jury trial on all of Plaintiffs' claims, which will ultimately determine the viability of the §§ 548, 550 claims. *In re MPF Holding US, LLC,* 2013 WL 12146958, at *3  (recommending withdrawal, and noting "immediate withdrawal of [the] reference will serve the interests of judicial economy" because it would allow the District Court to familiarize itself with the matter).

**4.      The District Court is best suited to conduct pretrial proceedings as well as hear the sole pending and determinative State Law Claims.**

49.      While the District Court has discretion to allow the Bankruptcy Court to preside over pretrial proceedings, with the District Court then trying the jury, it would be most efficient for the District Court to conduct all pretrial proceedings. (*In re Guynes Printing Co. of Tex., Inc.*, 2015 WL 3824070, at *3 (W.D. Tex. June 19, 2015)). Courts consider the following factors when determining whether the District Court should retain all pretrial matters: (i) does referral promote judicial efficiency; (ii) is the Bankruptcy Court familiar with the allegations; and (iii) do the allegations require interpretation of federal bankruptcy law. *See Curtis v. Cerner Corp.*, 2020 WL 1983937, at *5 (S.D. Tex. Apr. 27, 2020); *see also In re Brown Med. Ctr., Inc.*, 2016 WL 406959, at *2 (S.D. Tex. Feb. 3, 2016) (exercising its discretion to retain all pretrial matters as a means to maintain an active role in the case, gain familiarity with the issues that will be presented for trial, and ensure the efficient use of judicial resources). These factors weigh toward the District Court withdrawing the pretrial matters for the following reasons.

50.      First, because the factual basis underlying the Texas common law and statutory claims is the same as, if not inextricably intertwined with, the §§ 548, 550 claims, and the Texas statutory and common law claims require a jury trial, it is most efficient for the District Court to hear the case from the start. Second, the Bankruptcy Court has not yet decided any substantive issues in this Adversary Proceeding; therefore, the Bankruptcy Court is no more familiar with the substance of the matter than the District Court. While the Bankruptcy Court has heard general matters in the underlying main bankruptcy proceeding, there have not been substantive hearings or evidence presented in this Adversary Proceeding. Third, there is no particular area of bankruptcy

law expertise required, especially considering the District Court would still be deciding a state law

claimsing, including fraudulent transfer claim related to the Lakehouse and Lot.[39]

51.    Consequently, the reference should be withdrawn pursuant to 28 U.S.C. § 157(d).

## IV.  CONCLUSION

For these reasons, Defendant respectfully requests that the District Court grant its Motion,

withdraw the reference of the Adversary Proceeding from the Bankruptcy Court, and grant it such

other relief at law or in equity to which it may be entitled.

Dated: December 1, 2023                    Respectfully submitted,

_/s/ Jason M. Rudd_
Jason M. Rudd, Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Scott D. Lawrence, Texas State Bar No. 24087896
scott.lawrence@wickphillips.com
Catherine A. Curtis, Texas State Bar No. 24095708
catherine.curtis@wickphillips.com
Mallory A. Davis, Texas State Bar No. 24133121
mallory.davis@wickphillips.com
Paul T. Elkins, Texas State Bar No. 24092383
paul.elkins@wickphillips.com
WICK PHILLIPS GOULD MARTIN, LLP
3131 McKinney Ave., Suite 500
Dallas, Texas 75204
(214) 692-6200 (office)
(214) 692-6255 (facsimile)

ATTORNEYS FOR JAMES FRINZI; FRINZI
FAMILY TRUST; and MULTIBAND GLOBAL
RESOURCES, LLC

---

[39] *Compare* Amended Complaint, ¶¶ 89–97 *with* ¶¶ 99–103.

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, I caused a true and correct copy of this document to be served on counsel of record for all parties in this Adversary Proceeding via the method(s) indicated below:

| | | |
|---|---|---|
| Davor Rukavina<br>Thomas D. Berghman<br>MUNSCH HARDT KOPF & HARR, P.C.<br>500 N. Akard Street, Suite 3800<br>Dallas, TX 75201<br>drukavina@munsch.com<br>jvasek@munsch.com<br><br>**Counsel for the Scott Seidel, Chapter 7 Trustee** | _____<br>_____<br>_____<br>___X___<br>___X___ | Hand Delivery<br>Regular Mail<br>Facsimile<br>E-mail<br>CM/ECF |

*/s/ Paul T. Elkins*
Paul T. Elkins