Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Conor P. White, Esq.
Texas Bar No. 24125722
500 N. Akard Street, Suite 4000
Dallas, Texas 75204
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: § <br> § <br> GOODMAN NETWORKS, INC., § <br> § <br> Debtor. § <br> § | | Case No. 22-31641-mvl-7 <br><br> (Chapter 7) |
| § <br> SCOTT M. SEIDEL, TRUSTEE; § <br> GNET ATC, LLC; MULTIBAND § <br> FIELD SERVICES, INC., § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> JAMES FRINZI; FRINZI FAMILY TRUST; § <br> MULTIBAND GLOBAL RESOURCES, § <br> LLC, § <br> § <br> Defendants. § | | ADVERSARY PROCEEDING <br> NO: 23-03036 |

## TRUSTEE'S RESPONSE TO MOTION TO WITHDRAW REFERENCE

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly-appointed chapter 7 trustee of

Goodman Networks, Inc. (the "Debtor"), the debtor in the above-styled and numbered chapter 7

bankruptcy case (the "Bankruptcy Case"), and, together with GNET ATC, LLC ("GNET ATC")

and Multiband Field Services, Inc. ("Multiband," and with the Trustee and GNET ATC collectively, the "Plaintiffs"), the Plaintiffs in the above-styled and numbered adversary proceeding (the "Adversary Proceeding"), files this his *Response* to the *Defendants' Motion to Withdraw the Reference* (the "Motion"), filed by James Frinzi ("Frinzi"), Frinzi Family Trust ("FFT"), and Multiband Global Resources ("MGR," and together with Frinzi and FFT, the "Defendants"), respectfully stating as follows:

## I.     SUMMARY

1. In what are massive breaches of fiduciary duty and other torts, Frinzi transferred tens of millions of dollars out of the Debtor and the Plaintiffs to his entities, directly causing the Bankruptcy Case and leading to tens of millions of dollars in damages. It is no wonder then that Frinzi (who controls the remaining Defendants) seeks to escape the jurisdiction of this Court. It will not matter in the end: whether before this Court, the District Court, or a jury, Frinzi's torts are so obvious and so severe that the Trustee has no doubt that justice will prevail. The only question is one of efficiency and timing: Frinzi, having caused such massive damage already, is interested only in delaying the inevitable, while he continues to enjoy the fruits of his torts.

2. The Trustee agrees that this Court lacks core jurisdiction over certain claims in this Adversary Proceeding and that a withdrawal of the reference, at least in part, will be appropriate. However, the predicate issue is whether the Defendants have timely asserted their jury demand. If they have not, then the Trustee's fraudulent transfer claims are core claims, which this Court can and should try to finality, as being within the subject matter expertise of this Court. With respect to the balance of the claims—and in all events—this Court should hear the claims and issue proposed findings of fact and conclusions of law to the District Court, as provided for and contemplated in section 157. If the Defendants have timely asserted jury rights, then this Court

should recommend to the District Court that this Court retain this Adversary Proceeding for all pretrial matters and that the reference be withdrawn only when this Adversary Proceeding is ready for trial. Given the multiple lawsuits pending between the parties and the need to coordinate pretrial matters, principally discovery, this is the most efficient course for all courts involved and the one that best avoids inconsistent results, while preserving the Defendants' substantive rights.

## II.   INCORPORATION OF MOTION TO STRIKE JURY DEMAND

3.    The Motion is largely predicated on the Defendants' recent jury demand, and the Trustee agrees that the issue of whether the Defendants have jury rights in this Adversary Proceeding is an important one to the overall question of the withdrawal of the reference. In that respect, on December 15, 2023, the Trustee filed his *Plaintiffs' Motion to Strike Jury Demand* [docket no. 39] (the "Motion to Strike"). Any recommendation to the District Court on how it should adjudicate the present Motion should be predicated on how this Court, or the District Court, first decides the Motion to Strike, for the resolution of the Motion to Strike will at least inform, if not dictate, the Motion.[1] For the reasons stated in the Motion to Strike, this Court should either strike the Defendants' jury demand or recommend that the District Court strike that demand as having been untimely made.

