



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed March 4, 2024

United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 7 |
| GOODMAN NETWORKS, INC. | § § | Case No. 22-31641-MVL7 |
| Debtor. | § § § | |
| SCOTT M. SEIDEL, TRUSTEE; GNET ATC, LLC; MULTIBAND FIELD SERVICES, INC. | § § § § § | |
| Plaintiffs, | § § | Adv. Pro. No. 23-03036-MVL |
| v. | § § | |
| JAMES FRINZI; FRINZI FAMILY TRUST; MULTIBAND GLOBAL RESOURCES, LLC | § § § § | |
| Defendants. | | |

## ORDER REGARDING PLAINTIFFS' MOTION TO STRIKE JURY DEMAND AND DEFENDANTS' RULE 39 MOTION

1

I.   INTRODUCTION.

Pending before the Court[1] are: (1) the *Motion to Strike Jury Demand* and *Brief in Support* (together, the "**Motion to Strike**") filed by the Plaintiffs, Scott M. Seidel (the "**Trustee**"), Chapter 7 Trustee of Goodman Networks, Inc. (the "**Debtor**"), GNET ATC, LLC ("**GNET**"), and Multiband Field Services, Inc. ("**Multiband**" and, together with the Trustee and GNET, the "**Plaintiffs**") on December 15, 2023, at ECF Nos. 39 and 40; and (2) the *Response to Motion to Strike, or Alternatively, Motion for Jury Trial Under Rule 39 and Brief in Support* (the "**Response**" or the "**Rule 39 Motion**", as applicable) filed on January 5, 2024, by Defendants James Frinzi ("**Mr. Frinzi**"), the Frinzi Family Trust ("**FFT**"), and Multiband Global Resources, LLC ("**MGR**," and with Mr. Frinzi and FFT, the "**Defendants**") at ECF No. 47. For the following reasons, the Court will hereby **GRANT** the Motion to Strike as the Defendants have waived their right to assert a jury demand under Rule 38,[2] but the Court will nonetheless **GRANT** the Defendants' Rule 39 Motion.

II.   BACKGROUND.

On May 4, 2023, the Plaintiffs filed their Original Complaint (the "**Original Complaint**"), asserting ten causes of action against the Defendants stemming out of three transactions: (1) an alleged transfer of $4.4 million in cash from Multiband to MGR at Frinzi's direction, which resulted in a purchase of land for the benefit of FFT; (2) an alleged transfer of $962,000 by GNET

---

[1] For the purposes of this order, all capitalized references to the Court (the "**Court**") are made in reference to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Likewise, all capitalized references to the District Court (the "**District Court**") are made in reference to the United States District Court for the Northern District of Texas, Dallas Division. All capitalized references to the Bankruptcy Case (the "**Bankruptcy Case**") are made in reference to Case No. 22-31641-MVL7 (Bankr. N.D. Tex. 2022). All capitalized references to the Adversary Proceeding (the "**Adversary Proceeding**") are made in reference to Adv. Pro. No. 23-03036-MVL (Bankr. N.D. Tex. 2023).

[2] All capitalized references to a Rule or the Rules (a "**Rule**" or the "**Rules**") shall hereinafter refer to the Federal Rules of Civil Procedure. Likewise, all capitalized references to a Bankruptcy Rule or the Bankruptcy Rules (a "**Bankruptcy Rule**" or the "**Bankruptcy Rules**") shall refer to the Federal Rules of Bankruptcy Procedure.

2

to MGR at Frinzi's direction; and (3) an alleged transfer of $500,000 to the Stauber Law Office for the benefit of MGR in connection with the purchase of certain preferred stock related to a corporation known as American Metals Recover and Recycling, Inc. n/k/a MBG Holdings, Inc. ("**AMRR**"). The Plaintiffs further allege that some of the funds from each of the transfers were used to purchase $1 million in convertible preferred stock of AMRR.

On June 7, 2023, Mr. Frinzi and FFT filed their original answer at ECF No. 8. On June 21, 2023, MGR also filed an answer to the Original Complaint at ECF No. 12. Mr. Frinzi and FFT subsequently filed an amended answer on June 28, 2023. *See* ECF No. 15. None of these pleadings contained a jury demand, nor was a jury demand made within 14 days of service thereof as required by Rule 38(b)(1), which is incorporated into this Adversary Proceeding by Bankruptcy Rule 9015.

