

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

The following constitutes the ruling of the court and has the force and effect therein described.

*Michelle V. Larson*

**Signed April 14, 2025**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | CASE NO. 22-31641-MVL7 |
| GOODMAN NETWORKS, INC. | § § | (CHAPTER 7) |
| Debtor. | § § § | |
| SCOTT M. SEIDEL, TRUSTEE; GNET ATC, LLC; AND MULTIBAND FIELD SERVICES, INC. | § § § § § § | ADVERSARY NO. 23-03036-MVL |
| Plaintiffs, | § § § | |
| v. | § § | |
| MULTIBAND GLOBAL RESOURCES, LLC; AND FEDERAL INSURANCE COMPANY, | § § § § § | |
| Defendants. | | |

**ORDER DENYING FEDERAL INSURANCE COMPANY'S PARTIAL MOTION TO DISMISS CLAIMS BROUGHT UNDER CHAPTER 542 OF THE TEXAS INSURANCE CODE AND ALTERNATIVE MOTION TO STRIKE**

Before the Court is the *Motion to Dismiss Claims Brought Under Section 542 of the Texas Insurance Code, or in the Alternative, to Strike References Thereto* (the **"Motion"**), filed by Federal Insurance Company ("**Federal**"), seeking to dismiss claims brought by the duly appointed Chapter 7 Trustee for the estate of Goodman Networks, Inc. (**"Goodman"**), Scott M. Seidel (the "**Trustee**"), GNET ATC, LLC ("**GNET**"), and Multiband Field Services, Inc. ("**Multiband**", and together with the Trustee, the "**Plaintiffs**") pursuant to the Second Amended Complaint.[1]

The Court held a hearing on the Motion on January 8, 2025. Counsel appeared for the Plaintiffs and Federal. After hearing argument on the merits, the Court took the Motion under advisement. The Court has considered the briefing and arguments of counsel and concludes that the Motion should be **DENIED**. The following constitutes the Court's analysis underlying its decision.

## Jurisdiction

Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a non-core proceeding. Pursuant to the District Court's order on this Court's Report and Recommendation regarding withdrawal of the reference, this Court shall proceed over this Adversary Proceeding until the case is trial-ready, at which time the reference shall be withdrawn and the case proceed in District Court. The following shall constitute this Court's reasoning pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure (the **"Rules"**), as made applicable in adversary proceedings pursuant to Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**).

---

[1] ECF No. 88.

- 2 -

**Factual Background**

Pertinent to the Motion, on May 4, 2023, the Plaintiffs filed their original complaint (the "**Original Complaint**") against defendants James Frinzi ("**Frinzi**"), Frinzi Family Trust ("**FFT**"), and Multiband Global Resources, LLC ("**MGR**")[2], commencing the Adversary Proceeding. *See* ECF No. 1. The Plaintiffs asserted a variety of causes of action, including fraudulent transfers, breach of fiduciary duties, and unjust enrichment (among others), centered around a series of allegedly unauthorized transactions made by Frinzi—on MGR's behalf—using the Debtor's, Multiband's, and/or GNET's funds, respectively, to finance these transactions. *See id*.

FFT was subsequently dismissed on July 18, 2024, pursuant to a *Stipulation and Agreed Order of Dismissal of Frinzi Family Trust*. *See* ECF No. 79. Frinzi was dismissed on January 16, 2025, pursuant to a *Stipulation and Agreed Order Dismissing James Frinzi with Prejudice*. *See* ECF No. 125. Prior to Frinzi's dismissal, however, the Plaintiffs amended the Original Complaint and filed the *Plaintiff's Second Amended Complaint* (the "**Second Amended Complaint**" or the "**Complaint**") on September 20, 2024, adding Federal as a Defendant.[3] *See* ECF No. 88.

In the Second Amended Complaint, the Plaintiffs narrowed their claims to thirteen[4] causes of action, stemming from a series of allegedly fraudulent transfers and insider transactions orchestrated by Frinzi through MGR at various points in time from 2021–2022. *See id*. Most importantly to the Motion, the Plaintiffs assert two causes of action related to Federal, wherein they allege that the Debtor, GNET, and Multiband purchased an insurance policy from Federal (the

---

[2] FFT was subsequently dismissed on July 18, 2024, pursuant to a *Stipulation and Agreed Order of Dismissal of Frinzi Family Trust*. *See* ECF No. 79. Frinzi was dismissed on January 16, 2025, pursuant to a *Stipulation and Agreed Order Dismissing James Frinzi with Prejudice*. *See* ECF No. 125.

