Megan M. Adeyemo, Bar No. 24099595
GORDON REES SCULLY MANSUKHANI, LLP
2200 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone: (214) 231-4660
Facsimile: (214) 461-4053
Email: madeyemo@grsm.com

Scott L. Schmookler (*pro hac vice*)
GORDON REES SCULLY MANSUKHANI, LLP
1. N. Wacker, Suite 1600
Chicago, IL 60606
Telephone: (312) 980-6779
Facsimile: (312) 565-6511
Email: sschmookler@grsm.com

Iga W. Todd (*pro hac vice*)
GORDON REES SCULLY MANSUKHANI, LLP
1. N. Wacker, Suite 1600
Chicago, IL 60606
Telephone: (312) 980-6794
Facsimile: (312) 565-6511
Email: itodd@grsm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | )<br>)<br>) Case No. 22-31641-mvl-7<br>) |
| GOODMAN NETWORKS, INC., | ) (Chapter 7) |
| Debtor | ) |
| | ) |
| SCOTT M. SEIDEL, TRUSTEE;<br>GNET ATC, LLC; MULTIBAND<br>FIELD SERVICES, INC., | )<br>)<br>)<br>) ADVERSARY PROCEEDING<br>) NO.: 23-03036 |
| Plaintiffs, | )<br>) Civ. Action No. 3:24-cv-02937-S |
| v. | ) |
| JAMES FRINZI; MULTIBAND GLOBAL<br>RESOURCES, LLC; and FEDERAL<br>INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM IN SUPPORT OF FEDERAL INSURANCE COMPANY'S OBJECTION TO THE BANKRUPTCY COURT'S ORDER [DKT. 148]

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 4

ARGUMENT ..................................................................................................................... 6

 I. THE BANKRUPTCY COURT EXCEEDED ITS STATUTORY AUTHORITY BY ISSUING A DECISION ON FEDERAL'S MOTION TO DISMISS. ............ 6

 II. THE BANKRUPTCY COURT ERRONEOUSLY DEVIATED FROM TEXAS PRECEDENT BY RULING THAT THE TERM "FIDELITY BOND" DOES NOT ENCOMPASS AN INSURANCE POLICY COVERING EMPLOYEE THEFT. ...................................................................................................... 10

 III. THE STATUTORY EXEMPTION APPLIES TO ANY CLAIM FOR EMPLOYEE THEFT, REGARDLESS OF THE FORM OF THAT COVERAGE. ............................................................................................... 10

 IV. THE BANKRUPTCY COURT VIOLATED TEXAS SUPREME COURT AUTHORITY BY REFUSING TO APPLY THE DICTIONARY DEFINITION OF FIDELITY BOND. ...................................................................... 13

 V. THE TRUSTEE'S INTERPRETATION OF SECTION 542.053 RENDERS THE TERM "FIDELITY BOND" SURPLUSAGE, IN VIOLATION OF BINDING PRECEDENT. ............................................................................. 15

 VI. THE BANKRUPTCY COURT'S DECISION DEVIATED FROM ESTABLISHED TEXAS LAW HOLDING THAT EMPLOYEE THEFT COVERAGE IS A FIDELITY BOND. .............................................................. 16

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Holeman*,
2017 WL 4985714 (E.D. Tex., Nov. 2, 2017) .......................................................... 8

*Blue Star Sports Holdings, Inc. v. Fed. Ins. Co.*,
658 F. Supp. 3d 351 (E.D. Tex. 2023).............................. 1, 2, 3, 10, 11, 12, 13, 14

*Boys Scouts of Am. v. The Hartford Accident & Indem. Co.*,
No. 3:19-CV-1318-B, 2020 WL 4530370 (N.D. Tex. Aug. 6, 2020)...................... 6

*City State Bank in Wellington v. USF&G*,
778 F.2d 1103 (5th Cir. 1985) ............................................................................... 17

*Epps v. Fowler*,
351 S.W.3d 862, 866 (Tex. 2011)........................................................................... 14

*First United Fin. Corp. v. USF&G*,
96 F.3d 135 (5th Cir. 1996) ................................................................................... 16

*In re Acis Capital Mgmt., L.P.*,
No. 3:24-cv-02036, 2024 WL 4500804 (N.D. Tex. Oct. 15, 2024) ........................ 2

*In re Antioch Co.*,
451 B.R. 810 (S.D. Ohio 2011) ............................................................................... 7

*In re Blackwell ex rel. Estate of I.G. Serv., Ltd.*,
279 B.R. 818 (W.D. Tex. 2002)........................................................................... 2, 6

*In re Maison Royale, LLC*,
2024 WL 2699994 (E.D. La. May, 24, 2024)........................................................... 9

*In re Pioneer Austin East Dev.*,
No. 10–30177–HDH–11, 2012 WL 487087 (N.D. Tex. Feb. 15, 2012) ................. 7

*Mass. Bonding & Ins. Co. v. Tex. Fin. Corp.*,
258 S.W. 250 (Tex. App. 1924).............................................................................. 10

*Matter of Phillips*,
844 F.2d 230 (5th Cir. 1988) ................................................................................... 9

*Miller v. Boutwell, Owens & Co.*,
No. 15-cv-149-KC, 2015 WL 3824070 (W.D. Tex. June 19, 2015) ........................ 7

*Morin v. Caire*,
77 F.3d 116 (5th Cir. 1996) ..................................................................................... 9

