**IN THE UNITED STATES BANKRUPCTY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 22-31641-mv-7 |
| GOODMAN NETWORKS, INC. | § | |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| SCOTT M. SIEDEL, TRUSTEE; GNET | § | |
| ATC, LLC; MULTIBAND FIELD | § | |
| SERVICES, INC., | § | ADVERSARY PROCEEDING |
| | § | NO: 23-03036-mvl |
| Plaintiff(s), | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES FRINZI; FRINZI FAMILY TRUST; | § | |
| MULTIBAND GLOBAL RESOURCES, | § | |
| LLC, | § | |
| | § | |
| Defendant(s). | § | |

**DEFENDANT JAMES FRINZI'S ANSWERS AND OBJECTIONS TO FIRST SET OF INTERROGATORIES**

To:    Scott M. Seidel, Trustee, by and through his counsel of record, Davor Rukavina, Munsch Hardt Kopf & Harr P.C., 500 North Akard Street, Suite 3800, Dallas, Texas 75201.

Defendant James Frinzi ("Frinzi"), by and through his counsel of record, hereby serves his responses (the "Response") to Plaintiffs Scott M. Seidel, for himself and for GNET ATC, LLC and Multiband Field Services, Inc.'s First Set of Interrogatories as follows:

**INTERROGATORIES**

INTERROGATORY NO. 1: State in detail and with specificity who, on behalf of Goodman, GNET ATC, and/or Multiband, participated in the decision (or approved such decision) to transfer $500,000 to Stauber Law Firm, including what your role, if any, with respect to the same was. Your answer should explain whether any director or officer at any of the foregoing entities initiated, knew of, approved or, or asked you to undertake any action with respect to, said transfer, including, without limitation, James Goodman, and it should include each communication you had

PAPP0345

with any such person regarding the same, and the manner, mode, date, and time of any such communication.

ANSWER:    Frinzi objects to this request in that the requirement to "include each communication you had with any such person regarding the same, and the manner, mode, date, and time of any such communication" in an interrogatory response is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Any such responsive written communications will be produced in the form such records are kept as allowed by the Rules.

Subject to and without waiving any objections: Frinzi, in his capacity as CEO, carried out the transaction contemplated and directed by James Goodman, as Chair, and sole member of the board, which generally included Goodman Networks lending money to buy a publicly traded company without any operations, then buy an operating company with revenue, and then raise that company from an over-the-counter ("OTC") exchange through a broker-dealer network to a centralized exchange, like the New York Stock Exchange. Frinzi, as an individual and CEO of the purchased company, would then take the shares from that company and buy Genesis Networks with the shares, thereby putting James Goodman as CEO of that company. James Goodman would then use the equity and lending capabilities of the new company to pay off creditors.

Frinzi and Goodman had various oral communications about the transaction, but most communications occurred through WhatsApp or Signal, which are not typically stored, or are set to delete automatically after a short period of time. To the extent Frinzi has any WhatsApp or Signal communications responsive to this request within his possession, custody, or control, such messages will be produced.

INTERROGATORY NO. 2:  State in detail and with specificity when you learned of the $500,000 to Stauber Law Firm and, if you learned about it beforehand, whether you approved of the same or not and, if you did not approve of it, what, if anything, you did regarding your disapproval (such as who you may have discussed your disapproval with or anything you may have done to dissuade anyone from proceeding).

ANSWER:          Frinzi does not remember the details or specifics of when he learned of the transaction, other than he learned of it before the transaction and approved it, as directed by James Goodman.

INTERROGATORY NO. 3:  Why was the $500,000 transferred to Stauber Law Firm?

ANSWER: Frinzi incorporates his objection(s) and answer to Interrogatory No. 1, above, as if fully set forth herein. Generally, the $500,000 was used to enter into a Stock Purchase Agreement for the purchase of 7,923,230 Common Shares and 600,000 Preferred Shares of American Metals Recovery and Recycling, Inc. ("AMRR").

---

**DEFENDANT JAMES FRINZI'S ANSWERS AND OBJECTIONS TO FIRST SET OF INTERROGATORIES**                                    PAGE 2

PAPP0346

INTERROGATORY NO. 4: What return consideration did Goodman, GNET ATC, and/or Multiband receive in exchange for the transfer of $500,000 to Stauber Law Firm, in what form and what amount, and when?

ANSWER:     The covenants and obligations contained in the Escrow Agreement dated October 6, 2021, as well as a Promissory Note in the approximate amount of $4.9 million, which will be produced if located within Frinzi's possession, custody, or control.