## III.   BANKRUPTCY COURT'S CORE JURISDICTION OVER FRAUDULENT TRANSFER CLAIMS

4.    If the Defendants have a valid and timely right to a trial but jury, then the question of this Court's core jurisdiction is irrelevant: the Trustee agrees that only the District Court can try this Adversary Proceeding to a jury and that it would be a waste of judicial resources to ask this Court to issue proposed findings and conclusions to the District Court for what would ultimately

---

[1] The Trustee agrees that, if the Defendants have jury rights on all claims, then the Fifth Circuit requires that the reference be withdrawn (although the Fifth Circuit does not require such withdrawal immediately or at any time prior to preparing the Adversary Proceeding for trial).

be questions of fact to be decided by a jury. However, if the Defendants do not have a jury right, then this Court has core jurisdiction over certain claims in this Adversary Proceeding.

5. Among the Trustee's causes of action are claims under sections 548 and 550 of the Bankruptcy Code to avoid $4.4 million in transfers from the Debtor to the Defendants as fraudulent transfers. These are statutorily core claims. *See* 28 U.S.C. § 157(b)(2)(H); *In re Brown Medical Ctr. Inc.*, 578 B.R. 590, 595 (Bankr. S.D. Tex. 2016); *In re DBSI Inc.*, 466 B.R. 664, 665 (Bankr. D. Del. 2012); *In re The Heritage Organization LLC*, 454 B.R. 353, 360 (Bankr. N.D. Tex. 2011) ("A cause of action under 11 U.S.C. § 550 is one which "arises under" title 11 . . . as it invokes a right created by title 11 and is not available to a debtor outside of bankruptcy"). These are also claims and causes of action that do not exist outside of the Bankruptcy Code and, as such, are core claims. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987); *In re The Heritage Organization LLC*, 454 B.R. at 360. This is despite a state law analogy in the form of TUFTA— sections 548 and 550 are different because, among other things, under no theory can the actual transferor of a fraudulent transfer seek to avoid and recover the transfer outside of bankruptcy.

6. *Stern v. Marshall*, 564 U.S. 463 (2011), which considered whether a claim was constitutionally core, does not change this result. In *Stern*, the Supreme Court held that a claim was not constitutionally core; *i.e.* an Article I court could not decide the claim, even though Congress labeled the claim a "core" claim. This was because the claim in that case was based on state law, was not necessary to the claims adjudication process, and did not involve a public right that Congress could assign to an Article I court. *See id*. at 487. Here, however, the cause of action itself—section 548 of the Bankruptcy Code—is created by Congress and has no existence outside of bankruptcy, despite its similarly to state law fraudulent transfer claims. As such, it is a "public" right because "it depends upon the will of congress whether a remedy in the courts shall be allowed

at all" and because "Congress may set the terms of adjudicating a suit when the suit could not otherwise proceed at all." *Id*. at 489. As summarized, "it is still the case that what makes a right "public" rather than private is that the right is integrally related to particular Federal Government action." *Id*. at 490-91.

7. Here, Congress has created the substantive right in the form of the statute itself. Congress created the concept of a Chapter 7 trustee in the Bankruptcy Code itself. Congress created the United States Trustee as an arm of the Department of Justice, which then appointed the Trustee as an interim trustee, and the Bankruptcy Code then made the Trustee the permanent trustee. None of this exists outside of bankruptcy and all of this is integral to, and inseparable from, the statutory scheme that Congress created and that has no existence outside of bankruptcy: to augment the federally created estate. At best, outside of bankruptcy, a creditor—as opposed to an independent fiduciary—may seek avoidance of fraudulent transfers (but then that itself is stayed by the automatic stay), and state fraudulent transfer laws are significantly different from the Bankruptcy Code in other substantive ways (for example, that fully encumbered property is not even an "asset" that can be fraudulently transferred). And, section 548 is a "public" right in another significant way: it seeks to hold the wrongdoers accountable to *all* of the debtor's creditors equally and equitably, which is fundamentally different from a private right, which seeks only to determine "the liability of one individual to another under the law as defined." *Id*. at 489. A defendant is not liable to a trustee or to a debtor, but rather to the estate, which itself is a Congressionally created creature.