On November 27, 2023, the Plaintiffs filed their *Amended Complaint* (the "**Amended Complaint**") at ECF No. 30. The Plaintiffs asserted three new causes of action against the Defendants and included two additional factual paragraphs addressing whether two of the three alleged transfers were made without the knowledge and approval of the directors and managers of the Plaintiffs (the "**Approval Allegations**").[3] Four days after the Amended Complaint was filed, the Defendants jointly filed both a *Jury Demand* (the "**Jury Demand**") and a *Motion to Withdraw the Reference* and *Brief in Support* (together, the "**Motion to Withdraw**"). *See* ECF Nos. 31–33. On December 11, 2023, the Defendants filed their *Answer to Amended Complaint* (the "**Amended Answer**"), reincorporating the Jury Demand as to all claims, allegations, and defenses asserted therein. *See* ECF No. 36. The Defendants do not consent to the entry of final orders by the Bankruptcy Court. *See id.* at 17.

The Plaintiffs filed the Motion to Strike on December 15, 2023, requesting that this Court

---

[3] *See* ECF No. 30, pp. 5, 7, 16–20.

3

strike the Defendants' Jury Demand as untimely and therefore not in compliance with the requirements of Rule 38. *See* ECF Nos. 39 and 40. The Defendants filed the Response on January 5, 2024, requesting that the Court deny the Plaintiffs' Motion to Strike, or in the alternative, grant their Rule 39 Motion, allowing a jury trial in this Court's discretion under Rule 39(b). The Plaintiffs filed a reply one week later, reurging this Court to strike the Jury Demand and deny the Rule 39 Motion as improperly filed and untimely. *See* ECF No. 48. On January 16, 2024, the Court held a hearing (the "**Hearing**") on the Motion to Strike and the Rule 39 Motion (each a "**Motion**" and together, the "**Motions**"), after which the Court took the matter under advisement.

### III. JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with the United States District Court Northern District of Texas Miscellaneous Rule No. 33 referring cases under Title 11 to the bankruptcy courts.[4] Pursuant to 28 U.S.C. §§ 157(b)(2)(A), (H) and (O), this proceeding contains core matters, as it involves proceedings concerning the administration of this estate and recovery of alleged fraudulent transfers. Alternatively, this Court has "related to" jurisdiction over this matter because the outcome of this Adversary Proceeding could conceivably impact the administration of the Bankruptcy Case.[5] Venue is proper in this district according to 28 U.S.C. § 1409(a) as this Court currently presides over the Debtor's Bankruptcy Case.

This Court must evaluate whether it has constitutional authority to enter an order in this case. In *Stern v. Marshall*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional

---

[4] *See also* 28 U.S.C. § 157 (allowing a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter).
[5] *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995).

4

authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 564 U.S. 462, 503 (2011). However, *Stern* is inapplicable to the instant Motions. *Stern* concerns the bankruptcy court's authority to enter *final* orders. Here, the Court need only enter an interlocutory order, as the Motions do not end this litigation on the merits or conclude this Adversary Proceeding. "Entering an interlocutory order does not implicate the constitutional limitations on the Court's authority to enter final judgments." *In re 1960 Family Practice, P.A.*, 652 B.R. 154, 165 (Bankr. S.D. Tex. 2023) (internal quotations omitted); *see also Mutual Fire Ins. v. Booth*, 24 F.3d 240, 241 (5th Cir. 1994) (holding that an order denying a demand for a civil jury trial is not a final, appealable order). Therefore, this Court need not determine whether it has constitutional authority to enter a final order because an interlocutory order is all that is required by the instant Motions.

### IV. LEGAL STANDARD.

Rule 38 provides that a party may demand a jury trial by serving a jury demand within 14 days after the last pleading directed to the issue. *See* FED. R. CIV. P. 38(b). However, this right may be waived by failure to make the demand within the 14-day period after "the last pleading directed to the issue is served." *See* FED. R. CIV. P. 38(d); *see also Daniel Int'l Corp. v. Fishbach & Moore, Inc.*, 916 F.2d 1061, 1063 (5th Cir. 1990). The "last pleading" in Rule 38 usually means an answer or a reply to a counterclaim. *Matter of Texas Gen. Petroleum Corp.*, 52 F.3d 1330, 1339 (5th Cir. 1995). The Fifth Circuit has provided the following guidance with regard to amended pleadings: "[a] complaint 'raises an issue' only once within Rule 38(b)'s meaning when it introduces it for the first time. Amendments not introducing new issues will not give rise to a demand for a jury trial." *Guajardo v. Estelle*, 580 F.2d 748, 752–53 (5th Cir. 1978) (citing *Connecticut General Life Insurance Co. v. Breslin*, 332 F.2d 928 (5th Cir. 1964)). "Slight modifications in facts or in legal