[3] For clarity purposes, the Court will cite to the Second Amended Complaint [ECF No. 88] with respect to any reference to the Complaint or alleged facts.

[4] The Court notes that the Second Amended Complaint lists thirteen causes of action, but lists "Count 12" twice. *See* ECF No. 88 at pp. 22–23. The correct numbering is referenced herein.

"**Policy**")—providing crime coverage from October 30, 2021 through October 30, 2022 (the "**Coverage Period**")—for which all of Frinzi's alleged actions both occurred during the Coverage Period and fall within the Policy's coverage. *Id*. at ¶¶ 52–65.

According to the Plaintiffs, "Clause A" of the Policy provides that Federal "shall pay the Parent or Organization for direct loss of Money, Securities, or Property sustained by an Insured resulting from Theft or Forgery committed by an Employee acting alone or in collusion with others." *Id*. at ¶ 58. In short, the Plaintiffs allege that the Policy would cover the Debtor as both the "Parent Organization" and the "Insured," and Frinzi would constitute an "Employee", thus providing the Debtor with crime coverage for Frinzi's actions. *Id*. at ¶¶ 58–65. Additionally, the Plaintiffs assert that "Clause F" of the Policy provides that Federal "shall pay the Parent Organization for direct loss of Money or Securities sustained by an Insured resulting from Funds Transfer Fraud committed by a Third Party." *Id*. at ¶ 69. Per the Complaint, the definition of "Funds Transfer Fraud" contained in the Policy allegedly includes the Plaintiffs, given that Frinzi orchestrated a $4.4 million transfer from the Debtor to Multiband, and then from Multiband to MGR, without the Plaintiffs' knowledge or consent. *Id*. at ¶¶ 71–72.

The Plaintiffs further allege that the Plaintiffs made a claim under the Policy on October 28, 2022, and that Federal allegedly did not respond to the Plaintiffs' claim. *Id*. at ¶¶ 75–77. According to the Complaint, the Plaintiffs notified Federal in writing on September 29, 2023, detailing Federal's obligation to its policyholders under Texas law to review and respond to claims and that Federal once again did not respond. *Id*. at ¶¶ 78–79. Finally, the Plaintiffs allege that, as of the filing date, Federal had still not "responded, replied, or communicated with the Debtor, the Plaintiffs, or the Trustee" regarding the Policy. *Id*. at ¶ 80.

In the Complaint, the Plaintiffs allege two additional causes of action against Federal: (1) breach of contract pursuant to Federal's alleged failure to perform its obligations pursuant to the Policy; and (2) violations of Sections 541 and 542 of the Texas Insurance Code. *Id*. at ¶¶ 144–62. As to the breach of contract claim, the Plaintiffs allege that Federal's failure to respond or communicate with the Plaintiffs regarding the "timely demands and claims" constitutes a breach of the Policy to conduct a reasonable investigation of the Plaintiffs' claims. *Id*. at ¶¶ 149–51. Pursuant to the Texas Insurance Code claim, the Plaintiffs allege that Federal's "wrongful acts and omissions" were the "producing cause" of the Plaintiffs' damages. *Id*. at ¶¶ 158–59.

On November 5, 2024, Federal filed the Motion, seeking to dismiss any claims pursuant to Chapter 542 of the Texas Insurance Code asserted against Federal. *See* ECF No. 102. On November 26, 2024, the Plaintiffs filed their *Objection to Federal Insurance Company's Partial Motion to Dismiss Claims Brought Under Section 542 of the Texas Insurance Code or, in the Alternative, to Strike References Thereto*. *See* ECF No. 111. On December 18, 2024, Federal filed its *Reply in Support of its Partial Motion to Dismiss Claims Brought Under Section 542 of the Texas Insurance Code or, in the Alternative, to Strike References Thereto*. *See* ECF No. 20.

On November 5, 2024, Federal also filed a *Motion for Withdrawal of Reference* (the **"Motion to Withdraw"**). *See* ECF No. 104. On November 25, 2024, the Plaintiffs filed their *Response to the Motion to Withdraw* and a Brief in Support. *See* ECF Nos. 109–10. On December 18, 2024, Federal filed its *Reply to the Plaintiffs' Response to the Motion to Withdraw*. *See* ECF No. 119. In the Motion to Withdraw, Federal requested that the District Court enter an order immediately withdrawing the reference of this Adversary Proceeding. *See* ECF No. 104 at p. 9. The Plaintiffs did not oppose the withdrawal of the reference as requested by Federal but did oppose an immediate withdrawal of the reference. *See* ECF No.109 at ¶¶ 1–2.