*Nat'l Sur. Co. v. Murphy-Walker*,
174 S.W. 997 (Tex. App. 1915)......................................................................... 4, 16

*Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*,
536 S.W.3d 487 (Tex. 2017).................................................................................. 15

*RealPage Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
No. 3:19-CV1350-B, 2020 WL 1550798 (N.D. Tex. April 1, 2020) ........ 1, 3, 10, 13, 14

*Renasant Bank v. St. Paul Mercury Ins. Co.*,
882 F.3d 203, 207 (5th Cir. 2018) ......................................................................... 16

*Sanchez v. City of El Paso*,
2018 WL 1989633 (5th Cir. 2018)........................................................................... 9

*Sherman v. Greenstone Farm Credit Serv., ACA*,
No. 3:11–CV–0710–N, 2011 WL 2038573 (N.D. Tex., May 24, 2011).................. 7

*Shinogle v. Whitlock*,
596 S.W.3d 772 (Tex. 2020).................................................................................. 15

*Stern v. Marshall*,
   564 U.S. 462 (2011)...........................................................................2
*So. Sur. v. Citizens State Bank of Hempstead*,
   212 S.W. 556 (Tex. App. 1919).................................................... 4, 16
*Tex. Ass'n of Sch. Bds., Inc. v. Travelers Cas.*,
   No. 1:15-cv-369-RP, 2016 WL 4257748 (W.D. Tex. July 7, 2016) ............. 1, 3, 10, 12, 13, 14
*Tex. Nat'l Bank of Dall. v. Fid. & Deposit Co. of Md.*,
   526 S.W. 2d 770 (Tex. App.—Waco [10th Dist.] 1975).................... 10, 16
*Tex. State Bd. v. Tex. Med. Ass'n*,
   511 S.W.3d 28 (Tex. 2017)...........................................................3, 14
*VSP Labs, Inc. v. Hillair Capital Inv. LP*,
   619 B.R. 883 (N.D. Tex. 2020)..........................................................7
*W. Indem. Co. v. Free & Accepted Masons of Tex.*,
   198 S.W. 1092 (Tex. App. 1917).................................................. 4, 16
*Wellness Int'l Network, Ltd. v. Sharif*,
   575 U.S. 665 (2015)...................................................................2, 6

**Statutes and Other Authorities**

28 U.S.C. §157........................................................................... 4, 5, 8, 9

28 U.S.C. § 542.053........................................... 3, 4, 5, 9, 10, 12, 13, 15, 16

68 TEX. JUR., SURETYSHIP & GUARANTY § 231 (3d ed. 2020) ....................... 10

TEX. INS. CODE ANN. § 542.053(a)(4)......................................... 1, 5, 10

Federal Insurance Company ("Federal") objects to the Order (Dkt. 148) issued by the United States Bankruptcy Court for the Northen District of Texas (the "Bankruptcy Court") denying its motion to dismiss and requests that the United States District Court for the Northern District of Texas (the "District Court") vacate the Order and upon *de novo* review, enter an order dismissing claims brought under Section 542 of the Texas Insurance Code or, in the alternative, strike references thereto. In the alternative, to the extent the District Court finds that the Bankruptcy Court did not exceed its authority in issuing the Order, Federal requests the District Court treat this Objection as a motion for leave to appeal pursuant to 28 U.S.C. § 158(a) and Rule 8004 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION

Federal moved to dismiss the Trustee's claims under the Texas Prompt Payment of Claims Act ("TPPCA") because the Trustee seeks coverage for employee theft and that Act does not apply to "fidelity, surety, or guaranty bonds." (TEX. INS. CODE ANN. § 542.053(a)(4)). While the Texas Insurance Code does not expressly define the term "fidelity," Texas district courts have held that it encompasses any policy covering employee theft. *RealPage Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* No. 3:19-CV1350-B, 2020 WL 1550798, at *3 (N.D. Tex. April 1, 2020). Accordingly, Texas federal courts have held that where, as here, an insured seeks coverage for employee theft, claims under Section 542 fail and must be dismissed. *Blue Star Sports Holdings, Inc. v. Fed. Ins. Co.*, 658 F. Supp. 3d 351, 359 (E.D. Tex. 2023); *Tex. Ass'n of Sch. Bds., Inc. v. Travelers Cas.*, No. 1:15-cv-369-RP, 2016 WL 4257748, at *9 (W.D. Tex. July 7, 2016).

Despite district court authority mandating dismissal, the Bankruptcy Court denied Federal's Motion and entered a ruling directly contrary to Texas precedent. Rather than apply the terms of Section 542.053(a)(4) as written, the Bankruptcy Court entered a novel ruling and held that as a matter of law, Section 542.053(a)(4) only applies to employee theft policies structured as

a surety contract. That decision exceeded the Bankruptcy Court's authority under 28 U.S.C. § 157, contravened existing precedent interpreting Section 542.053 and Texas Supreme Court authority governing statutory interpretation. Accordingly, Federal objects to that decision and asks that the District Court enter an order dismissing claims brought under Section 542 of the Texas Insurance Code or, in the alternative, to strike references thereto.