INTERROGATORY NO. 5: State in detail and with specificity who, on behalf of Goodman, GNET ATC, and/or Multiband, participated in the decision (or approved such decision) to transfer $4.4 million to MGR from Multiband's bank account, including what your role, if any, with respect to the same was. Your answer should explain whether any director or officer at any of the foregoing entities initiated, knew of, approved or, or asked you to undertake any action with respect to, said transfer, including, without limitation, James Goodman, and it should include each communication you had with any such person regarding the same, and the manner, mode, date, and time of any such communication.

ANSWER:     Frinzi objects to this request in that the requirement to "include each communication you had with any such person regarding the same, and the manner, mode, date, and time of any such communication" in an interrogatory response is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Any such responsive written communications will be produced in the form such records are kept as allowed by the Rules.

Subject to and without waiving any objections: Frinzi incorporates his objection(s) and response to Interrogatory No. 1, above, as if fully set forth herein. James Frinzi approved and participated in the decision at the direction of James Goodman. Frinzi and Goodman had various oral communications about the transaction, but most communications occurred through WhatsApp or Signal, which are not typically stored, or are set to delete automatically after a short period of time. To the extent Frinzi has any WhatsApp or Signal communications responsive to this request within his possession, custody, or control, such messages will be produced.

INTERROGATORY NO. 6: State in detail and with specificity when you learned of the $4.4 million to MGR from Multiband's bank account and, if you learned about it beforehand, whether you approved of the same or not and, if you did not approve of it, what, if anything, you did regarding your disapproval (such as who you may have discussed your disapproval with or anything you may have done to dissuade anyone from proceeding).

ANSWER:     Frinzi does not remember the details or specifics of when he learned of the transaction, other than he learned of it before the transaction and approved it, as directed by James Goodman.

INTERROGATORY NO. 7: Why was the $4.4 million transferred to MGR from Multiband's bank account?

---

**DEFENDANT JAMES FRINZI'S ANSWERS AND OBJECTIONS TO FIRST SET OF INTERROGATORIES**                                                                 PAGE 3

ANSWER: Frinzi incorporates his objection(s) and response to Interrogatory No. 1, above, as if fully set forth herein. Frinzi does not recall the details and specifics for the transfer, but, generally, the funds were used to purchase and ultimately capitalize AMRR and the operating company, OnePath.

INTERROGATORY NO. 8: What return consideration did Goodman, GNET ATC, and/or Multiband receive in exchange for the $4.4 million transferred to MGR from Multiband's bank account, in what form and what amount and when?

ANSWER:    Frinzi incorporates his objection(s) and response to Interrogatory Nos. 1 and 4, above, as if fully set forth herein.

INTERROGATORY NO. 9: Do you agree that Goodman, on or about December 10, 2021, transferred $500,000 into Multiband's bank account, and on or about December 21, 2021, transferred $4 million into Multiband's bank account, both with the intention and for the purpose that both such funds be used to subsequently transfer to MGR? If you disagree, state why such transfers were made by Goodman to Multiband and for what purpose.

ANSWER:    Frinzi agrees the funds were transferred on the dates and to the accounts identified above. Frinzi incorporates his answers to Interrogatory Nos. 1, 3, 5, and 7, above as to the intent and purpose in transferring the funds. Frinzi does not recall when the decision was made that the funds would subsequently be transferred to MGR, other than the decision was made before the transfer.

INTERROGATORY NO. 10: Explain in detail and with specificity what MGR did with the $4.4 million transferred to it from Multiband's bank account, including any subsequent transfers from those funds, on what dates, in what amounts, and for what purposes, including whether any such funds were subsequently loaned out, distributed as an equity dividend or distribution, invested, or used to purchase assets (and what any such assets may have been).

ANSWER:    Frinzi incorporates his objection(s) and response to Interrogatory Nos. 1–4, above, as if fully set forth herein. Frinzi does not recall the details and specifics concerning what MGR did with the $4.4 million, but to the extent such details are contained in documents within Frinzi's possession, custody, or control, such documents are incorporated herein by reference and will be produced in the form such records are kept, as allowed by the Rules. In general, the funds were used to further the directive of James Goodman for the transaction involving the purchase and operation of OnePath and AMRR. The funds were used to pay professional fees, including legal advisors and consultants. Some of the funds were also used in the purchase of real property in Horseshoe Bay, Texas, and as compensation to an officer.