8. Case law after *Stern* supports this conclusion, although the Trustee has been unable to locate binding precedent on this point. *See, e.g., In re McPherson*, 630 B.R. 160, 175 (Bankr. D. My. 2021) (holding that Bankruptcy Code fraudulent transfer claims are Constitutionally core);

*In re Kimball Hill Inc.*, 480 B.R. 894, 907 (Bankr. N.D. Ill. 2012) (collecting cases). *But see In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 561–62 (9th Cir. 2012). *Stern* itself counsels that its holding is a "narrow one." *Stern*, 564 U.S. at 502. The Supreme Court's prior opinion in *Granfinanciera*, while not directly addressing the issue, clearly assumes that fraudulent transfer claims are Constitutionally core in its conclusion that, even though they are core, they are subject to jury rights. *See Granfinanciear S.A. v. Nordberg*, 492 U.S. 33, 61-62 (1989). And, in that Frinzi filed a proof of claim, even if a limited one, the Bankruptcy Code disallows his claim if he does not pay back a fraudulent transfer, thus making the adjudication of the fraudulent transfer claim integral to the claims allowance process that Frinzi himself voluntarily necessitated. *See Mason v. Ivey*, 498 B.R. 540, 548 (M.D.N.C. 2013) (denying withdrawal of the reference: "[u]nlike the tortious interference claim in *Stern*, which neither arose from nor depended in any way on bankruptcy law, avoidance actions under sections 544(b) and 548 are necessary to the claims-allowance process").

9. Accordingly, the Court should recommend to the District Court that the Trustee's fraudulent transfer avoidance and recovery claims are core claims which, if the Defendants' jury demand is stricken, can and should be adjudicated to finality by this Court. It should not offend the dignity of the District Court to argue that this Court has the subject matter expertise in trying fraudulent transfer claims especially where, as here, there are other fraudulent transfer claims pending by the Trustee against Frinzi, as discussed below. The question then is what to do regarding the Trustee's remaining claims which, admittedly, are neither statutorily nor constitutionally core. In this respect:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after

considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

10.    Here, one of several routes presents itself. On the one hand, the Trustee's fraudulent transfer claims can be severed out and tried to finality by this Court, while the balance of the claims are tried by the District Court. Alternatively, this Court can try all of the claims, issue final judgment on the fraudulent transfer claims, and issue proposed findings and conclusions for the remaining claims subject to *de novo* review. Or, the District Court can withdraw the reference as to all claims and try all claims itself. Where core and non-core claims are present, the decision to withdraw the reference should be guided by the Fifth Circuit's *Holland America* factors, which look to whether the matter involves core or non-core issues, judicial economy, uniformity in bankruptcy administration, the economical use of the parties' resources, the effect of withdrawal on the goal of expediting the bankruptcy process, and forum shopping. *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998–99 (5th Cir.1985).

11.    On its surface, it may seem that the third option—withdrawal of the reference of all claims—is the most efficient. It is not, however. As is, the Trustee has recorded *lis pendenses* against various real property owned by the FFT which was purchased from the funds Frinzi wrongly transferred out of the Debtor. This Court can try these claims before the end of Spring and the Trustee can proceed to a recovery immediately afterwards, unless the Defendants obtain a supersedeas bond. Thus, the bankruptcy process is expedited and millions of dollars of wrongfully taken property is recovered. The additional factor of uniformity in bankruptcy administration is present, especially when considering the other adversary proceedings against Frinzi discussed below. And, it strongly appears to the Trustee that the Motion is motivated by forum shopping.

12. The Trustee does not know when the District Court can try the fraudulent transfer claims, but it has been his experience that the District Courts work on far longer scheduling orders because they have far more criminal and civil lawsuits to try. Here, there is not even a scheduling order in the District Court, and the Trustee can reasonably estimate (based on experience) that any trial on the merits would be at least one year away. In the meantime, this Court can try to finality the Trustee's fraudulent transfer claims and issue proposed findings and conclusions as to the rest in a few months, and the Defendants or the Trustee can then object to those portions of the proposed findings and conclusions that they wish to object to for a trial *de novo* in the District Court. In such a manner, both sides get what they want: the Trustee gets speed, while the Defendants get a trial in the District Court, and all substantive rights are fully preserved. Any minor inefficiency is surely outweighed by the likely fact that the Defendants would not object to *all* proposed findings of fact and conclusions of law, which would minimize the issues to be tried before the District Court and thus promote greater efficiency as a whole.