5

theories presented will not usually render issues different." *1960 Family Practice*, 652 B.R. at 170. As such, only an amended pleading that "raises new material issues of triable fact will give rise to a renewed right to assert a jury demand as to those issues." *Id.*

There is a presumption against finding a waiver of a constitutional right, including the Seventh Amendment right to a jury trial. *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937). Nevertheless, "a party can not use the jury right as a tool for forum shopping." *Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 206 (S.D. Tex. 2008). When a party does not attempt to enforce their jury trial right through an appropriate motion until after "the parties and court have expended significant time and resources resolving pre-trial matters," such right may be waived. *Id.* (quoting *Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hosp. 1997, L.P.)*, 351 B.R. 813, 850–51 (Bankr. S.D. Tex. 2006)).

V. <u>ANALYSIS</u>.

As stated above, the Court will address: (1) whether the Defendants timely asserted their Jury Demand under the terms of Rule 38 and (2) whether this Court should, in its discretion, grant the Defendants' motion for a jury trial pursuant to Rule 39(b).

**A. Jury Right – Seventh Amendment Standard**

Before taking up the Motion to Strike, the Court must first evaluate whether the Defendants are entitled to a jury trial on the claims asserted against them in the Amended Complaint, because Rule 38 only allows a party to make a jury demand "on any issue triable of right by a jury." *See* FED. R. CIV. P. 38(b). Therefore, the Court will first analyze the Amended Complaint in light of the Seventh Amendment standard.

The Seventh Amendment provides the right to a jury trial in cases in which the value in controversy exceeds twenty dollars and the cause of action is to enforce statutory rights that are at

6

least analogous to one which was tried at law in the late 18th century English courts. *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 708 (1999). The phrase "suits at law" refers to "suits in which *legal* rights were to be ascertained and determined" as opposed to "those where equitable rights alone were recognized and equitable remedies were administered." *Granfinanciera, S.A. v. Norberg*, 492 U.S. 33, 41 (1989) (citing *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 447 (1830)). This analysis requires two steps: (1) a comparison of the "statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity"; and (2) whether the remedy sought is "legal or equitable in nature." *Granfinanciera*, 492 U.S. at 42 (quoting *Tull v. U.S.*, 481 U.S. 412, 417–18 (1987)). "The second stage of this analysis is more important than the first." *Id.* at 42. "If the right is legal in nature, then it carries with it the Seventh Amendment's guarantee of a jury trial." *Id.* at 55.

In the Adversary Proceeding, the Plaintiffs seek monetary damages against Defendants on multiple claims, including breach of fiduciary duty, conversion, embezzlement, unjust enrichment, and under the Texas Theft Liability Act. *See* ECF No. 30. As the Supreme Court held in *Granfinanciera*, when monetary relief is sought, the cause of action should be characterized as legal rather than equitable and the parties are entitled to a jury trial under the Seventh Amendment. 492 U.S. at 34. Therefore, several of the foregoing claims easily give rise to a right to a jury trial.

Furthermore, the Supreme Court has repeatedly held that joinder of equitable claims with legal claims does not deprive a party of the right to a jury trial on the legal claims. If a "legal claim is joined with an equitable claim, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact." *Tull*, 481 U.S. at 425 (citing *Curtis v. Loether*, 415 U.S. 189, 196, n.11 (1974)). Here, each of the claims asserted in the Amended Complaint share a common nucleus of fact. *See* ECF No. 30. Therefore, the fact that certain of the claims asserted,

7

such as breach of fiduciary duty, have traditionally been within the exclusive jurisdiction of courts of equity does not deprive the Defendants of their right to a jury trial.

Similarly, the inclusion of equitable remedies such as the imposition of a constructive trust will not preclude Defendants from asserting their right to a jury trial. "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). Here, the Plaintiffs do not only seek recovery of the particular funds and property allegedly subject to fraudulent transfer, but instead seek to impose personal liability against certain of the Defendants. As such, the Court concludes that the Defendants are entitled to assert a right to a jury trial on all issues as requested, even though not all the claims individually confer a right to a trial by jury.