In accordance with L.B.R. 5011-1(a), this Court held a status conference on the Motion to Withdraw on January 8, 2025. The Court issued its Report and Recommendation to the District Court on February 12, 2025, recommending that the reference be withdrawn in the Adversary Proceeding, but only at such time as this Court certifies that this lawsuit is trial-ready. *See* ECF No. 127. Timely responses to the Court's Report and Recommendation were filed by Federal and the Plaintiffs. ECF Nos. 139, 140 and 145. On March 27, 2025, the District Court accepted the Court's Report and Recommendation and granted the Motion to Withdraw to the extent that the reference in the Adversary Proceeding will be withdrawn when this Court certifies that the Adversary Proceeding is trial-ready.[5]

**Standard of Review**

When reviewing a motion to dismiss under Rule 12(b)(6), as incorporated by Bankruptcy Rule 7012(b), a claim must contain sufficient facts to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As established by the Supreme Court in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, to withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face" under Rule 8(a) pleading standards.[6]

The facts alleged must "be enough to raise a right to relief above the speculative level," but the complaint may survive a motion to dismiss even if recovery seems "very remote and unlikely."[7] Although the complaint is not required to provide detailed factual allegations, it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

[5] *Seidel v. Multiband Global Resources*, No. 3:24-CV-2937-S, ECF No. 13 (N.D. Tex. Mar. 27, 2025).

[6] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[7] *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (cleaned up).

will not do."[8] Beyond factual allegations, "any ambiguities in the current controlling substantive law must also be" interpreted in the plaintiff's favor.[9]

In reviewing Rule 12(b)(6) motions, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted.[10] In reviewing the Motion, the Court looks to the pleadings, alongside any documents attached or incorporated into the Complaint by reference.

Under Rule 12(f), "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[11] Likewise, Rule 12(f) motions to strike are also disfavored because Rule 12(f) motions are "drastic" remedies.[12] A "motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy."[13] Courts are generally unwilling to "determine disputed and substantial questions of law" with a motion to strike.[14] Under such circumstances, courts should "defer action on the motion and leave the sufficiency of the allegations for determination on the merits."[15]

---

[8] *Twombly*, 550 U.S. at 555.

[9] *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)).

[10] *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir. 2009).

[11] FED. R. CIV. P. 12(f).

[12] *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1057 (5th Cir. 1982); *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) ("[Rule 12(f)] is a drastic remedy to be resorted to only when required for the purposes of justice.").

[13] *See Augustus*, 306 F.2d at 868.

[14] *Id*.

[15] *Id*.

**Analysis**

Plaintiffs assert violations of Chapter 542 of the Texas Insurance Code related to the Crime Policy for both Employee Theft Coverage and Funds Transfer Fraud Coverage. The Texas Prompt Payment of Claims Act ("**TPPCA**") "provides for additional damages when an insurer wrongfully refuses or delays payment of a claim."[16] At issue here is whether employee theft insurance ("**ETI**") as provided in the Employee Theft Coverage portion of the Crime Policy falls under one of the TPPCA's explicit exemptions set forth in Section 542.053(a) of the Texas Insurance Code: "This subchapter does not apply to: (1) workers' compensation insurance; (2) mortgage guaranty insurance; (3) title insurance; (4) *fidelity,* surety, or guaranty bonds; (5) marine insurance as defined by Section 1807.001; or (6) a guaranty association created and operating under Chapter 2602."). TEX. INS. CODE § 542.053(a) (emphasis added). Namely, the Court must determine whether ETI is the equivalent of a "fidelity bond" for the purpose of the TPPCA. The Court finds that the Plaintiffs have fulfilled the requirements of Rule 8 and that the subject claims pass muster under Rule 12. For the following reasons, the Motion must be denied.

*Fidelity Bonds*

Federal asserts that any claim under Chapter 542 of the Texas Insurance Code fails because fidelity bonds are exempt from the TPPCA. While the Texas Insurance Code does not expressly define the term "fidelity bond,"[17] Federal notes that three Texas district courts have held that such term encompasses any policy covering employee theft. *Blue Star Sports Holdings, Inc. v. Fed. Ins. Co.*, 658 F. Supp. 3d 351, 359 (E.D. Tex. 2023) (dismissing claim under Section 542 of the TPPCA because the insured sought coverage for employee theft); *RealPage Inc. v. Nat'l Union Fire Ins.*

---

[16] *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007). The TPPCA was formerly codified at TEX. INS. CODE § 21.55 and is now codified at §§ 542.051–.061.