First, the Bankruptcy Court exceeded its statutory authority by issuing a decision on Federal's Motion, in lieu of issuing a report and recommendation subject to the District Court's *de novo* review. Because this insurance coverage dispute is a non-core proceeding, the Bankruptcy Court can only submit proposed findings of fact and conclusions of law for *de novo* review by the District Court. 28 U.S.C. §157(c)(1) unequivocally mandates that "***the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court***…." (emphasis added). Accordingly, the Supreme Court has recognized that a district court may not rule on dispositive motions and may only issue a report and recommendation. *Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668 (2015); *see also In re Acis Capital Mgmt., L.P.*, No. 3:24-cv-02036, 2024 WL 4500804, at *11 (N.D. Tex. Oct. 15, 2024); *In re Blackwell ex rel. Estate of I.G. Serv., Ltd.*, 279 B.R. 818, 824 (W.D. Tex. 2002). Nonetheless, the Bankruptcy Court entered an order on Federal's motion (not a report and recommendation) (Dkt. 127) – thereby exceeding its statutory authority. Accordingly, its ruling should be overruled and vacated.

Second, the Bankruptcy Court erroneously deviated from Texas district court precedent by ruling that the term "fidelity bond" does not encompass an insurance policy covering employee theft. Where, as here, an insured seeks coverage for employee theft, district courts dismiss claims under Section 542 of the Texas Insurance Code. *Blue Star Sports Holdings*, 658 F. Supp. 3d at

359 (dismissing claim under Section 542 of the Texas Insurance Code because the insured sought coverage for employee theft); *Tex. Ass'n of Sch. Bds.,* 2016 WL 4257748 at *9 (because employee theft coverage is exempt under Section 542.053, court dismissed claim under Texas Prompt Payment of Claims Act). Despite the foregoing authority, the Bankruptcy Court denied Federal's Motion and deviated from district court precedent by entering a ruling directly contrary to *Blue Star*, *Texas Association,* and *RealPage*.

Third, the Bankruptcy Court violated Texas Supreme Court authority governing interpretation of Section 542.053(a)(4) by refusing to apply the dictionary definition of "fidelity bond." Binding precedent set by the Texas Supreme Court mandates that undefined terms of Section 542.053(a)(4) be interpreted according to their dictionary definition. *Tex. State Bd. v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34–35 (Tex. 2017). Consistent with that mandate, *Blue Star*, *Texas Association,* and *RealPage* applied the dictionary definition of "fidelity bond." Nonetheless, the Bankruptcy Court declined to apply the dictionary definition of "fidelity bond." The decision to eschew the dictionary definition of "fidelity bond" in contravention of Texas Supreme Court precedent mandates vacatur of the decision.

Third, Section 542.053 applies to "… fidelity, surety, or guaranty bonds." Because Section 542.053 lists three distinct types of instruments (fidelity, surety and guaranty), Section 542.053 must be read to give effect to each type of instrument. However, the Bankruptcy Court refused to do so and interpreted a fidelity bond as synonymous with a surety bond. By doing so, the Bankruptcy Court read "fidelity bond" out of Section 542.053, in direct contravention of Texas Supreme Court precedent. The adoption of an interpretation that rendered the phrase "fidelity bond" as surplusage in contravention of Texas Supreme Court precedent mandates vacatur of the decision.

Finally, the Bankruptcy Court deviated from settled principles of Texas law. The Texas Appellate Court considered and spurned the suggestion that employee theft coverage is not a fidelity bond. The Texas Appellate Court rejected that distinction and recognized that "fidelity bonds of the same general nature as those here involved to be policies of insurance." *So. Sur. v. Citizens State Bank of Hempstead*, 212 S.W. 556 (Tex. App. 1919); *Nat'l Sur. Co. v. Murphy-Walker*, 174 S.W. 997 (Tex. App. 1915); *W. Indem. v. Free & Accepted Masons of Tex.*, 198 S.W. 1092 (Tex. App. 1917). Because the Bankruptcy Court failed to follow Texas law, its decision should be overruled and vacated.

Federal respectfully requests that the District Court sustain its objection and enter an order dismissing any claims under Section 542 of the Texas Insurance Code with prejudice, or in the alternative, strike any references thereto in Plaintiffs' Second Amended Complaint.

## BACKGROUND

Creditors of Debtor, Goodman Networks, Inc. ("Goodman"), a field services company, filed an involuntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code. (Dkt. 88, ¶ 1). On September 20, 2024, the Trustee filed a Second Amended Complaint and added claims against Federal. (Dkt. 88). In support of that claim, the Trustee alleges that James Frinzi, while acting as the Chief Executive Officer of Goodman, committed a theft and engaged in an embezzlement. (Dkt. 88, ¶¶ 12-51).

The Trustee asserts that Frinzi's conduct resulted in a loss covered under Insuring Clause A of the Policy. (Dkt. 88, ¶¶ 58; 75). As explained by the Trustee, Insuring Clause A covers Goodman for "Theft" by an "Employee":

> [Federal] shall pay [Goodman and its subsidiaries] for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others.

(Dkt. 88, ¶¶ 58-59). The Policy defines the term "Theft" as "the unlawful taking of **Money**, **Securities** or **Property** to the deprivation of … an **Insured**, solely for the purposes of Insuring Clause (A), Employee Theft Coverage." (Dkt. 88, ¶ 67). It defines "Employee" to include an "**Executive** while performing acts within the scope of the usual duties of an **Employee**" (Dkt. 88, ¶ 60) and "a natural person in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** governs and directs in the performance of such service…." (Dkt. 88, ¶ 62).

The Trustee alleges Frinzi constitutes an "Employee" under the Policy because he was the Chief Executive Officer in the regular service of the Plaintiffs and was governed and directed by the Plaintiffs in the performance of such service. (Dkt. 88, ¶¶ 61-63). The Trustee alleges that Frinzi's actions constitute Theft as embezzlement is an unlawful taking of money to the deprivation of Plaintiffs. (Dkt. 88, ¶ 68). Accordingly, the Trustee alleges that Goodman suffered a loss covered under Insuring Clause (A) of the Policy.