INTERROGATORY NO. 11: Did you, in your capacity as an officer of Goodman, GNET ATC, and/or Multiband seek the assistance of legal counsel or advice for any of these entities with respect to the $500,000 transfer and $4.4 million transfer discussed in the prior Interrogatories and, if so, who, when, and how? If not, why not?

ANSWER:    Yes. Frinzi does not recall the details and specifics of when or how Goodman, GNET ATC, and/or Multiband obtained counsel, as such details would be contained in documents or communications in the possession of James Goodman, the Debtor(s), and/or the Microsoft corporation, which Frinzi does not have in his possession, custody, or control. To the extent Frinzi has any such responsive documents in his possession, custody, or control, such documents are incorporated herein by reference and will be produced in the form such records are kept, as allowed by the Rules. Generally, Winstead, PC, attorneys Toby Galloway and Jason Kramer, were consulted with respect to the transaction(s) discussed in the responses to interrogatories above. Goodman, GNET ATC, and/or Multiband also consulted the following law firms or attorneys, but Frinzi does not recall the scope or details of such representations:

- Ferguson Braswell Fraser Kubasta, PC, attorney Stefani D. Carter (engaged on October 14, 2021);
- Akerman LLP, attorney Andrea Hartley (engaged on February 1, 2022);
- Bonds Ellis Eppich Schafer Jones, LLP, attorney Josh Eppich;
- Forshey Prostok LLP, attorney Bobby Forshey; and
- Haynes and Boone, LLP, attorney Bruce Newsome.

INTERROGATORY NO. 12: In December, 2021, what was your understanding as to the extent or scope of your authority as an officer of Goodman, GNET ATC, and/or Multiband to cause any of these entities to transfer funds or incur an obligation, and where did you understanding come from (for example, any written document setting forth your authority or any oral communications you had with any director or officer of any of the foregoing regarding the same), and identify any such document or communication.

ANSWER:    Frinzi had authority to transfer the funds or incur the obligations identified in the responses to interrogatories above through the direction of James Goodman. Through his position as CEO, and his general experience as an executive, Frinzi generally understood he had full discretion to transfer funds or incur obligations for these entities, except for certain bank accounts held by one or more of the Goodman entities, for which Frinzi knew he did not have access. Frinzi does not know the specifics or details regarding these accounts for which he did not have access.

INTERROGATORY NO. 13: Why did you, by e-mail dated December 29, 2021 to Stephanie Elmore, ask her to cause GNET ATC to wire $962,000.00 to MGR? If you answer that GNET ATC, Goodman, or Multiband owed such funds to MGR, please state why and how, including by identifying any agreement providing for the same.

ANSWER:    Frinzi does not recall the details and specifics regarding the $962,000 wire, as such details would be contained in documents or communications in the possession of James Goodman, the Debtor(s), and/or the Microsoft corporation, which Frinzi does not have in his possession, custody, or control. To the extent Frinzi has any such responsive documents in his possession, custody, or control, such documents are incorporated herein by reference and will be produced in the form such records are kept, as allowed by the Rules. Generally, Frinzi recalls that GNET ATC had a contract with Citizens Telecom Services Company, LLC d/b/a Frontier Communications, which would have provided a financial benefit to GNET ATC had it been able to fulfill its obligations. Due to circumstances outside Frinzi's control, in late 2021, GNET ATC's ability to

hire or retain sufficient personnel to fully perform the services for Frontier Communications had been compromised, so it was at risk of losing the business with Frontier Communications and being forced to layoff the remaining personnel. The $962,000 transfer to MGR was made to avoid shuttering the business, laying off the remaining personnel, and subject GNET ATC to potential liability, and allowed MGR, acting as a subcontractor, to perform the work for Frontier Communications.

INTERROGATORY NO. 14: What return consideration or benefit did you believe GNET ATC was receiving for its wire of $962,000 to MGR on or about December 31, 2021?

ANSWER:     Frinzi incorporates his objection(s) and answer to Interrogatory No. 13, above, as if fully set forth herein. GNET ATC received the services to be provided under Subcontract Services Agreement dated December 31, 2021.

INTERROGATORY NO. 15: Why did you, on behalf of GNET ATC, sign that certain *Subcontract Services Agreement* dated December 31, 2021 with MGR?

ANSWER:     Frinzi signed the Subcontract Services Agreement to formalize the transaction identified in the response to Interrogatory No. 13, above, which is fully incorporated herein by reference, in an effort of risk avoidance and/or mitigation, to preserve the project, and maintain personnel who were performing the project.