## IV. REFERENCE SHOULD BE WITHDRAWN ONLY WHEN TRIAL READY

13. Finally, and irrespective of the Defendants' jury rights and where to try the Trustee's core claims, the reference should be withdrawn only when this Court first tries all claims and issues proposed findings of fact and conclusions of law, and/or when this Court certifies that the Adversary Proceeding is trial ready. This is clearly a power and authority that this Court has even if it cannot try a claim to finality. *See* 28 U.S.C. § 157(c)(1); *In re Blackwell*, 267 B.R. 724, 731 (Bankr. W.D. Tex. 2001) ("[t]he district court has the option, at that point of withdrawing the entire matter, or withdrawing only the trial portion, leaving pre-trial and discovery matters to be handled by the bankruptcy judge"). This is the usual and accepted practice in this District, where the bankruptcy court essentially functions as a magistrate, and is the most efficient manner to

prepare lawsuits for trial—remembering that Congress has placed a premium on the speed with which bankruptcy claims are adjudicated because of the presence of many creditors awaiting a recovery and the costs and burdens of keeping an estate open.

14. These principles are all the more present here, because of the pendency of other adversary proceedings involving Frinzi and the need to coordinate discovery issues, consider potential consolidations of adversary proceedings for discovery or other purposes, and the possibility of insurance defense (or even coverage litigation). In other words, this Adversary Proceeding and the Defendants do not exist in isolation, even if this was the first adversary proceeding filed by the Trustee against Frinzi.

15. The Trustee has also initiated Adversary Proceeding No. 23-03072 against Frinzi and others related to approximately $13.5 million in transfers, and Adversary Proceeding No. 23-03090 against Frinzi and others related to approximately $17 million in transfers. The Trustee is in the process of filing an adversary proceeding against Frinzi and others related to an additional $44 million in transfers. All of these adversary proceedings will involve many of the same issues and the same discovery as are involved in this Adversary Proceeding, as they all involve transfers by Frinzi and alleged defenses. And, the Trustee has initiated Adversary Proceeding No. 23-03091 against FedEx Supply Chain Logistics & Electronics, Inc., related to that creditor's allegation that it owns the underlying claims and causes of action related to both the transfers in this Adversary Proceeding and the other adversary proceedings.

16. Thus, having one court consider all pretrial matters, especially when many of them are reasonably anticipated to overlap, promotes judicial efficiency and enables this Court to properly consider all pretrial and discovery matters for the benefit of all parties. This is all the more so because, in this District, should the withdrawal of the reference be sought in the other

adversary proceedings, it is likely that multiple District Court judges will be assigned the several adversary proceedings, which means gross judicial inefficiency with multiple judges considering similar or identical pretrial issues, and risks inconsistent results.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court issue a report and recommendation recommending that the District Court: (i) strike the Defendants' jury demand, unless this Court strikes it itself; (ii) order that the Trustee's fraudulent transfer avoidance and recovery claims are core claims which this Court may try to finality; (iii) order that this Court will try all claims, issuing a final judgment over the fraudulent transfer avoidance and recovery claims and proposed findings of fact and conclusions of law as to all remaining claims; and (iv) order that the reference be withdrawn only after this Court does so or, alternatively, only after this Adversary Proceeding is certified by this Court as trial ready.

RESPECTFULLY SUBMITTED this 2d day of January, 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

/s/ *Davor Rukavina*
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Conor P. White, Esq.
Texas Bar No. 24125722
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**COUNSEL FOR SCOTT M. SEIDEL, CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 2d day of January, 2024, true and correct copies of this document were electronically served by the Court's ECF system on all parties entitled to notice thereof, including on counsel for the Defendants, Jason Rudd, Esq.

*/s/ Davor Rukavina*
Davor Rukavina