**B. Rule 38 Jury Demand and Plaintiffs' Motion to Strike**

A party entitled to a jury trial is required to assert that right within the timeframe provided by Rule 38, which specifically provides: "[o]n any issue triable of right by a jury, a party may demand a jury trial by… serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served." FED. R. CIV. P. 38(b). "A party's failure to serve and file a demand as required by subparagraph (b) of Rule 38 constitutes a waiver by the party of trial by jury." *See e.g., Randle v. Hubert*, 47 F.3d 425 (5th Cir. 1995); *see also Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018, 1021 (5th Cir. 1987) (holding that parties may waive even fundamental rights, including the right to a jury trial) (citing *Duncan v. Louisiana*, 391 U.S. 145, 158 (1968)).

The Defendants first asserted their Jury Demand in this case on December 1, 2023, four days after the Plaintiffs filed their Amended Complaint. *See* ECF No. 31. It is uncontroverted that

the Defendants failed to assert a timely Rule 38 jury demand as to any issue asserted in the Plaintiffs' Original Complaint. *See e.g.,* ECF Nos. 8, 12, and 15. Had the Plaintiffs not amended the Original Complaint, the Defendants would unquestionably have waived their right to a jury trial in this case. *See* FED. R. CIV. P. 38(b); *Carter*, 816 F.2d at 1021. As such, the Court must consider whether there are new issues asserted in the Plaintiffs' Amended Complaint such that the Defendants' Jury Demand was timely under Rule 38.

The Amended Complaint introduces two new factual paragraphs and three new causes of action. As mentioned above, the term "new issues" as it applies to Rule 38 has been interpreted by the Fifth Circuit to mean "new issues of *fact* and not new theories of recovery." *Guajardo*, 580 F.2d at 752–53 (emphasis added). Therefore, the Court should confine its consideration to whether the Approval Allegations raised "new material issues of triable fact." *See e.g., 1960 Family Practice*, 652 B.R. at 170–72. The Defendants posit that for the purposes of Rule 38, "the last pleading directed to" an issue is not the pleading that *raises* the factual issue, but the pleading that *contests* the issue, and the Amended Complaint is the first instance in which "knowledge and approval" are "contested" facts. *See* ECF No. 47, pp. 6–7, ¶ 13 (citing *McCarthy v. Bronson*, 906 F.2d 835, 840 (2d Cir. 1990), *aff'd*, 500 U.S. 136 (1991)). Thus, the Defendants argue that the Plaintiffs, in adding the Approval Allegations, *contested* a new factual issue that must be determined by a jury: whether an officer or director of any of the Plaintiffs "authorized" Mr. Frinzi to transfer the funds referenced or whether his transfers were made with the "knowledge and the approval of" such an individual. *See* ECF No. 30, pp. 5–7, ¶¶ 27, 35.

The Plaintiffs counter that the "approval or authorization" of Mr. Frinzi's conduct was always an issue of triable fact raised in the Original Complaint. They argue that because their Original Complaint included allegations that: (1) Mr. Frinzi decided to use the funds of the

9

Plaintiffs to acquire AMRR for his own benefit, (2) the Debtor and GNET received no reasonably equivalent value from purchasing stock, and (3) Mr. Frinzi had no expectation that MGR would repay the money back to Multiband, the issue of whether the transfers were authorized by the Plaintiffs was inherently raised.  *See e.g.*, ECF No. 1, ¶¶ 19, 27, 35.  Furthermore, the Plaintiffs argue that because the Defendants both expressly denied the above factual allegations and pled affirmative defenses such as estoppel, relying on the "knowledge, agreement, or acquiescence" of the Plaintiffs, the "last pleading[s] directed to the issue" are the Defendants' respective answers to the Original Complaint.  *See e.g.,* ECF No. 8, pp. 3–5 ¶¶ 19, 27, 35; ECF No. 8, p. 14, ¶ 7; ECF No. 12, pp. 3–4, ¶¶ 19, 27, 35; ECF No. 12, p. 11.  The Court agrees with the Plaintiffs.

Having thoroughly reviewed the record and the arguments of the parties, the Court concludes that the Amended Complaint does not introduce new material factual issues into the lawsuit which would now merit a jury trial.  "A complaint 'raises an issue' only once within Rule 38(b)'s meaning when it introduces it for the first time. … New issues are not raised unless they are 'in any material way different from those presented by the original [complaint].'"  *Unidev, L.L.C. v. Housing Authority of New Orleans*, 250 F.R.D. 268, 271 (E.D. La. 2008) (citing *Connecticut Gen. Life Ins. Co.*, 332 F.2d at 931)). "One issue is the same as another when it is based on the same conduct or concerns the same general area of dispute. … [S]light modifications in facts or in legal theories presented will not usually render issues different."[6]  Therefore, under Rule 38, a fact issue for the jury is considered "raised" by an original complaint such that an answer is the "last pleading directed to the issue" when the responsive pleading "contests" an allegation