[17] *See* TEX. INS. CODE § 542.051.

*Co. of Pittsburgh, PA*, No. 3:19-CV1350-B, 2020 WL 1550798, at *3 (N.D. Tex. Apr. 1, 2020) ("fidelity bonds respond to loss due to theft or other misconduct by the insured's employees or others holding a position of trust with the insured") (cleaned up); *Tex. Ass'n of Sch. Bds., Inc. v. Travelers Cas.*, No. 1:15-cv-369-RP, 2016 WL 4257748 (W.D. Tex. July 7, 2016) (employee theft coverage is exempt under Section 542.053 of the TPPCA).

Each of these courts relies heavily on the dictionary definition of "fidelity bonds" as indicative of the "common usage" of such term. *Black's Law Dictionary* defines fidelity bond as a "bond to indemnify an employer or business for loss *due to embezzlement, larceny, or gross negligence by an employee* or other person holding a position of trust."[18] Both the Merriam Webster and Oxford English Dictionaries define the term similarly.[19]

The Plaintiffs however point out that a "fidelity bond" has different *defined* meanings elsewhere in the Texas Insurance Code. ECF No. 112 at 16–23 (noting that "fidelity bond" involves a tripartite relationship in TEX. INS. CODE §§ 942.052, 843.105 and 843.402, and that fidelity bonds and surety bonds are equated in TEX. INS. CODE §§ 462.007, 887.54, and 2651.10). *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("[W]e must always consider the statute as a whole rather than its isolated provisions . . . . We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone.") (internal citations omitted). The Supreme Court of Texas has set forth:

> **When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent.** TEX. GOV'T CODE § 312.005; *see Texas Dept. of Protective and*

---

[18] *Fidelity Bond*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

[19] *Fidelity Bond*, MERRIAM-WEBSTER DICTIONARY ONLINE (2025) ("A bond or other form of contract to cover an employer or government entity against financial loss due to the dishonesty of an employee or other trusted person."); *Fidelity Insurance*, OXFORD ENGLISH DICTIONARY ONLINE (2025) ("Insurance taken out by an employer to provide indemnity against losses incurred through the dishonesty or non-performance of an employee.").

> *Regulatory Services v. Mega Child Care*, 145 S.W.3d 170, 176 (Tex. 2004). To discern that intent, we begin with the statute's words. TEX. GOV'T CODE § 312.003; *see Texas Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). **If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage.** *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). Undefined terms in a statute are typically given their ordinary meaning, but **if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning.** *In re Hall*, 286 S.W.3d 925, 928–29 (Tex. 2009). And if a statute is unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results. *Mega Child Care*, 145 S.W.3d at 177. **We further consider statutes as a whole rather than their isolated provisions.** *City of Sunset Valley*, 146 S.W.3d at 642. We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen. *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008).

*TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (emphasis added).

While ETI *could* fall within the dictionary definition, this construction is at odds with the specific and general intent of the TPPCA. To be certain, the TPPCA is to "be *liberally* construed to promote prompt payment of insurance claims."[20] As a general matter, according to statute, the Legislature intends a "just and reasonable result," favoring public interest "over any private interest."[21] Likewise, the TPPCA specifically applies to "first-party" claims. *See* TEX. INS. CODE § 542.051(2) ("'Claim' means a first-party claim that: (A) is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract; and (B) must be paid by the insurer directly to the insured or beneficiary.").

Fidelity bonds are not a one-size-fits-all solution and come in multiple forms. They protect multiple parties' interests against an employee's infidelity—all of which fall under the dictionary definition.[22] For example, ERISA, business services, and employee dishonesty bonds are all variations of fidelity bonds. Of the examples listed, all can insure third-party assets over which the

---

[20] *See* TEX. INS. CODE § 542.054 (emphasis added).

[21] *See* TEX. GOV'T. CODE § 311.021 (3), (5) (favoring insurance companies' private interest over members of the public who buy ETI coverage is potentially unjust and unfair).