The Trustee pursued two claims against Federal. First, the Trustee pursued a breach of contract claim against Federal on the theory that it did not comply with the Policy and reimburse Goodman for a loss covered by the Policy. (Dkt. 88, ¶¶ 144-154). Second, the Trustee pursued an extra contractual claim against Federal under Section 542 of the Texas Insurance Code. (Dkt. 88, ¶ 157-162). The Trustee alleges that Federal violated the Texas Prompt Payment of Claims Act ("TPPCA"), as codified in Section 542.055 of the Texas Insurance Code, and seeks to recover interest on the amount of the claim and attorney's fees. (Dkt. 88, ¶¶ 115-162). On November 5, 2024, Federal moved to dismiss the Trustee's claims under the TPPCA because that Act does not apply to disputes under "fidelity, surety, or guaranty bonds." (Dkt. 102); TEX. INS. CODE ANN. § 542.053(a)(4). On April 15, 2025, the Bankruptcy Court issued an order denying Federal's

Partial Motion to Dismiss. (Dkt. 148).

**ARGUMENT**

**I.    THE BANKRUPTCY COURT EXCEEDED ITS STATUTORY AUTHORITY BY ISSUING A DECISION ON FEDERAL'S MOTION TO DISMISS.**

The Bankruptcy Court exceeded its statutory authority by issuing a decision on Federal's Motion to Dismiss, in lieu of issuing a report and recommendation subject to the District Court's *de novo* review. While the District Court permitted the reference to remain with the Bankruptcy Court prior to trial, the Bankruptcy Court lacks the statutory authority to issue any rulings on dispositive motions and its decision to do so violated 28 U.S.C. §157(c)(1).

Because this claim involves an insurance coverage dispute, the claims against Federal are non-core proceedings. *Boys Scouts of Am. v. The Hartford Accident & Indem. Co.*, No. 3:19-CV-1318-B, 2020 WL 4530370, *7; 10 (N.D. Tex. Aug. 6, 2020) ("[A] state law contract…action that is not based on any right created by the federal bankruptcy law, and that could arise outside the context of bankruptcy, is not a core proceeding"). The Bankruptcy Court agreed in its report and recommendation regarding Federal's Motion for Withdrawal of the Reference and acknowledged in that ruling that it "cannot issue final judgments or orders in connection with those claims." (Dkt. 127, pg. 8). Yet, despite acknowledging the limits of its authority, the Bankruptcy Court then entered a final order on Federal's Motion to Dismiss and issued a legal interpretation of 28 U.S.C. §157(c)(1). Doing so was error as the Bankruptcy Court does not have final adjudicative authority over the insurance claims and can only submit proposed findings of fact and conclusions of law for *de novo* review by the District Court.

28 U.S.C. §157(c)(1) leaves no doubt on the Bankruptcy Court's authority. In a non-core proceeding, "***the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court***, and any *final order or judgment* shall be entered by the district judge after

considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. §157(c)(1) (emphasis added). That limitation applies to any dispositive motion, whether presented in the form of a motion to dismiss or a motion for summary judgment. To leave no doubt, the Supreme Court has expressly recognized the limits of bankruptcy court jurisdiction in a non-core proceeding and held that "[a]bsent consent, bankruptcy courts in non-core proceedings may only 'submit proposed findings of fact and conclusions of law,' which the district courts review *de novo*." *Wellness*, 575 U.S. at 668; *see also In re Blackwell ex rel. Estate of I.G. Serv., Ltd.*, 279 B.R. at 824.

Consistent with *Wellness*, *Blackwell* recognized and rejected the notion that a bankruptcy court may issue a substantive ruling on a motion to dismiss. In that case, the bankruptcy court addressed whether it could issue a decision on a motion to dismiss or was limited to issuing a report and recommendation. Recognizing that it lacked statutory authority to issue a final ruling on a dispositive motion, the bankruptcy court held that "… the statute seems to require that the district court enter the order on dispositive motions in non-core proceedings." *Id.* at 824. Accordingly, the court recognized that it could not rule on dispositive motions:

> So long as the reference remains with the bankruptcy judge, then, motions to dismiss and other dispositive motions should and will be considered by this court. As and when the court reaches a conclusion with respect to such motions, it will prepare a report and recommendation for submission to the district court, requesting entry of a final order thereon, and affording the parties the opportunity to timely and specifically object, as provided in section 157(c)(1).

*Id.*; *see also In re Antioch Co.*, 451 B.R. 810 (S.D. Ohio 2011) (issuing decision on motion to dismiss core claims and report and recommendation on motion to dismiss non-core claims).