INTERROGATORY NO. 16: Identify each person who participated to any degree in negotiating (including any oral discussions or understanding leading up to the same), drafting, or executing that certain *Subcontract Services Agreement* dated December 31, 2021 between GNET ATC and MGR, including, if applicable, James Goodman, and state what each such person's role with respect thereto was.

ANSWER:     Frinzi incorporates his objection(s) and answer to Interrogatory No. 13, above, as if fully set forth herein. James Frinzi and James Goodman participated in the decision to take the actions described in the response Interrogatory No. 13, above. Frinzi does not recall who drafted the agreement at issue. Frinzi was acting in his role as CEO, taking direction from James Goodman.

INTERROGATORY NO. 17: Explain and identify with specificity your affirmative defense(s) that you received any transfer "in good faith," including your understand of what "good faith" means.

ANSWER:     Frinzi incorporates his objection(s) and answer to Interrogatory Nos. 1, 3, 5, 7, 13, and 15 above, as if fully set forth herein. The actions taken by Frinzi, including those described in these interrogatories, were in an effort to carry out the intentions of James Goodman, which he understood would (a) create value for James Goodman and the Goodman entity shareholders and (b) ultimately, provide a mechanism to pay amounts owed to creditors. As privately held companies, Frinzi understood he took direction from James Goodman and believed any duties he owed were to the owners of the Goodman entities, including James Goodman, which generally aimed to purchase a publicly traded company, raise capital, and increase lending potential, which would provide a mechanism to pay back debt owed to creditors and shareholders. Professional

PAPP0350

advisors were at times involved, including the legal advisors identified in response to Interrogatory No. 11, above. Frinzi does not personally know the legal definition of "good faith," but his actions, including those described above were taken with a genuine attitude and proper intentions, which Frinzi generally understands "good faith" to mean.

INTERROGATORY NO. 18: Explain and identify with specificity your affirmative defense(s) that you received any transfer "for reasonably equivalent value," and state what that value was, its amount, how provided, and when provided.

ANSWER:     Frinzi incorporates his objection(s) and response to Interrogatory Nos. 4, 8, and 14, above, as if fully set forth herein. Several of the transfers were received in exchange for the execution of certain promissory notes, the details of such notes Frinzi cannot recall, because such details would be contained in documents or communications in the possession of James Goodman, the Debtor(s), and/or the Microsoft corporation, which Frinzi does not have in his possession, custody, or control. To the extent Frinzi has any such responsive documents in his possession, custody, or control, such documents are incorporated herein by reference and will be produced in the form such records are kept, as allowed by the Rules.

The reasonably equivalent value is reflected in the following documents: (i) Escrow Agreement dated October 6, 2021, between GNET Partners, LLC, Repository Services, LLC, and David L. Hill, II; (ii) December 3, 2021, Share Purchases Agreement between Repository Services, LLC and MGR; and (iii) *Subcontract Services Agreement* dated December 31, 2021, between GNET ATC and MGR, which is in the form of the services provided or shares exchanged under these agreements.

INTERROGATORY NO. 19: Explain and identify with specificity your affirmative defense(s) that the "Debtors were solvent when the alleged transfers were made, or did not become insolvent as a result of the alleged transfers," including each and every factual basis for your allegation.

You are hereby notified that, if you are unable to identify a good faith factual basis for this allegation, or withdraw the allegation, the Trustee intends to seek sanctions under Rule 11, as it is inconceivable that Mr. Frinzi, knowing of massive transfers, knowing of massive liabilities, and knowing of the transferors' financial situation could make such an allegation in good faith, or that his counsel could.

ANSWER:     Frinzi objects to the sidebar in the interrogatory, beginning with "You are hereby notified," as the sidebar is neither necessary nor provided under the rules for obtaining information reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, at this preliminary stage of the litigation, Frinzi has not obtained an expert opinion on the Plaintiff's insolvency allegations and proposes a conference with the Plaintiff to resolve the insolvency element based on the Plaintiff's support of their insolvency allegations. Frinzi does not seek to litigate issues that can be resolved consensually.

Frinzi asserted a challenge to Plaintiff's insolvency allegations based on Frinzi's understanding as of the time frame relevant to the subject transactions, under the working concept that the strategy would ultimately create value for the Goodman entities. At the times relevant for the subject

transactions, Frinzi understood the entities were distressed, but that they were generally able to pay their debts as they became due, and that certain liabilities were not yet matured, and others were disputed and contingent based on contested litigation pending at the time.  Without waiving any objection, Frinzi proposes a conference to reach a procedural resolution of the insolvency elements to avoid further litigation or costs on this element of the Plaintiff's case.