---

[6] *Id*. at 271–2; *see also 1960 Family Practice*, 652 B.R. at 171 (finding that new factual issues were raised as to one defendant where an amended complaint alleged nearly one hundred pages of new factual allegations); *see also Gallardo v. Gulf South Pipeline Co., L.P.*, No. 03-2195, 2005 WL 1309156, *5 (E.D. La. 2005) (holding that plaintiffs were not entitled to a renewed right to assert a jury demand where they had characterized their amended complaint as "clarify[ing] the allegations concerning the property at issue" and the underlying causes of action all turned on the same matrix of facts).

of fact with a denial or an assertion of an affirmative defense.

Here, the Original Complaint contains fifty-one paragraphs of factual allegations and ten causes of action. *See* ECF No. 1. The Amended Complaint contains fifty-three paragraphs of factual allegations and thirteen causes of action. *See* ECF No. 30. The causes of action in the Original Complaint turn on the same matrix of facts as the causes of action alleged in the Amended Complaint: whether three transfers occurred, whether Mr. Frinzi authorized those transfers in violation of his fiduciary duties, and whether they were made for his sole benefit without any exchange of reasonably equivalent value to the Plaintiffs. The factual issue addressed by the Approval Allegations was necessarily raised by the Original Complaint because any factfinder, in order to pass judgment on the causes of action asserted, would have to consider whether the Plaintiffs had knowledge of, or otherwise authorized, Mr. Frinzi's conduct in effecting the transfers at issue.

For instance, the Plaintiffs seek to recover from the Defendants on a theory of breach of fiduciary duty. Under Texas law, the elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, no pet.) (citing *Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex. App.—Texarkana 2004, no pet)). The Original Complaint alleges that Mr. Frinzi owed a duty of loyalty to the Debtor and GNET, which he violated when he transacted in a manner harmful to the Plaintiffs and beneficial to himself without making such a transaction fair. *See* ECF No. 30, p. 10, ¶¶ 57. The duty of loyalty dictates that a corporate officer or director must act in good faith and requires an extreme measure of candor, unselfishness, and good faith on the part of the officer or director. *See Landon v. S & H*

*Mktg. Grp.*, 82 S.W.3d 666, 672 (Tex. App.—Eastland 2002, no pet.). "Interested" transactions are subject to an even higher level of scrutiny:

> The duty of loyalty holds officers and directors to an "extreme measure of candor, unselfishness, and good faith," particularly where there is an interested transaction. *International Bankers Life Insurance Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963). Whether an officer or director is "interested" is a question of fact. *Id.* Interested transactions include those in which officers or directors derive personal profit as well as those which deprive the corporation of an opportunity to profit. *Assurance Systems Corp. v. Jackson (In re Jackson)*, 141 B.R. 909, 916 (Bankr. N.D. Tex. 1992). A transaction between a fiduciary's corporation and another corporation in which the fiduciary has a significant financial interest is also an interested transaction. *Id.* In such a situation, an officer or director must not allow his personal interests to prevail over the interests of the corporations. *Gearhart Industries, Inc. v. Smith International, Inc.*, 741 F.2d 707, 719–20 (5th Cir. 1984).

*Mims v. Roth (In re Performance Nutrition, Inc.)*, 239 B.R. 93, 110 (Bankr. N.D. Tex. 1999). In order to determine whether Mr. Frinzi's interests prevailed over the Plaintiffs' interests, any factfinder would have to consider whether Plaintiffs had knowledge of, or otherwise authorized, Mr. Frinzi's conduct in effecting the transfers at issue. This is just one example of how the fact issue was necessarily raised by the Original Complaint in this case. In light of the foregoing, the Court concludes that the Amended Complaint does not introduce new factual issues into the lawsuit which would now merit a jury trial. Thus, the Defendants waived their right to assert a jury demand under Rule 38 in this case when they failed to assert such a demand within fourteen days of filing their answers to the Original Complaint. The Court will, therefore, grant the Plaintiffs' Motion to Strike.