[22] *See Fidelity Bond*, BLACK'S LAW DICTIONARY (12th ed. 2024).

bond's principal has custodial possession from theft, embezzlement, and the like. Each bond listed indemnifies "an employer or business for loss . . . by an employee or other person holding a position of trust."[23] Third-party liability insurance arises out of agency theory.[24]

The terms surrounding fidelity bond in the statute, viewed narrowly in subsection 542.053(a)(4) (guaranty bonds and surety bonds) or broadly in Section 542.053(a), primarily, but not exclusively, involve three parties.[25] If a term viewed alone is ambiguous, as is the case here, the meaning "may be clear when . . . analyzed in light of the terms that surround it."[26] The *noscitur a sociis* canon of construction, translating to "a word is known by its associates" or "a word may be known by the company it keeps", guides this analysis.[27]

Fidelity bond's "associates" in subsection 542.053(a)(4) are surety and guaranty bonds, each of which involves a tripartite relationship, unlike the instant ETI policy.[28] Surety bonds are issued to ensure the timely performance of a contract. A surety bond is a "*third party's* agreement to guarantee the completion of a construction contract."[29] Guaranty bonds, a hybrid of the two bond types, "[combines] the features of a fidelity bond and [surety] bond, securing both payment

---

[23] *Fidelity Bond*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[24] *See generally Agency*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("An agent's actions have legal consequences for the principal when the agent acts within the scope of the agent's actual authority or with apparent authority, or the principal later ratifies the agent's action. — Also termed common-law agency; true agency.").

[25] *See* TEX. INS. CODE § 542.053.

[26] *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011).

[27] *See id.*

[28] *See* TEX. INS. CODE § 542.053.

[29] *Performance Bond*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

and performance."[30] Sureties issuing guaranty bonds often insure an obligee's interest in construction projects or dealings with financial institutions.[31]

This tripartite nature of the exceptions exists in other subsections of 542.053(a) as well. Workers' compensation, mortgage guaranty, and title insurance; marine insurance per Section 1807.001; and guaranty associations per Chapter 2602 all primarily involve three-party relationships.[32] Worker's compensation insurance, mortgage guaranty insurance, and guaranty associations are exclusively three-party relationships. Employers pay workers' compensation insurance for their employees' benefit.[33] The mortgagor pays mortgage guaranty insurance for the mortgagee's benefit.[34] Guaranty associations under Chapter 2602 protect consumers' claims when title insurance companies are impaired, a mandatory insurance relationship into which title insurance agencies must enter for their insured's benefit.[35]

Admittedly, title and marine insurance can protect both first-party policyholder and third-party interests.[36] In Texas, lender beneficiary title insurance is mandatory, and insurance for the home purchaser's protection is optional.[37] Texas' statutory marine insurance definition lists multiple coverages, including third-party interests like cargo and docks, and first-party interests like ships' hulls and other structural components.[38]

---

[30] *Guaranty Bond*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[31] *See generally Midland v. Waller*, 430 S.W.2d 473, 479 (Tex. 1968) (discussing a construction guaranty bond); *United States v. Kreimer*, 609 F.2d 126, 129 (5th Cir. 1980) (discussing a financial guaranty bond).

[32] *See* TEX. INS. CODE § 542.053(a).

[33] *See generally* TEX. LAB. CODE Ch. 406.

[34] *See* TEX. INS. CODE § 3502.003.

[35] *See generally id.* at. Ch. 2602.

[36] *See id.* at §§ 2501.003(12), 1807.001(2); *see also* TEXAS DEPT. INS., TITLE INSURANCE FAQ https://www.tdi.texas.gov/title/titlefaqs.html.

[37] *See id.* at § 1807.001 The former is three-party, and the latter is two-party.

[38] *See id.* at § 1807.001(2).

Given the closer association between the neighboring terms contained in subsection 542.053(a)(4), and the Legislature's explicit and implicit statutory intent, giving fidelity bond "such broad import" as to include ETI "would contravene the familiar principle of statutory interpretation that words grouped in a list should be given related meaning." *United States v. Koutsostamatis*, 956 F.3d 301, 307 (5th Cir. 2020). Moreover, any ambiguities in the current controlling substantive law must also be interpreted in the Plaintiffs' favor for purposes of a motion to dismiss. *Vardeman*, 55 F.4th 1045 at 1050. Accordingly, for the foregoing reasons, the Court must respectfully part ways with those courts holding that employee theft insurance is unequivocally the same as a fidelity bond pursuant to Chapter 542 of the Texas Insurance Code. Thus, the Court denies the Motion to Dismiss and the related Motion to Strike as it relates to equating the Crime Policy to a "fidelity bond" for purposes of Section 542.053(a)(4) of the TPPCA.

### *Funds Transfer Fraud Coverage*

With respect to the Funds Transfer Fraud claim, this insuring clause was not made part of Federal's Motion to Dismiss. As such, the Court declines to address the issue as it is not properly before the Court.

For the foregoing reasons, it is hereby

ORDERED that the *Motion to Dismiss Claims Brought Under Section 542 of the Texas Insurance Code, or in the Alternative, to Strike References Thereto* is hereby **DENIED.**

###END OF ORDER###