That ruling is consistent with precedent in this district. Recognizing the bankruptcy court's lack of authority to issue a ruling on a dispositive motion in a non-core proceeding, courts in this district routinely issue reports and recommendations on motions to dismiss. *VSP Labs, Inc. v.*

*Hillair Capital Inv. LP*, 619 B.R. 883, 898 (N.D. Tex. 2020) ("For the non-core proceedings, the bankruptcy court can handle all pretrial matters, and issue findings of fact and conclusions of law for any dispositive motions that the [district court] will then review de novo"); *Miller v. Boutwell, Owens & Co.*, No. 15-cv-149-KC, 2015 WL 3824070, at *2 (W.D. Tex. June 19, 2015) ("For the non-core proceedings, the bankruptcy court can handle all pretrial matters, and issue findings of fact and conclusions of law for any dispositive motions that this Court will then review de novo"); *In re Pioneer Austin East Dev.*, No. 10–30177–HDH–11, 2012 WL 487087, at * 2 (N.D. Tex. Feb. 15, 2012) (because dispute was a non-core proceeding, the bankruptcy court could only issue a report and recommendation); *Sherman v. Greenstone Farm Credit Serv., ACA*, No. 3:11–CV–0710–N, 2011 WL 2038573, at *2 (N.D. Tex., May 24, 2011) (issuing ruling on a dispositive motion only after bankruptcy court issued report and recommendation).

The Bankruptcy Court recognized the limitations on its authority in its prior ruling on Federal's Motion to Withdraw the Reference.  In that ruling, the Bankruptcy Court acknowledged "the general practice within this district for pre-trial matters to be referred to a magistrate, which role the Bankruptcy Court is willing to fill."  (Dkt. 127, pg. 10).  A magistrate does not, however, possess the authority to rule on a dispositive motion.  28 U.S.C. § 636(b)(1).  On the contrary, a magistrate may only issue a report and recommendation when considering a motion to dismiss. *Bell v. Holeman*, 2017 WL 4985714, at *2 (E.D. Tex., Nov. 2, 2017) ("A magistrate judge may, therefore, recommend disposition of a motion to dismiss to the district judge, who will then conduct a de novo review of those portions of the recommendation to which parties raise specific, timely objection").  Therefore, under the Bankruptcy Court's own analogy, the Bankruptcy Court lacked the statutory authority to issue a decision on Federal's Motion to Dismiss and was only permitted to issue a report and recommendation.

A contrary ruling in this case unilaterally grants the Bankruptcy Court authority to issue dispositive rulings because, unlike many motions to dismiss, Federal's Motion was not limited to the adequacy of the Trustee's allegations. Instead, that Motion involved a legal ruling on the scope and application of Section 542.053(a)(4). By rendering a decision on that Motion, the Bankruptcy Court issued a final ruling on Federal's defense under Section 542.053(a)(4). Accordingly, permitting the Bankruptcy Court to issue such a decision (instead of a report and recommendation) directly contradicts the statutory authority granted by 28 U.S.C. §157(c)(1). Because the Bankruptcy Court exceeded its statutory authority under 28 U.S.C. §157(c)(1), its decision should be overruled and vacated, and the matter should be returned for issuance of a report and recommendation.

We anticipate the Trustee will argue that the District Court should not review the Bankruptcy Court's denial of Federal's Motion because the Bankruptcy Court's Order is not a final order or judgment.[1] However, that argument confuses the appealability of a decision with the scope of the Bankruptcy Court's statutory authority. While a decision may not be appealable to a Circuit Court until after entry of a final judgment, that principle does not grant the Bankruptcy Court authority to issue decisions in non-core proceedings. While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations for non-core proceedings. *See* 28 U.S.C. §§ 157(b)(1), (c)(1). Because this is not a core proceeding, the Bankruptcy Court can only submit proposed findings of fact and

---

[1] The Trustee has cited cases addressing the appealability of a decision, but those case do not address 28 U.S.C. §§ 157(b)(1), (c)(1). *See Sanchez v. City of El Paso*, 2018 WL 1989633 at *1 (5th Cir. 2018) (*citing Morin v. Caire*, 77 F.3d 116, 119 (5th Cir. 1996)) ("The district court's order denying the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is not a final order"); *see also In re Maison Royale, LLC*, 2024 WL 2699994, *4 (E.D. La. May, 24, 2024) (citing *Matter of Phillips*, 844 F.2d 230 (5th Cir. 1988)) ("[t]he Fifth Circuit concluded that the bankruptcy court's denial of the motion to dismiss is a nonfinal order because, "[l]ike an order that determines that the bankruptcy court has jurisdiction, an order determining that a debtor is eligible allows the bankruptcy proceedings to continue.").

conclusions of law to the District Court and any final decision shall be entered by the District Court after considering the Bankruptcy Court's proposed findings and conclusions. Because the Bankruptcy Court exceeded its statutory authority, its decision should be overruled and the matter returned for entry of a report and recommendation.

## II. THE BANKRUPTCY COURT ERRONEOUSLY DEVIATED FROM TEXAS PRECEDENT BY RULING THAT THE TERM "FIDELITY BOND" DOES NOT ENCOMPASS AN INSURANCE POLICY COVERING EMPLOYEE THEFT.

Even if the Order operates as a report and recommendation, the District Court should reject the Bankruptcy Court's recommendation to deny Federal's Motion for three reasons. First, the Bankruptcy Court failed to follow this Court's precedent – which recognizes that Section 542.053(a)(4) applies to an insurance claim for employee theft. Second, the Bankruptcy Court contradicted binding Texas Supreme Court authority when interpreting Section 542.053(a)(4) in that it refused to apply the dictionary definition of "fidelity bond." Third, the Bankruptcy Court contradicted binding Texas Supreme Court authority when interpreting Section 542.053(a)(4) in that the Bankruptcy Court's interpretation rendered the plain terms surplusage.