INTERROGATORY NO. 20: Identify each "contract" the subject of your Affirmative Defense No. 5.

ANSWER:    Frinzi objects to this request in that information responsive to this request is contained in documents or communications in the possession of James Goodman, the Debtor(s), and/or the Microsoft corporation, which Frinzi does not have in his possession, custody, or control but which likely includes, (i) Corporate documents of Goodman Networks, Inc. ("Debtor"); GNET ATC, LLC; Multiband Field Services, Inc.; and MGR; (ii) Purchase and sale agreement, and related documents, concerning American Metals Recovery and Recycling, Inc. n/k/a MBG Holdings, Inc., AMR Resources, LLC, and/or OnePath Systems, LLC; and (iii) December 3, 2021, Share Purchases Agreement between Repository Services, LLC and MGR. To the extent Frinzi has any such responsive documents in his possession, custody, or control, such documents are incorporated herein by reference and will be produced in the form such records are kept, as allowed by the Rules.

Subject to and without waiving any objections, in addition to Frinzi identifies the following contracts: (i) Escrow Agreement dated October 6, 2021, between GNET Partners, LLC, Repository Services, LLC, and David L. Hill, II; and (ii) *Subcontract Services Agreement* dated December 31, 2021, between GNET ATC and MGR. Frinzi also identifies any Promissory Notes underlying the transactions identified in the interrogatory responses, above, which are not in Frinzi's possession, custody, or control.

INTERROGATORY NO. 21: Identify each "consideration" the subject of your Affirmative Defense No. 5.

ANSWER:    Frinzi incorporates his objection(s) and response to Interrogatory Nos. 4, 8, and 14, above, as if fully set forth herein. Frinzi also, individually, provided consideration in the form of services he performed as CEO, for which he did not understand he would perform without compensation. Consideration was also provided in the form of the covenants and obligations contained in any promissory notes covering the transactions identified in the interrogatory responses above, the details of such notes Frinzi cannot recall, because such details would be contained in documents or communications in the possession of James Goodman, the Debtor(s), and/or the Microsoft corporation, which Frinzi does not have in his possession, custody, or control.

INTERROGATORY NO. 22: Identify each fact, document, or communication that you contend supports your statement, in Affirmative Defense No. 7, that any alleged transfer "were affirmed and completed with the Debtors' knowledge, agreement or acquiescence," including by identifying any person, document, or communication involved, and how, and when, and separating your answer between "knowledge," "agreement," and "acquiescence."

---

ANSWER:      Frinzi objects to the portion of this interrogatory requiring Frinzi to "separat[e] [his] answer between 'knowledge,' 'agreement,' and 'acquiescence,'" as misinterpreting the affirmative defense to imply "knowledge," "agreement," and "acquiescence" require separate or distinct actions. Frinzi incorporates his objection(s) and response to Interrogatory Nos. 1, 5, 11, 12, 16, and 17, above, as if fully set forth herein.

Subject to and without waiving any objections, Frinzi cannot recall the details or specifics of all instances where James Goodman approved Frinzi's actions, as details would be contained in documents or communications in the possession of James Goodman, the Debtor(s), and/or the Microsoft corporation, which Frinzi does not have in his possession, custody, or control. To the extent Frinzi has any such responsive documents in his possession, custody, or control, such documents are incorporated herein by reference and will be produced in the form such records are kept, as allowed by the Rules. Frinzi took actions in an effort to carry out the intentions and direction of James Goodman. Specifically, James Goodman knew about, agreed with, and did not object to the transactions identified in Interrogatory Nos. 1, 5, and 13, above, at the time these transactions occurred. If James Goodman was not aware of the details involved in these transaction, which Frinzi does not believe to be the case, he nevertheless was aware of the overarching goal of the transactions, which was generally to effectuate the purpose identified in response to Interrogatory No. 1, which was designed to provide value.

Frinzi and Goodman had various oral communications about the events identified in this response, but most communications occurred through WhatsApp or Signal, which are not typically stored, or are set to delete automatically after a short period of time. To the extent Frinzi has any WhatsApp or Signal communications responsive to this request within his possession, custody, or control, such messages will be produced.

INTERROGATORY NO. 23: Identify in detail and with specificity each action, fact, omission, or allegation you contend supports your Affirmative Defense No. 8 of "the business judgment rule," including the considerations taken and rationale underlying each of the contested actions.

ANSWER:      Frinzi incorporates his objection(s) and response to Interrogatory Nos. 11, 17, and 19, above, as if fully set forth herein.