### C. Defendants' Rule 39 Motion

Before discussing the merits of the Rule 39 Motion, the Court will note that the Motion was improperly filed on the Court's docket. *See* ECF No. 47 (filing a response). Rule 39(b) states that "the court may, *on motion*, order a jury trial on any issue for which a jury right may have been demanded." FED. R. CIV. P. 39(b) (emphasis added). No "motion" was filed in this case requesting

relief pursuant to Rule 39(b). Instead, in response to the Plaintiffs' Motion to Strike, the Defendants requested that, if the Court were to find that Defendants had waived their right to demand a jury trial pursuant to Rule 38(d), the Court exercise its discretion to grant them a jury trial pursuant to Rule 39(b) as an alternative. Although improperly filed, given that the Court has found cause to strike the Jury Demand in this case, the Court will consider that portion of the Response as a motion pursuant to Rule 39 in its discretion.

The Fifth Circuit has held that "[w]hen the discretion of the court is invoked under Rule 39(b), the court should grant a jury trial *in the absence of strong and compelling reasons to the contrary*. … A motion for trial by jury under this rule 'should be favorably received unless there are persuasive reasons to deny it.'" *Daniel Int'l*, 916 F.2d at 1064 (emphasis added) (citing *United States v. Unum, Inc.*, 658 F.2d 300, 303 (5th Cir. 1981)). The Court has already determined that, in light of the Seventh Amendment standard, the Defendants were entitled to assert a right to a jury trial on all issues in this case. Therefore, the Court must examine the case at bar in light of the standard articulated in *Daniel Int'l* and the five factors which the Fifth Circuit has identified for courts to consider in ruling on a motion made under Rule 39(b): (1) whether the case involves issues which are best tried to a jury, (2) whether granting the motion would result in a disruption of the court's schedule or that of an adverse party, (3) the degree of prejudice to the adverse party, (4) the length of the delay in having requested a jury trial, and (5) the reason for the movant's tardiness in requesting a jury trial. *Id.* Based on the particular facts and procedural posture in this case, the Court will also briefly discuss judicial economy as a sixth factor.[7]

---

[7] *See e.g.*, *1960 Family Practice*, 652 B.R. at 175 (discussing judicial economy as a sixth factor in determining whether to grant a motion pursuant to Rule 39(b) based on the overlap and interrelatedness of the claims involved in the case).

13

*1. Whether the Case Involves Issues Which are Best Tried to a Jury*

When considering if the case involves issues which are best tried to a jury, courts generally consider the complexity of the case as a whole and whether factual or legal issues predominate the dispute. *Bell v. Gen Am. Life Ins. Co.*, No. 3:13-CV-1846-D, 2014 WL 815382, at *1 (N.D. Tex. Mar. 3, 2014). "Non-complex, garden variety claims and claims in which fact finding predominates as opposed to interpretation of legal issues lends itself to being best tried by a jury." *1960 Family Practice*, 652 B.R. at 173 (citing *TruGreen Landcare L.L.C. v. Telfair Cmty. Ass'n, Inc.*, No. 4:12-CV-00514, 2013 WL 12190409, at *2 (S.D. Tex. Aug. 2, 2013)). In this case, the allegations are of moderate complexity, due in part to the fact that legal issues predominate the dispute; however, the claims center around areas of settled law that would not require significant interpretation, and the fraudulent transfer claims are not incredibly complex as they involve only three alleged transfers. *See* ECF No. 30. As such, this factor is neutral, at best.

*2. Whether Granting the Motion Would Result in a Disruption of the Court's Schedule or That of an Adverse Party*

The Plaintiffs argued at the Hearing that granting the Rule 39 Motion would disrupt the Court's schedule because there are pending deadlines in the parties' agreed scheduling order that have not been stayed, and the Plaintiffs are prepared to go to trial within a matter of months. However, since the Hearing, the parties have filed an *Agreed Amended Scheduling Order* at ECF No. 59, which contemplates an extension of the deadlines in this case were the District Court not to rule on the pending Motion to Withdraw by the time of trial docket call. Therefore, the Plaintiffs' argument regarding a disruption of the Court's schedule is mooted in part.

The Plaintiffs also argue that, up to this point, they had engaged in discovery with an eye towards trying this case before the Court and not a jury. *See* ECF No. 48, p. 6, ¶ 18. Given that fact discovery is largely complete in this case, the Plaintiffs argue that they would have conducted

discovery differently had they known that this case was going to be tried to a jury. *Id.* The Court finds this point persuasive and believes that granting the Rule 39 Motion would adversely affect the Plaintiffs' schedule. Therefore, this factor weighs against granting the Motion.[8]