## III. THE STATUTORY EXEMPTION APPLIES TO ANY CLAIM FOR EMPLOYEE THEFT, REGARDLESS OF THE FORM OF THAT COVERAGE.

The Texas legislature enacted a broad exemption and broadly proclaimed that the Act "… does not apply to fidelity, surety, or guaranty bonds". (TEX. INS. CODE ANN. § 542.053(a)(4)). While the Texas Insurance Code does not define "fidelity bond", a fidelity bond is defined as "[a] bond to indemnify an employer or business for loss due to embezzlement, larceny, or gross negligence by an employee or other person holding a position of trust. —Also termed blanket bond; fidelity guarantee; fidelity-guarantee insurance." Black's Law Dictionary (10th ed. 2014); *see also* 68 TEX. JUR., SURETYSHIP & GUARANTY § 231 (3d ed. 2020) (adopting this same

definition).[2] Adopting that definition, Texas courts have held that the statutory exemption applies to any policy covering employee dishonesty and/or employee theft. *Blue Star Sports Holdings, Inc.*, 658 F. Supp. 3d at 359 (dismissing claim under Section 542 of the Texas Insurance Code because the insured sought coverage for employee theft); *RealPage Inc.*, 2020 WL 1550798 at *3 (agreeing "that fidelity bonds 'respond [] to loss due to theft or other misconduct by the insured's employees or others holding a position of trust of the insured'"); *Tex. Ass'n of Sch. Bds., Inc.,* 2016 WL 4257748 at *9 (because employee theft coverage is exempt under Section 542.053, court dismissed claim under TPPCA).

*Texas Association* enforced the exemption and dismissed an analogous claim. In that case, the insured sought coverage for employee theft under an insurance policy and alleged that the insurer failed to timely pay its claim, in violation of Section 542 of the Texas Insurance Code. 2016 WL 4257748 at *1. Regardless of the merits of the insured's allegations, the insurer argued that the insured could not pursue relief under Section 542 of the Texas Insurance Code because fidelity bonds are exempt from Section 542. Agreeing with the insured, the district court held that an insurance policy covering employee theft qualified as a "fidelity bond" and was exempt from Section 542 of the Texas Insurance Code:

> [T]he Court turns to Plaintiff's cause of action for prompt payment of claim violations. Plaintiff alleges that Defendant violated Chapter 542 of the Texas Insurance Code by failing to timely accept or reject TASB's claims and by failing to pay the claims. However, there is an exception to this chapter, which exempts "fidelity, surety, or guaranty bonds." Tex. Ins. Code § 542.053 (a)(4). The section of the Policy under which TASB is making its claim is titled "FIDELITY." (Crime Policy, Dkt. 13–3, at 8.) A fidelity bond is defined as "[a] bond to indemnify an employer or business for loss due to embezzlement, larceny, or gross negligence by an employee or other person holding a position of trust. —Also termed *blanket bond; fidelity guarantee; fidelity-guarantee insurance*." Black's Law Dictionary (10th ed. 2014).

[2] *See also Tex. Nat'l Bank of Dall. v. Fid. & Deposit Co. of Md.*, 526 S.W. 2d 770 (Tex. App.—Waco [10th Dist.] 1975); *see also Mass. Bonding & Ins. Co. v. Tex. Fin. Corp.*, 258 S.W. 250 (Tex. App. 1924).

*Id.* at \*9. The insured attempted to raise an artificial distinction between a fidelity bond and an insurance policy covering theft, but the district court rejected that argument: "[u]nder this definition, TASB's employee theft policy is appropriately considered a fidelity bond and is thus exempt from the prompt payment of claims statute found in Chapter 542 of the Texas Insurance Code." *Id.*

*Blue Star* reached the same conclusion. As here, the insured in that case sought to recover under its insurance policy on the theory that an employee committed a theft. Dismissing an analogous claim under Section 542 of the Texas Insurance Code, the district court held that the insured could not pursue a claim thereunder because Section 542 of the Texas Insurance Code does not apply to disputes under fidelity bonds:

> Here, the Employee Theft Provision states that Federal will indemnify Blue Star for losses "resulting from Theft or Forgery committed by an Employee." Thus, the Employee Theft Provision—the operative provision as cited in Blue Star's complaint—is unambiguously intended to provide coverage to Blue Star for specific types of losses caused by an employee or a fiduciary. This provision clearly meets the ordinary definition of a fidelity bond.

658 F. Supp. 3d at 359.[3] Accordingly, the court dismissed all claims under Section 542 of the Texas Insurance Code:

> Blue Star asserts an entitlement to coverage in its complaint based only on the Employee Theft Provision. (Dkt. #33 ¶ 7). Thus, because the Court considers the Employee Theft Provision as a fidelity bond as understood through the term's ordinary meaning and as interpreted by the courts, Blue Star's claims are exempted from the Texas Prompt Payment of Claims Act.

*Id.* at 362.

As in *Texas Association*, the Trustee admits that he seeks coverage under a fidelity bond.

---

[3] The insured sought to circumvent the exemption by arguing that the policy was titled a commercial crime policy (not a fidelity bond), but the district court rejected that distinction because "[t]he plain language of the Employee Theft Provision indicates that it was intended to be a fidelity bond regardless of the title used on the overall contract." 658 F. Supp. 3d at 361.

He expressly alleges that the Policy provides coverage for the "direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Theft** … committed by an **Employee**..." (Dkt. 88, ¶ 58).[4] Plaintiffs then allege theft by Frinzi and that he qualifies as an "Employee" under the Policy. (Dkt. 88, ¶¶ 60-68). Accepting Plaintiffs' allegations as true, Plaintiffs seek coverage under a fidelity bond. Such bonds are exempt from Section 542 of the Texas Insurance Code and any claims thereunder should be dismissed. *Tex. Ass'n of Sch. Bds., Inc.,* 2016 WL 4257748 at *9; *Blue Star*, 658 F. Supp. 3d at 359.