Subject to and without waiving any objections, the actions taken by Frinzi, described in the foregoing interrogatories, were taken in an effort to carry out the plan and direction provided by James Goodman, which generally includes the concepts of the loan to AMRR, to buy a public, non-operating "shell" company, to buy an operating company, and then use the shares to purchase Genesis Networks, providing value to allow the entities to pay back or renegotiate outstanding debts. At times, Frinzi consulted with or acted at the advice of professional advisors, including the legal advisors identified in response to Interrogatory No. 11, above.

INTERROGATORY NO. 24: Identify the name of the attorney(s) at the Stauber Law Office referenced in paragraph 23 of the Complaint and involved with any transaction involving Frinzi and/or MGR, together with each such attorney(s)' or other person(s)' contact information, and/or the contact information for Stauber Law Office.

ANSWER:   Ronald J. Stauber, Stauber Law Offices, 9420 Wilshire Boulevard, 2nd Floor, Beverly Hills, California 90212.

Dated: September 11, 2023                    Respectfully submitted,

                                             */s/ Paul T. Elkins*
                                             Jason M. Rudd, Tex. Bar No. 24028786
                                             Paul T. Elkins, Tex. Bar No. 24092383
                                             **WICK PHILLIPS GOULD & MARTIN, LLP**
                                             3131 McKinney Avenue, Suite 500
                                             Dallas, TX 75204
                                             Phone: (214) 692-6200
                                             Fax: (214) 692-6255
                                             Email:  jason.rudd@wickphillips.com
                                                     paul.elkins@wickphillips.com

                                             **COUNSEL FOR DEFENDANTS JAMES
                                             FRINZI & FRINZI FAMILY TRUST**

---

**DEFENDANT JAMES FRINZI'S ANSWERS AND OBJECTIONS TO FIRST SET OF**          PAGE 10
**INTERROGATORIES**

PAPP0354

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2023, I caused a true and correct copy of this document to be served on counsel of record for all parties in this Adversary Proceeding via the method(s) indicated below:

| | | |
|---|---|---|
| Davor Rukavina | _____ | Hand Delivery |
| Thomas D. Berghman | _____ | Regular Mail |
| **MUNSCH HARDT KOPF & HARR, P.C.** | _____ | Facsimile |
| 500 N. Akard Street, Suite 3800 | __X__ | E-mail |
| Dallas, TX 75201 | _____ | CM/ECF |
| drukavina@munsch.com | | |
| jvasek@munsch.com | | |

***Counsel for the Scott Seidel, Chapter 7 Trustee***

| | | |
|---|---|---|
| Debbie Green | _____ | Hand Delivery |
| **MCDERMOTT WILL & EMERY LLP** | _____ | Regular Mail |
| 2501 North Harwood Street, Suite 1900 | _____ | Facsimile |
| Dallas, TX 75201 | __X__ | E-mail |
| dgreen@mwe.com | _____ | CM/ECF |

***Counsel for Multiband Global Resources, LLC***

*/s/ Paul T. Elkins*
Paul T. Elkins

PAPP0355

**IN THE UNITED STATES BANKRUPCTY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 22-31641-mv-7 |
| GOODMAN NETWORKS, INC. | § | |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| SCOTT M. SIEDEL, TRUSTEE; GNET | § | |
| ATC, LLC; MULTIBAND FIELD | § | |
| SERVICES, INC., | § | ADVERSARY PROCEEDING |
| | § | NO: 23-03036-mvl |
| Plaintiff(s), | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES FRINZI; FRINZI FAMILY TRUST; | § | |
| MULTIBAND GLOBAL RESOURCES, | § | |
| LLC, | § | |
| | § | |
| Defendant(s). | § | |

**VERIFICATION**

1.      My name is James Frinzi.  I am over 21 years of age, of sound mind, and competent in all respects to make this Verification.  I have personal knowledge, or knowledge based on my review of records that are within my custody and control, of all the matters stated herein.

2.      I have read James Frinzi's Answers and Objections to First Set of Interrogatories dated September 11, 2023. The facts set forth in the responses to the interrogatories are true and correct and within my personal knowledge.

*** REMAINDER INTENTIONALLY LEFT BLANK***

**VERIFICATION TO DEFENDANT JAMES FRINZI'S ANSWERS AND OBJECTIONS
TO FIRST SET OF INTERROGATORIES**                                        PAGE 1

PAPP0356

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 11, 2023.

_____
James Frinzi

PAPP0357