### 3. The Degree of Prejudice to the Adverse Party

The Plaintiffs do not explicitly argue that any party would be prejudiced by a jury trial. However, they do argue that the "[b]ankruptcy court moves faster and more efficiently than district court, and if this Court were to issue a report and recommendation, it would likely be a much more expeditious process than having to be reset on a jury docket." *Id.* at ¶ 17. Furthermore, Plaintiffs point out that the Trustee is currently a plaintiff in five related adversary proceedings, of which Mr. Frinzi is a named defendant in three. *Id.* at ¶ 19. Therefore, the Plaintiffs state that it was the Trustee's hope that an agreement could be reached to "consolidate these numerous cases in the most efficient manner possible," and that granting the Rule 39 Motion "serves only to frustrate the goal of efficient and expeditious administration of the Bankruptcy Case." *Id.*

Although bench trials in the bankruptcy court are often more expeditious and less expensive than jury trials before a district court, the Court declines to speculate how long the District Court may take to impanel and try this case before a jury. While the Court can understand why the Plaintiffs desire expediency in the administration of this case, the Court is not willing to substitute theoretical delay or inconvenience for a party's Seventh Amendment rights, especially in light of the Fifth Circuit standard requiring "strong and compelling reasons." *Daniel Int'l*, 916 F.2d at 1065. The Court finds that Plaintiffs have failed to show any prejudice would result from granting the Rule 39 Motion. As such, this factor weighs in favor of granting the Motion.

---

[8] Given the Court's decision, should Plaintiffs wish to seek leave to reexamine discovery taken heretofore, or the deadlines for same, the Court will entertain such a motion.

*4. The Length of Delay in Having Requested a Jury Trial*

The Plaintiffs assert that Defendants have offered no acceptable explanation for their delay of over six months in asserting the Jury Demand, and request that this Court deny the Rule 39 Motion based in part on their significant delay. *See* ECF No. 48, p. 7. As the Defendants could have moved the Court for a jury trial under Rule 39 at any point since the Original Complaint was filed, the Court will consider whether a six-month delay in asserting this motion was significant. The Fifth Circuit has found that five or more months constitutes a "significant delay" for the purposes of this determination.[9] However, another key determination on this factor is whether the motion was brought as a delaying tactic on the eve of trial. *See Daniel Int'l*, 916 F.2d at 1065; *Unum*, 658 F.2d at 302–03. Such is not the case here, where the Defendants attempted to assert their Jury Demand pursuant to Rule 38 approximately four months prior to the trial date and only moved the Court for relief under Rule 39(b) when the Plaintiffs attempted to strike their Jury Demand as untimely. Therefore, although the Court finds that six months may constitute a significant delay in requesting a jury trial, the Court does not believe that Defendants intended their Rule 39 Motion as a delaying tactic; therefore, this factor is neutral.

*5. The Reason for the Movants' Tardiness in Requesting a Jury Trial*

Defendants contend that the Amended Complaint triggered the deadline to file a jury demand under Rule 38, and that prior to the Amended Complaint, the Plaintiffs had never "contested" whether Mr. Frinzi was authorized by Plaintiffs or whether Plaintiffs had knowledge of Mr. Frinzi's actions. *See* ECF No. 47, pp. 4–7. As mentioned above, the Court found these arguments to be unpersuasive as part of the Rule 38 analysis. However, the Defendants' decision

---

[9] *See e.g., Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 873 (Rule 39(b) motion denied after five-and-a-half-month delay in requesting a jury); *see also TruGreen Landcare*, 2013 WL 12190409, at *3 (a delay of over five months from the date new counsel appeared in the case weighed against granting the jury request under Rule 39(b)).

not to assert a jury demand was not based on a lack of attention or oversight. Instead, the Defendants explained that the change in the Plaintiffs' factual allegations influenced their requested change in the trier of fact. The Plaintiffs made the decision to amend their Original Complaint. There are repercussions to that decision. Moreover, upon the filing of the Motion to Strike, the Defendants immediately sought relief under Rule 39(b); therefore, the Court finds that this factor weighs slightly in favor of granting the Motion.

      6. *Judicial Economy*

As the Court noted above, the Court also feels compelled to discuss one final overarching factor in this case: judicial economy. The Plaintiffs argued at the Hearing that the Court could bifurcate the claims and proceed to a bench trial on certain claims and a jury trial on others. Further, the parties agree that this Court lacks core jurisdiction over certain claims in this Adversary Proceeding and that a withdrawal of the reference by the District Court, at least in part, is appropriate. *See* ECF No. 33, p. 8, ¶ 2; *see also* ECF No. 46, p. 2, ¶ 2. Given the fact that the claims in this case are significantly interrelated, the Court concludes that it would be inefficient to attempt to hold a trial before the Court on some issues and a jury trial on others. As such, the Court believes that judicial economy weighs in favor of granting the Rule 39 Motion.