Faced with adverse authority, the Trustee argued (and the Bankruptcy Court accepted) the notion that Section 542.053 only applied to insurance structured as a tri-party surety bond. The Trustee cited no cases to support that view and could not do so because every court to consider the issue has rejected his view and held that Section 542.053 applies to employee theft coverage included in a two-party insurance policy. Courts have thrice considered this very issue and rejected that notion each time. *Blue Star*, 658 F. Supp. 3d at 359; *RealPage,* 2020 WL 1550798 at *3; *Tex. Ass'n of Sch. Bds.,* 2016 WL 4257748 at *9. The courts have consistently ruled that an insurance policy covering employee dishonesty or theft qualifies as a "fidelity bond", because the common and ordinary definition of that term encompasses coverage against embezzlement and larceny. That is precisely the coverage the Trustee now asserts. Applying *Texas Association* and *Blue Star*, Federal's Motion should have been granted and the Bankruptcy Court's Order should be overruled.

## IV. THE BANKRUPTCY COURT VIOLATED TEXAS SUPREME COURT AUTHORITY BY REFUSING TO APPLY THE DICTIONARY DEFINITION OF FIDELITY BOND.

The Trustee never addressed the dictionary definition of "fidelity bond" and the application of that definition to his claim. He did not do so because dictionaries define a fidelity bond as "[a]

---

[4] This is the precise insuring clause at issue in *Blue Star*. *See Blue Star Sports*, 658 F. Supp. 3d at 361.

bond to indemnify an employer or business for loss due to embezzlement, larceny, or gross negligence by an employee or other person holding a position of trust. —Also termed blanket bond; fidelity guarantee; fidelity-guarantee insurance." Black's Law Dictionary (10th ed. 2014). Adopting that definition, Texas courts have held that the statutory exemption applies to any policy covering employee dishonesty and/or employee theft. *Blue Star*, 658 F. Supp. 3d at 359; *RealPage*, 2020 WL 1550798 at *3; *Tex. Ass'n of Sch. Bds.,* 2016 WL 4257748 at *9.

Unable to provide any dictionary definition of that term that would not encompass employee theft coverage, the Trustee invited the Bankruptcy Court to speculate as to the Legislature's intent and the meaning of the term "fidelity bond." The Bankruptcy Court acknowledged that the district courts have adopted Federal's argument and dismissed analogous claims based upon the conclusion that the dictionary definition of "fidelity bond" encompasses any policy covering employee theft. But, it nonetheless, refused to apply a dictionary definition of the term "fidelity bond" because in its view, the dictionary definition of "fidelity bond" was inconsistent with the intent of the TPPCA. (Dkt. 148, pg. 10).

The decision to eschew the dictionary definition of "fidelity bond" contradicts binding authority from the Texas Supreme Court. *Tex. State Bd.*, 511 S.W.3d at 34–35. The Texas Supreme Court long ago rejected the notion that a court can speculate about the meaning of undefined statutory terms. In ascertaining the common meaning, the Texas Supreme Court has held that a court must apply the dictionary definition of an undefined term: "[W]e consult dictionaries to discern the natural meaning of a common-usage term not defined by contract, statute, or regulation." *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). Because binding Texas precedent requires application of the dictionary definition of "fidelity bond", *Blue Star*, *RealPage*, and *Texas Association* applied a dictionary definition of that term. The Bankruptcy Court failed to

follow this axiomatic principle and declined to apply the dictionary definition of "fidelity bond" even though Texas Supreme Court authority required it to do so. Because the Bankruptcy Court deviated from binding Texas Supreme Court precedent, its decision must be overruled and vacated.

## V. THE TRUSTEE'S INTERPRETATION OF SECTION 542.053 RENDERS THE TERM "FIDELITY BOND" SURPLUSAGE, IN VIOLATION OF BINDING PRECEDENT.

The Trustee argued, and Bankruptcy Court held, that Section 542.053 only applies to a tri-party surety contract and unilaterally excluded from Section 542.053 a two-party insurance contract, even if they cover an identical risk and provide identical coverage. In short, the Bankruptcy Court held that the structure of the contract, not its substance, governed the application of Section 542.053. The Bankruptcy Court cited no legislative history to support that conclusion and could not do so because its conclusion rendered the term "surplusage."

The Texas Supreme Court has adopted firm rules governing statutory interpretation. A Court must interpret and apply each word in a statute. It may not interpret and/or apply the statute in any manner that renders any term therein to be surplusage. *Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017). To that end, the Texas Supreme Court has rejected any interpretation of a statute that renders any term to be surplusage. *Shinogle v. Whitlock*, 596 S.W.3d 772, 777-78 (Tex. 2020). Application of this statutory canon refutes the Trustee's position and demonstrates the error in the Bankruptcy Court's decision.

By its very terms, Section 542.053 applies to "… fidelity, surety, or guaranty bonds." Because Section 542.053 lists three distinct types of instruments (fidelity, surety and guaranty), Section 542.053 must be read to give effect to each type of instrument. That can be done by applying the dictionary definition of each word. A court can only enforce each component of Section 542.053 by applying the dictionary definition of each term. Doing so gives effect to each word in that the term "fidelity bond" encompasses any insurance against employee theft, while the

15

term "surety bond" encompasses a guarantee of performance of a contract or obligation.[5] However, the Bankruptcy Court refused to do so and interpreted a fidelity bond as synonymous with a surety bond. By doing so, the Bankruptcy Court read "fidelity bond" out of Section 542.053 in direct contravention of Texas Supreme Court precedent.