In sum, although it is a very close call, a majority of the factors enumerated by the Fifth Circuit weigh in favor of granting the Rule 39 Motion. Additionally, the Court believes that judicial economy would be best served by granting the Rule 39 Motion in this case. Factor tests aside, the Court bases the greater part of its decision on Fifth Circuit standard that the right to a jury trial should generally be granted absent *strong and compelling* circumstances to the contrary. *See Daniel Int'l*, 916 F.2d at 1064. The Court finds no compelling circumstances to deny the Rule 39 Motion. Accordingly, the Defendants' Rule 39 Motion is **GRANTED**.

## VI. CONCLUSION.

In conclusion, the Court hereby determines that the Defendants failed to timely assert their Jury Demand pursuant to the requirements of Rule 38. Having found a waiver of the Defendants' right to assert a jury demand under Rule 38, the Court finds good cause to **GRANT** the Plaintiffs' Motion to Strike. However, based upon the factors enumerated by the Fifth Circuit for determining whether to grant relief pursuant to Rule 39(b), as well as the consideration of judicial economy given the interrelatedness of the claims in this case, the Court will hereby **GRANT** Defendants' Rule 39 Motion. In light of the foregoing, it is hereby

**ORDERED** that Plaintiffs' Motion to Strike [ECF No. 39] is hereby **GRANTED**; and it is further

**ORDERED** that this Court hereby grants a jury trial as to all issues in this case in its discretion pursuant to Rule 39(b).

###END OF ORDER###

United States Bankruptcy Court

Northern District of Texas

Seidel,
    Plaintiff

Adv. Proc. No. 23-03036-mvl

Frinzi,
    Defendant

# CERTIFICATE OF NOTICE

District/off: 0539-3     User: admin     Page 1 of 2
Date Rcvd: Mar 05, 2024     Form ID: pdf023     Total Noticed: 2

The following symbols are used throughout this certificate:
**Symbol     Definition**

\+     Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Mar 07, 2024:**
NONE

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| ust | + Email/Text: ustpregion06.da.ecf@usdoj.gov | Mar 05 2024 21:49:00 | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| ust | + Email/Text: ustpregion07.au.ecf@usdoj.gov | Mar 05 2024 21:49:00 | United States Trustee - AU12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |

TOTAL: 2

## BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.
NONE

## NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Mar 07, 2024     Signature:     /s/Gustava Winters

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on March 5, 2024 at the address(es) listed below:

**Name**     **Email Address**

Conor White
    on behalf of Plaintiff Scott M. Seidel cwhite@munsch.com  CourtMail@munsch.com

Davor Rukavina
    on behalf of Plaintiff GNET ATC  LLC drukavina@munsch.com

Davor Rukavina
    on behalf of Plaintiff Multiband Field Services  Inc. drukavina@munsch.com

| | | |
|---|---|---|
| District/off: 0539-3 | User: admin | Page 2 of 2 |
| Date Rcvd: Mar 05, 2024 | Form ID: pdf023 | Total Noticed: 2 |

Davor Rukavina
    on behalf of Plaintiff Scott M. Seidel drukavina@munsch.com

Jason M. Rudd
    on behalf of Defendant James Frinzi jason.rudd@wickphillips.com brenda.ramirez@wickphillips.com

Jason M. Rudd
    on behalf of Defendant Frinzi Family Trust jason.rudd@wickphillips.com brenda.ramirez@wickphillips.com

Julian Preston Vasek
    on behalf of Plaintiff Multiband Field Services Inc. jvasek@munsch.com, CourtMail@munsch.com

Julian Preston Vasek
    on behalf of Plaintiff GNET ATC LLC jvasek@munsch.com, CourtMail@munsch.com

Julian Preston Vasek
    on behalf of Plaintiff Scott M. Seidel jvasek@munsch.com CourtMail@munsch.com

Paul T. Elkins
    on behalf of Defendant Frinzi Family Trust paul.elkins@wickphillips.com McKenzie.Farley@WickPhillips.com

Paul T. Elkins
    on behalf of Defendant Multiband Global Resources LLC paul.elkins@wickphillips.com, McKenzie.Farley@WickPhillips.com

Paul T. Elkins
    on behalf of Defendant James Frinzi paul.elkins@wickphillips.com McKenzie.Farley@WickPhillips.com

TOTAL: 12