Ruling that the term "fidelity bond" encompassed "surety bond" effectively read the term "fidelity bond" out of Section 542.053. To the extent that the Legislature considered a fidelity bond to be limited to a surety instrument, there was no need to refer to fidelity within Section 542.053. Instead, the Legislature could have simply limited the exemption to surety bonds. Rather than do so, the Legislature referenced fidelity bonds and surety bonds – thereby recognizing the distinction between these two types of policies. Accordingly, Section 542.053 must be read to give effect to each word and that can only be done by applying the dictionary definition of each term – which the Bankruptcy Court declined to do. Instead, the Bankruptcy Court violated Supreme Court precedent and adopted an interpretation that read the term "fidelity bond" out of Section 542.053.

## VI. THE BANKRUPTCY COURT'S DECISION DEVIATED FROM ESTABLISHED TEXAS LAW HOLDING THAT EMPLOYEE THEFT COVERAGE IS A FIDELITY BOND.

The Bankruptcy Court's decision deviated from a long history of Texas law. Texas courts have routinely rejected the suggestion that an insurance policy does not qualify as a fidelity bond and the attempt to limit the definition of "fidelity bonds" to tri-party surety instruments. The Texas Appellate Court considered and spurned the Trustee's thesis more than a hundred years ago. The

---

[5] A fidelity bond is defined as "[a] bond to indemnify an employer or business for loss due to embezzlement, larceny, or gross negligence by an employee or other person holding a position of trust. —Also termed blanket bond; fidelity guarantee; fidelity-guarantee insurance." Black's Law Dictionary (10th ed. 2014). On contrast, the dictionary defines the term "surety bond" to be "a bond guaranteeing performance of a contract or obligation." *Surety Bond Definition*, MERRIAM-WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/surety%20bond (last visited December 13, 2024).

Texas Appellate Court refused that distinction and recognized that "fidelity bonds of the same general nature as those here involved to be policies of insurance." *So. Sur. v. Citizens State Bank of Hempstead*, 212 S.W. 556 (Tex. App. 1919); *Nat'l Sur. Co. v. Murphy-Walker*, 174 S.W. 997 (Tex. App. 1915); *W. Indem. v. Free & Accepted Masons of Tex.*, 198 S.W. 1092 (Tex. App. 1917).

These cases are not unique. The Texas Appellate Court and Fifth Circuit Court of Appeals have repeatedly acknowledged that an insurance policy covering employee theft qualifies as a "fidelity bond." *Tex. Nat'l Bank of Dallas v. Fid. & Deposit Co. of Md.*, 526 S.W. 2d 770, 774 (Tex. App.—Waco [10th Dist.] 1975) (although the insured sought to recover under a bankers blanket bond, the court agreed that the bond qualified as a fidelity bond and rules of construction applying to a fidelity bond); *Renasant Bank v. St. Paul Mercury Ins. Co.*, 882 F.3d 203, 207 (5th Cir. 2018) (holding that a bankers blanket bond covering employee dishonesty fell within meaning of the term "fidelity bond" where the legislature did not define the term); *First United Fin. Corp. v. USF&G*, 96 F.3d 135, 137 (5th Cir. 1996) (acknowledging that insurance covering employee theft is "commonly referred to as a 'fidelity bond'"); *City State Bank in Wellington v. USF&G*, 778 F.2d 1103, 1109 (5th Cir. 1985) (referring to an insurance policy covering employee dishonesty as a "fidelity bond").

Texas courts have long recognized that an insurance policy covering employee dishonesty qualifies as a fidelity bond. Applying that precedent, the Trustee's claim under Section 542 of the Texas Insurance Code fails as a matter of law and should be dismissed with prejudice. The Bankruptcy Court's decision to the contrary should be overruled and vacated.

## CONCLUSION

Based on the foregoing, Federal objects to the Bankruptcy Court's Order dismissing Federal's Partial Motion to Dismiss. Federal respectfully requests that the District Court sustain its objection, enter an order dismissing any claims under Section 542 of the Texas Insurance Code

with prejudice, or in the alternative, strike any references thereto in Plaintiffs' Second Amended Complaint and for such further relief as the District Court deems just and necessary. In the alternative, to the extent the District Court finds that the Bankruptcy Court did not exceed its authority in issuing the Order, Federal requests that the District Court treat its objection as a motion for leave to appeal pursuant to 28 U.S.C. § 158(a) and Rule 8004 of the Federal Rules of Bankruptcy Procedure.

Dated: April 29, 2025

Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By:     *Scott L. Schmookler (pro hac vice)*
        2200 Ross Ave., Suite 3700
        Dallas, Texas 75201
        Tel: (312) 980-6779
        Fax: (312) 565-6511
        Email: sschmookler@grsm.com

        *Counsel for Defendant*
        *Federal Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to all attorneys of record.

Dated: April 29, 2025

Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By:    /s/ Megan Adeyemo, Bar No. 24099595
2200 Ross Ave., Suite 3700
Dallas, Texas 75201
Tel: (214) 231-4660
Fax: (214) 461-4053
madeyemo@grsm.com

*Counsel for Defendant*
*Federal Insurance Company*